FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS** 15 P 2: 29

DISTRICT OF MASS.

MAGISTRATE JUDGE Bowler

| | |
|---|---|
| PIUS AWUAH,<br>and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| COVERALL NORTH AMERICA, INC., | ) |
| Defendant. | ) |

**JURY DEMANDED**
Civil Action No.

**07 CA 10287 WGY**

**COMPLAINT**

## I.   INTRODUCTION

1.      This is a class action brought on behalf of workers who have performed cleaning services for Defendant Coverall North America, Inc. ("Coverall").  The above-named plaintiff and other similarly situated individuals have been subjected to systemic misrepresentations and breaches of contract in their relations with Coverall as described below.  Most notably, Coverall purports to sell cleaning "franchises," knowing it does not have sufficient business to satisfy its obligations under its franchise agreements.  Individuals purchase these "franchises" for substantial sums of money, based on Coverall's misrepresentations about the guaranteed amount of monthly income the franchises will provide.  In addition, Coverall has also improperly misclassified these workers as independent contractors and thereby denied them various benefits to which they are entitled as employees, including guaranteed minimum

wage, overtime pay, other wage protections, and other benefits of employment, such as eligibility for unemployment and workers' compensation. In this action, the above-named plaintiff seeks to recover, on his own behalf and on behalf of all similarly situated individuals, compensation for these violations, statutory trebling of wage-related damages, and attorneys' fees and costs, as provided for by law.

## II.   PARTIES

2.     Plaintiff Pius Awuah is an adult resident of Lowell, Massachusetts. He was a cleaning worker for Coverall from approximately February 2005 until August 2005.

3.     This is a class action that the above-named plaintiff brings on his own behalf and on behalf of all others similarly situated, namely all other individuals who have performed cleaning services for Coverall in Massachusetts and have been subjected to the legal violations described in this complaint. The class meets all of the requirements of Rule 23 of the Federal Rule of Civil Procedure.

4.     Defendant Coverall North America, Inc. is a Delaware corporation with its principal place of business in Boca Raton, Florida.

## III.   JURISDICTION

5.     Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1332(d)(2).

2

## IV.   STATEMENT OF FACTS

### A.   Coverall's Misrepresentations and Breaches of Contract

6.    Coverall employs hundreds of workers in Massachusetts to perform cleaning work for customers who negotiate cleaning services accounts with Coverall.  These workers have included the above-named plaintiff.

7.    Coverall requires its cleaning workers to sign "franchise agreements" in order to obtain work, and it labels its cleaning workers as "franchisees."

8.    In order to induce workers to sign these franchise agreements, Coverall negligently and/or intentionally misrepresents that it has sufficient business to provide the monthly income it promises the workers in their agreements.  In fact, Coverall does not have enough accounts to offer to workers who have signed franchise agreements.

9.    Thus, Coverall knows it does not have sufficient business to satisfy the terms of the franchise agreements when it advertises franchises, solicits franchisees, and enters into franchise contracts.  Coverall knowingly and willfully solicits and enters into agreements which it knows it cannot perform.

10.    Coverall also misrepresents that workers will receive a higher hourly rate of pay for their work than Coverall knows they will be able to earn.

11.    Coverall's franchise agreement is a form contract of adhesion establishing the terms and conditions of employment of Coverall cleaning workers.

3

12.    None of the Coverall cleaning workers is able to negotiate for different terms and conditions from those appearing in the form franchise agreement.

13.    The form franchise agreement is written exclusively in English, in highly technical and confusing language, with misleading section headings and provisions regarding waivers of important rights buried within the agreement.

14.    The form franchise agreement is not available in other languages, although many of the workers who sign these form franchise agreements have little to no fluency in English.

15.    Consequently, as Coverall knows, the workers do not understand the terms of the agreement, whether or not they speak English.

16.    Coverall targets immigrants in particular because they are easily victimized by Coverall's misrepresentations and other systemic legal violations, as described herein.

17.    Pursuant to these form franchise contracts, workers pay substantial sums of money as "franchise fees" (ranging from approximately $6,000 to more than $30,000) in order to obtain cleaning work.

