**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO,** and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>**COVERALL NORTH AMERICA, INC.,**<br><br>    Defendant. | **Case No. 07-10287** |

**COVERALL NORTH AMERICA, INC.'S RESPONSE TO PLAINTIFFS'
MOTION TO "STRIKE" COVERALL'S ARBITRATION CLAUSE**

Coverall North America, Inc. ("Coverall"), by its attorneys, respectfully submits the following memorandum of law in response to Plaintiffs' "motion to strike Coverall's arbitration clause."

**ARGUMENT**

**I. The Federal Rules of Civil Procedure Make No Provision For A Motion To "Strike" An Arbitration Clause**

While misplaced for several reasons, Plaintiffs' motion to strike Coverall's arbitration clause should be denied for one simple reason: there is no such thing as a motion to "strike" an arbitration clause.[1] The Federal Rules of Civil Procedure enable litigants to file various dispositive motions, including motions to dismiss (Rule 12(b)), motions for judgment on the pleadings (Rule 12(c)), and motions for summary judgment (Rule 56). The Rules even permit parties to move to strike certain matters from pleadings, such as "insufficient defenses" and

---

[1] Nor does this case concern just one arbitration clause, as Plaintiffs' motion inaccurately implies. Rather, it concerns the arbitration agreements that Coverall entered into with its 8000

"redundant, immaterial, impertinent, or scandalous" matter.  *See* Rule 12(f) (noting that such motions can only be made "before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading").  Plaintiffs' motion to "strike" Coverall's arbitration provision fits into none of these categories, and Plaintiffs never contends it does.

More importantly, the validity of Coverall's arbitration agreement (at least under Massachusetts law) has already been fully briefed.  As the Court is aware, Coverall previously filed a motion to stay proceedings pending arbitration as to plaintiff Pius Awuah.  That motion was denied without prejudice after the Court determined that Plaintiffs had not alleged facts sufficient to establish subject matter jurisdiction.  If, after reviewing Plaintiffs' jurisdictional memorandum, this Court determines that it has subject matter jurisdiction, Coverall intends to seek the "immediate reinstatement" of that motion, consistent with the terms of this Court's February 5, 2008 Order.  While this Court's ruling on that motion will not necessarily resolve the enforceability of the arbitration agreements of other franchisees (*see* Point III, *infra*), Coverall should not be forced to participate in another round of briefing simply because Plaintiffs have once again changed their minds about the wisdom of arbitration.

## II. The United States Supreme Court Has Rejected The Very Argument Plaintiffs Now Ask This Court To Accept

Even if it was procedurally proper, the very premise of Plaintiffs' motion is legally flawed.  Relying on their supposed concerns about efficiency and judicial economy, Plaintiffs claim that "striking" the arbitration agreements is proper because regardless of this Court's determination as to the enforceability of those agreements, some of the Plaintiffs' claims will "go forward in court anyway … ."  (Motion at 4.)  Therefore, Plaintiffs assert, "it would be grossly

---

franchisees, the validity of which is governed by the laws of the various States in which each franchisee does business.

inefficient," contrary to "the goals of the Federal Arbitration Act," and "a waste of resources to require this case to proceed both before this Court and before an arbitrator."  (Motion at 2, 4.)[2]  Even if valid, such concerns cannot override the liberal policy favoring arbitration and the FAA's mandate that arbitration agreements be enforced according to their terms, as the United states Supreme Court made clear in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

In *Dean Witter*, the plaintiff filed a complaint alleging that his broker-dealer ("Dean Witter") violated certain state laws and various provisions of the Securities Exchange Act of 1934.  *Id*. at 215.  Believing that the federal securities claims were not arbitrable, Dean Witter subsequently filed a motion to sever and compel arbitration of the state law claims.  *Id*. at 215.  The district court denied Dean Witter's motion, and the Ninth Circuit affirmed.  *Id*. at 215-16.