18.    In exchange for these large franchise fees, Coverall guarantees a certain level of monthly income beginning after the workers have made down payments to purchase their franchise and completed their training period.

19.    However, Coverall systemically breaches its written agreements by not providing or offering sufficient or adequate work as promised to produce the

4

guaranteed level of income. Rarely if ever do the workers receive the promised level of monthly income.

20. For example, Mr. Awuah paid a franchise fee of $14,000 and was promised $3,000 per month in business, but he typically received less than $1,300 per month during his time working for Coverall.

21. Through a variety of means involving misrepresentation, Coverall purports to satisfy its obligations under the form franchise agreements when it has come nowhere near satisfying those obligations. Through these means, Coverall attempts to make it appear that it is the workers' fault, rather than Coverall's, that they do not have sufficient accounts to satisfy their monthly income guarantee.

22. For example, Coverall negligently and/or intentionally misrepresents the number of hours per week that will be required to service the accounts offered. These misrepresentations are used to induce workers to accept the accounts toward their guaranteed level of income. The accounts typically require substantially more hours of work than Coverall represents.

23. In addition, Coverall promises cleaning accounts that are geographically convenient to one another and convenient to the workers' homes. However, the accounts are typically spread very far apart, making it very inconvenient, if not impossible, to accept or perform the work for these accounts.

24. Coverall typically contends that it has fulfilled its obligations under the franchise contract by offering accounts, knowing that accounts offered could not be accepted due to geographic inconvenience, sheer impossibility of

5

performing the number of hours of work required to service the accounts, or rates of pay well below what was promised.

25.    Coverall also frequently violates the form franchise agreement by taking accounts away without warning and for no justifiable reason.  Also in violation of the agreement, Coverall gives no opportunity to correct or challenge alleged deficiencies in workers' performance.

26.    When doing so, Coverall frequently tells the workers performing the cleaning services that the customers were dissatisfied with their work, when in fact the customers were satisfied with their work.

27.    After taking an account away from a worker, Coverall then can offer the account to another worker who has signed a franchise agreement to count toward that person's monthly guarantee.  In this way, Coverall churns the accounts it has, in order to make it appear that it has satisfied its franchise agreements.

28.    When Coverall does not satisfy the terms of the workers' franchise agreements by not offering sufficient accounts (that are free from misrepresentations) or by taking away accounts without justification or warning, it does not refund the franchise fees that the workers have already paid.

29.    Indeed, Coverall requires workers to continue making payments on their franchise fees, billing them for these payments, even when they have no further work from Coverall.

30.    In addition, Coverall deducts excessive fees from the payments it makes to the workers under the franchise agreements.

6

31.    Coverall significantly underbids cleaning contracts with its clients.
As a result of this underbidding and the deduction of excessive fees from their
pay, the workers who have contracted with Coverall receive far less pay for their
work than the fair value of their services and far less pay than they were
promised on an hourly and monthly basis.

**B.    Coverall's Misclassification of Its Cleaning Workers as
       Independent Contractors**

32.    Coverall purports to classify its cleaning workers as independent
contractors.  However, these workers are in fact employees, as they do not meet
the definition of independent contractors as set forth in Mass. Gen. L. c. 149
§ 148B.

33.    The behavioral and financial control manifested over these workers
by Coverall demonstrates that the workers are employees rather than
independent contractors.

34.    The cleaning workers perform services within Coverall's usual course
of business, which is to provide cleaning services to customers.

35.    Also, Coverall instructs the cleaning workers in how to do their work
and dictates their performance of the details of their jobs.

36.    The cleaning workers generally do not work in an independently
established trade, occupation, profession, or business.  Instead, as required by
their contracts, the cleaning workers perform cleaning services exclusively for
Coverall's clients.

37.    Also, the cleaning workers do not represent themselves to the public
as being in an independent business to provide cleaning services, and they

7

typically have not invested in an independent business apart from their payment of "franchise" fees to Coverall.