Addressing the question of "whether to compel arbitration of pendent state-law claims when the federal court will in any event assert jurisdiction of a federal-law claim," the Supreme Court noted that the appellate courts had taken two different approaches to this issue.  *Id*. at 216.  One line of cases held that district courts could deny arbitration as to arbitrable claims if doing so promoted efficiency – *i.e*., if, "by declining to compel arbitration, the court avoids bifurcated proceedings and perhaps redundant efforts to litigate the same factual issues twice."  *Id*. at 217.  Reiterating the same argument proffered by Plaintiffs in this case, the courts that adhered to this view also argued that because the FAA's "goal of speedy and efficient decisionmaking [was] thwarted by bifurcated proceedings," arbitration should be denied if nonarbitrable claims were present.  *Id*. at 219.  The other line of cases, which relied on the strong federal policy underlying

---

[2]    It is more than ironic that Plaintiffs – who have done everything to *evade* their agreements to arbitrate – now seek to fall back on the supposed goals of the Federal Arbitration Act ("FAA").  It is equally ironic that Plaintiffs have complained about the length of the proceedings associated with determining the enforceability of those agreements, as it is Plaintiffs' attempt to evade their arbitration agreements that has necessitated those proceedings.

3

the FAA, "require[d] courts to enforce the bargain of the parties to arbitrate, and 'not substitute [its] own views of economy and efficiency' for those of Congress." *Id*. at 217 (quoting *Dickinson v. Heinhold Secs.*, 661 F.2d 638, 646 (7th Cir. 1981)).

The Supreme Court rejected the former view, and specifically rejected the assertion "that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims." *Id*. at 219. The primary purpose of the FAA, the Court recognized, was "to ensure judicial enforcement of privately made agreements to arbitrate … . *Id*. at 219. According to the Court, "the fortuitous impact of the [FAA] on efficient dispute resolution" cannot overcome this principle, and "requires that [courts] rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation ... ." *Id*. at 220-21; *accord C. Itoh & Co. (America) v. Jordan Int'l Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977) ("[c]onsiderations of judicial economy bear no relation to 'the making and performance of an agreement to arbitrate,' and to permit a district court to deny a stay pending arbitration based on such discretionary considerations would, in our opinion, frustrate the strong federal policy in favor of arbitration which is expressed in the Federal Arbitration Act as interpreted by the Supreme Court"); *Miller v. Cotter*, 448 Mass. 671, 684, 863 N.E.2d 537, 548 (Mass. 2007) ("The judge's order denying the motion to compel arbitration stated that, because the arbitration agreement would require Miller to proceed against Dr. Cotter and the Birchwood defendants separately (in court and in arbitration proceedings respectively), it would result in "an inequitable, [inefficient] and unnecessarily expensive duplication of effort." We treat this as reliance on an equitable principle of judicial economy that seeks to avoid forcing parties into duplicative efforts. We find no support for such a principle in case law or in the rules of civil procedure, and do not think it adequate grounds to set aside an otherwise valid [arbitration] agreement.").

In short, to the extent this Court finds Coverall's arbitration agreements enforceable – and Coverall submits that they are in fact fully enforceable – those agreements should be enforced according to their terms, and the parties' claims sent to arbitration.[3]  Respectfully, any concerns about economy and efficiency have no bearing on this issue.[4]

### III. Because The Validity Of Coverall's Arbitration Agreements Is Governed By The Laws Of The State In Which Each Franchisee Is Located, Coverall's Arbitration Agreements Are Not Amenable To A Generalized Motion To "Strike"

The foregoing considerations notwithstanding, Plaintiffs' motion to strike Coverall's arbitration agreements should be denied because it makes no sense.  Subject to the principles set forth in Section 2 of the FAA, the validity of agreements to arbitrate is, as a general rule, governed by state law.  *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).  Therefore, the validity of the arbitration agreements at issue in this putative national class – *i.e.*, whether any provision in those agreements is unconscionable – will be governed by the law of the State of each affected franchisee, as Coverall's Franchise Agreement makes clear that it "shall be interpreted and governed by the laws of the state in which the Franchise" at issue "is located."  (Franchise Agreement ¶23.)  Further, questions of unconscionability depend on the facts and circumstances associated with a particular transaction, and therefore must be determined "on a case by case basis."  *Miller v. Cotter*, 448 Mass. 671, 679, 863 N.E.2d 537, 545 (2007) ("'Because there is no clear, all-purpose definition of 'unconscionable,' nor could there be, unconscionability must be determined on a case by case basis'") (quoting *Commonwealth v. Gustafsson*, 370 Mass. 181,

---

[3]  This assumes, of course, that this Court rejects Coverall's assertion that the validity of those agreements should be decided not by the Court, but by an arbitrator.