38. In fact, the Massachusetts Supreme Judicial Court has ruled that a Coverall cleaning worker is an employee of Coverall and thus eligible for unemployment compensation upon the loss of her job, in *Coverall North America, Inc. v. Com'r of Div. of Unemployment Assistance*, 447 Mass. 852 (2006).

39. Because of their misclassification by Coverall as independent contractors, these cleaning workers have not received the benefits that inure from the employment relationship under law.

40. For example, Coverall's cleaning workers frequently do not receive the Massachusetts minimum wage of $6.75 per hour ($7.15 per hour effective January 1, 2007) for the work they perform.

41. Although many of them work more than 40 hours per week (some more than 60 or 70 hours per week), they do not receive one and one-half times their regular rate for hours worked in excess of 40 hours per week.

42. Numerous deductions are made from their pay, which constitute improper deductions from wages. For example, Coverall deducts payments towards "franchise fees," interest payments, payments for Coverall to manage the workers' cleaning accounts, and other payments. It also withholds workers' pay when it contends that Coverall clients have not paid their bills.

43. These cleaning workers do not receive pay for their time spent traveling between different accounts during the work day.

8

44.    Coverall denies that these workers are eligible for unemployment payments when they lose their jobs, or when they are constructively discharged by having their cleaning accounts taken away and not replaced.

45.    Also, because of the misclassification, Coverall's cleaning workers are not covered by workers' compensation when they are injured on the job.

## COUNT I

## (Breach of Contract)

Coverall has breached its written contracts with the plaintiff and class members, as described above, in violation of the common law of Massachusetts.

## COUNT II

## (Rescission of Contract)

The written contracts between Coverall and the plaintiff and class members are unconscionable and should be held unenforceable in part or in whole under the common law of Massachusetts.

## COUNT III

## (Misrepresentation)

Coverall has committed intentional and/or negligent misrepresentation in its representations to the plaintiffs and class members, as described above, in violation of the common law of Massachusetts.

9

## COUNT IV

### (Quantum Meruit)

Plaintiff and class members have been deprived by Coverall of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of Massachusetts.

## COUNT V

### (Unjust Enrichment)

Through the conduct described above, Coverall has been unjustly enriched under the common law of Massachusetts.

## COUNT VI

### (Violation of Massachusetts Independent Contractor Law)

Coverall's knowing and willful misclassification of plaintiff and class members as independent contractors instead of employees violates Mass. Gen. Laws c. 149 § 148B.  This claim is asserted pursuant to Mass. Gen. Laws c. 149 § 150.

## COUNT VII

### (Minimum Wage Violations)

Coverall's knowing and willful failure to pay the plaintiff and class members the Massachusetts minimum wage violates Mass. Gen. L. c. 151 § 1.

## COUNT VIII

### (Overtime Violations)

Coverall's knowing and willful failure to pay the plaintiff and class members the Massachusetts one and one half their regular rate for hours in

excess of forty per week violates Mass. Gen. L. c. 151 § 1A. This claim is asserted pursuant to Mass. Gen. L. c. 151 § 1B.

## COUNT IX

### (Wage Law Violations)

Coverall's knowing and willful failure to pay the plaintiff and class members all wages due to them, including making improper deductions from their pay, violates Mass. Gen. Laws c. 149 § 148. This claim is asserted pursuant to Mass. Gen. Laws c. 149 § 150.

## JURY DEMAND

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.  Certification of this case as a class action;

2.  Injunctive relief, requiring Coverall to cease its illegal practices;

3.  Rescission of the written contracts between Coverall and the plaintiff and class members, in whole or in part;

4.  Restitution for all wages, overtime, and other employment-related benefits that are owed to the plaintiff and class members;

5.  Statutory trebling of all wages, overtime, and other employment-related benefits that are owed to the plaintiff and class members;

6.  All other damages to which the plaintiff and class members may be entitled under the above-referenced statutes and common law; and

7.      Any other relief to which the plaintiff and class members may be

entitled.

Respectfully submitted,

PIUS AWUAH,
and all others similarly situated,

By their attorneys,

_____s/Shannon Liss-Riordan_____
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
     & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200

Dated:        February 15, 2007