[4]  Citing these same concerns about judicial economy, Plaintiffs now complain about what they had previously asserted was their dispute resolution mechanism of choice – class-arbitration – because, according to Plaintiffs, the class arbitration procedure is expensive and tedious.  The

187, 346 N.E.2d 706 (1976)). As noted above, if Coverall's prior motions are reinstated, there will be only **one** arbitration agreement before the Court: namely, the arbitration agreement between Coverall and plaintiff Pius Awuah, which was the subject of Coverall's motion to stay Mr. Awuah's claims pending arbitration. [Docket No. 18.][5] Even if Plaintiffs were able to show that any of the provisions in Mr. Awuah's arbitration agreement were unconscionable under Massachusetts law (and Coverall submits they have not), such a determination would have no impact on the enforceability of the arbitration agreements that are governed by the laws of other states. Accordingly, the arbitration agreements are not amenable to some omnibus motion to strike.[6]

---

only support for this proposition is an article, and the only "support" for this proposition within that article is a quote from Plaintiffs' counsel.

[5] While Coverall moved to stay Mr. Awuah's claims pending arbitration, it did not move this Court to compel arbitration or stay litigation pending arbitration as to any other Plaintiff.

[6] In an effort to convince this Court otherwise, Plaintiffs rely on selected excerpts from a hearing before Judge Wolf in the *Machado* matter. Suffice to say, Judge Wolf's initial observations do not constitute his final conclusions (he specifically noted that he had not yet reviewed the cases on the issue of severability), and Plaintiffs notably fail to point to any ruling in which Judge Wolf found any provision in the arbitration agreements before him unconscionable. Moreover, in the months following Judge Wolf's initial comments, the First Circuit came out with several opinions confirming that, as long as the essence of the agreement to arbitrate could be preserved, severance was not only the appropriate remedy, but the outcome most consistent with the FAA. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 62 (1st Cir. 2006) ("by applying the savings clause and severing the class arbitration bar, we are actually saving the arbitral forum-an outcome consistent with the federal policy favoring arbitration"); *Anderson v. Comcast Corp.*, 500 F.3d 66, 77 (1st Cir. 2007). This conclusion is consistent with the overwhelming majority of jurisdictions, as Plaintiffs' counsel noted during the same hearing before Judge Wolf:

> Well, what the courts have typically done in the cases we've cited in which clauses in an arbitration agreement are found to be substantively unconscionable is that those have been stricken. Parties have been ordered to arbitration with unenforceable provisions stricken.

(Transcript of January 31, 2006 motion hearing at p. 14, lines 6-11.)

6

Additionally, assuming *arguendo* this Court determined that any provision in the arbitration agreement was unconscionable, it would need to determine whether it was appropriate to sever that provision. That issue, too, is governed by state law.[7] *See*, *e.g.*, *Terminix Int'l Co, LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005) ("Severability is decided as a matter of state law."). For this reason as well, the validity of Coverall's arbitration agreements is not properly addressed by a "motion to strike" those agreements.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to strike Coverall's arbitration clause should be denied.

**COVERALL NORTH AMERICA, INC.**,

By its attorneys,

    /s/ Michael D. Vhay
Michael D. Vhay (BBO No. 566444)
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

Norman M. Leon
John A. Hughes
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL  60601
(312) 368-4000

---

[7] Assuming Coverall's motions are reinstated, the only state law that will be before the Court is the law of Massachusetts, as that issue was briefed in connection with Coverall's motion to stay Mr. Awuah's claims. Rather than repeat verbatim its already-briefed argument on severance in this memorandum, Coverall respectfully refers this Court's attention to pages 18-20 of the reply memorandum it submitted in support of its motion to stay proceedings as to Mr. Awuah [Docket No. 46], which fully addresses why severance is the appropriate remedy in the event this Court concludes that any provision in Mr. Awuah's agreement is unenforceable.

                                          John Dienelt
                                        DLA P<small>IPER</small> US LLP
                                        1200 Nineteenth Street, NW
                                        Washington, DC  20036
                                        (202) 861-3900

Dated: March 27, 2008