**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                                          )
PIUS AWUAH, NILTON DOS SANTOS,              )
GERALDO CORREIA, BENECIRA                      )
CAVALCANTE, DENISSE PINEDA,                     )
JAI PREM, ALDIVAR BRANDAO,                        )
PHILLIP BEITZ, RICHARD BARRIENTOS,          )
MARIAN LEWIS, STANLEY STEWART,              )
and all others similarly situated,                       )          JURY DEMANDED
                                                          )          Civil Action No. 07-10287
                              Plaintiffs,                 )
                                                          )
                                                          )
             v.                                          )
                                                          )
COVERALL NORTH AMERICA, INC.,               )
                                                          )
                              Defendant.               )          **Leave to file granted on**
                                                          )          **April 21, 2008**
_____ )

**THIRD AMENDED COMPLAINT**

**I.      INTRODUCTION**

        1.      This is a national class action brought on behalf of workers who

have performed cleaning services for Defendant Coverall North America, Inc.

("Coverall").  The above-named plaintiffs and other similarly situated individuals

have been subjected to systemic misrepresentations and breaches of contract in

their relations with Coverall as described below.  Most notably, Coverall purports

to sell cleaning "franchises," knowing it does not have sufficient business to

satisfy its obligations under its franchise agreements.  Individuals purchase these

"franchises" for substantial sums of money, based on Coverall's

misrepresentations about the guaranteed amount of monthly income the

franchises will provide.  In addition, Coverall has also improperly misclassified

these workers as independent contractors and thereby denied them various

benefits to which they are entitled as employees under the wage laws of various

states, including guaranteed minimum wage, overtime pay, other wage

protections, and other benefits of employment, such as eligibility for

unemployment and workers' compensation.  In this action, the above-named

plaintiffs seek to recover, on their own behalves and on behalf of all similarly

situated individuals, compensation for these violations, statutory trebling of wage-

related damages, and attorneys' fees and costs, as provided for by law.

**II.**   **PARTIES**

2.      Plaintiff Pius Awuah is an adult resident of Lowell, Massachusetts.

He performed cleaning services for Coverall in Massachusetts from

approximately April 2005 until August 2005.

3.      Plaintiff Nilton dos Santos is an adult resident of North Attleboro,

Massachusetts.  He performed cleaning services for Coverall in Massachusetts

from approximately March 2002 to July 2005.

4.      Plaintiff Geraldo Correia is an adult resident of Revere,

Massachusetts.  He performed cleaning services for Coverall in Massachusetts

from approximately November 2000 to November 2004.

5.      Plaintiff Benecira Cavalcante is an adult resident of Somerville,

Massachusetts.  She has performed cleaning services for Coverall in

Massachusetts since approximately November 2001.

6.      Plaintiff Denisse Pineda is an adult resident of Paterson, New Jersey, who performed cleaning services for Coverall in New Jersey from approximately June to August 2006.

7.      Plaintiff Jai Prem is an adult resident of Union, New Jersey, who performed cleaning services for Coverall in New Jersey from approximately March 1994 through April 2007.

8.      Plaintiff Aldivar Brandao is an adult resident of Watertown, Massachusetts, who performed cleaning services for Coverall in Florida from approximately 2001 to 2004.

9.      Plaintiff Phillip Beitz is an adult resident of Fresno, California, who performed cleaning services for Coverall in California from approximately January 2006 to July 2007.

10.     Plaintiff Richard Barrientos is adult resident of Jim Thorpe, Pennsylvania, who performed cleaning services for Coverall in Pennsylvania from approximately 2002 to 2005.

11.     Plaintiff Marian Lewis is adult resident of Lewisville, Texas, who performed cleaning services for Coverall in Texas from approximately January 2007 until September 2007.

12.     Plaintiff Stanley Stewart is adult resident of Wylie, Texas, who performed cleaning services for Coverall in Texas beginning in approximately December 2006.

13.     This is a class action that the above-named plaintiffs bring on their own behalves and on behalf of all others similarly situated, namely all other

individuals who have performed cleaning services for Coverall within the United States and have been subjected to the legal violations described in this complaint.  The class meets all of the requirements of Rule 23 of the Federal Rule of Civil Procedure.

14.     Defendant Coverall North America, Inc. is a Delaware corporation with its principal place of business in Boca Raton, Florida.

## III.     <u>JURISDICTION</u>

15.     Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1332(d)(2).

## IV.     <u>STATEMENT OF FACTS</u>

### A.     **Coverall's Misrepresentations and Breaches of Contract**

16.     Coverall employs thousands of cleaning workers across the United States to perform cleaning work for customers who negotiate cleaning services accounts with Coverall.  These workers have included the above-named plaintiffs.

17.     Coverall requires its cleaning workers to sign "franchise agreements" in order to obtain work, and it labels its cleaning workers as "franchisees."

18.     In order to induce workers to sign these franchise agreements (which it does through high pressure sales tactics), Coverall negligently and/or intentionally misrepresents that it has sufficient business to provide the monthly income it promises the workers in their agreements.  In fact, Coverall does not

have enough accounts to offer to workers who have signed franchise agreements.

19.     Thus, Coverall knows it does not have sufficient business to satisfy the terms of the franchise agreements when it advertises franchises, solicits franchisees, and enters into franchise contracts.  Coverall knowingly and willfully solicits and enters into agreements which it knows it cannot perform.

20.     Coverall also misrepresents that workers will receive a higher hourly rate of pay for their work than Coverall knows they will be able to earn.

21.     Coverall's franchise agreement is a form contract of adhesion establishing the terms and conditions of employment of Coverall cleaning workers.

22.     None of the Coverall cleaning workers is able to negotiate for different terms and conditions from those appearing in the form franchise agreement.

23.     The form franchise agreement is written exclusively in English, in highly technical and confusing language, with misleading section headings and provisions regarding waivers of important rights buried within the agreement.

24.     The form franchise agreement is not available in other languages, although many of the workers who sign these form franchise agreements have little to no fluency in English.

25.     Consequently, as Coverall knows, the workers do not understand the terms of the agreement, whether or not they speak English.

26.     Coverall targets immigrants in particular because they are easily victimized by Coverall's misrepresentations and other systemic legal violations, as described herein.

27.     Pursuant to these form franchise contracts, workers pay substantial sums of money as "franchise fees" (ranging from approximately $6,000 to more than $30,000) in order to obtain cleaning work.

28.     In exchange for these large franchise fees, Coverall guarantees a certain level of monthly income beginning after the workers have made down payments to purchase their franchise and completed their training period.

29.     However, Coverall systemically breaches its written agreements by not providing or offering sufficient or adequate work as promised to produce the guaranteed level of income.  Rarely if ever do the workers receive the promised level of monthly income.

30.     For example, Mr. Awuah paid a franchise fee of $14,000 and was promised $3,000 per month in janitorial cleaning work, but he typically received less than $1,300 per month during his time working for Coverall.

31.     Mr. dos Santos paid an initial franchise fee of $14,000 as well as substantial additional fees, for which Coverall promised him $10,000 per month in janitorial cleaning work.  Coverall has not provided him with any cleaning work since July 2005.

32.     Mr. Correia paid fees to Coverall totaling approximately $18,800, for which Coverall promised him $4,100 per month in janitorial cleaning work.

Mr. Correia typically received approximately $2,000 per month during his time working for Coverall.

33.     Ms. Cavalcante paid fees to Coverall totaling more than $25,000, for which Coverall promised her $6,000 per month in janitorial cleaning work. From 2005 through the present, Ms. Cavalcante has received between $130 and $1,700 per month in work from Coverall.

34.     Ms. Pineda paid a franchise fee of $12,000 and was promised $2,000 per month in janitorial cleaning work, but she received approximately $420 per month when she was working for Coverall.

35.     Mr. Prem was promised $3,000 per month in janitorial cleaning work, but since approximately 2006 he has received less than $500 per month.

36.     Mr. Brandao paid a franchise fee of $14,000 and was promised $3,000 per month in janitorial cleaning work, but he typically received approximately $1,500 per month during his time working for Coverall.

37.     Mr. Beitz paid a franchise fee of $14,750 to Coverall, for which Coverall guaranteed him $3,000 per month in janitorial cleaning work, as well as more than $25,000 in additional fees.  For much of the time when he worked for Coverall, Mr. Beitz received only $2,000 per month from Coverall.

38.     Mr. Barrientos paid Coverall an initial franchise fee of $11,500 and additional fees totaling approximately $10,000, for which he was promised approximately $5,400 per month in janitorial cleaning work.  Since April 2005, Mr. Barrientos has not received any cleaning work from Coverall.

39.     Ms. Lewis paid Coverall a franchise fee of $23,400, for which she was promised $7,500 in janitorial cleaning work, but she received an average of only $3,700 per month in work when she was working for Coverall.

40.     Mr. Stewart paid Coverall a franchise fee of $20,500, for which he was promised $5,500 in janitorial cleaning work, but he has received an average of approximately $2,400 to $3,500 per month in cleaning work from Coverall.

41.     Through a variety of means involving misrepresentation, Coverall purports to satisfy its obligations under the form franchise agreements when it has come nowhere near satisfying those obligations.  Through these means, Coverall attempts to make it appear that it is the workers' fault, rather than Coverall's, that they do not have sufficient accounts to satisfy their monthly income guarantee.

42.     For example, Coverall negligently and/or intentionally misrepresents the number of hours per week that will be required to service the accounts offered.  These misrepresentations are used to induce workers to accept the accounts toward their guaranteed level of income.  The accounts typically require substantially more hours of work than Coverall represents.

43.     In addition, Coverall promises cleaning accounts that are geographically convenient to one another and convenient to the workers' homes. However, the accounts are typically spread very far apart, making it very inconvenient, if not impossible, to accept or perform the work for these accounts.

44.     Coverall typically contends that it has fulfilled its obligations under the franchise contract by offering accounts, knowing that accounts offered could

not be accepted due to geographic inconvenience, sheer impossibility of performing the number of hours of work required to service the accounts, or rates of pay well below what was promised.

45.     Coverall also frequently violates the form franchise agreement by taking accounts away without warning and for no justifiable reason.  Also in violation of the agreement, Coverall gives no opportunity to correct or challenge alleged deficiencies in workers' performance.

46.     When doing so, Coverall frequently tells the workers performing the cleaning services that the customers were dissatisfied with their work, when in fact the customers were satisfied with their work.

47.     After taking an account away from a worker, Coverall then can offer the account to another worker who has signed a franchise agreement to count toward that person's monthly guarantee.  In this way, Coverall churns the accounts it has, in order to make it appear that it has satisfied its franchise agreements.

48.     When Coverall does not satisfy the terms of the workers' franchise agreements by not offering sufficient accounts (that are free from misrepresentations) or by taking away accounts without justification or warning, it does not refund the franchise fees that the workers have already paid.

49.     Indeed, Coverall requires workers to continue making payments on their franchise fees, billing them for these payments, even when they have no further work from Coverall.

50.     In addition, Coverall deducts excessive fees from the payments it makes to the workers under the franchise agreements.

51.     Coverall significantly underbids cleaning contracts with its clients. As a result of this underbidding and the deduction of excessive fees from their pay, the workers who have contracted with Coverall receive far less pay for their work than the fair value of their services and far less pay than they were promised on an hourly and monthly basis.

52.     As of 2006, Coverall had more than 4,500 current "franchisees" nationwide, including approximately 209 in Massachusetts, 366 in New Jersey, 725 in Florida, 699 in California, 202 in Pennsylvania, and 203 in Texas.

**B.      Coverall's Misclassification of Its Cleaning Workers as Independent Contractors**

53.     Coverall purports to classify its cleaning workers as independent contractors.  However, these workers are in fact employees under the statutes and common law of various states.  For example, in Massachusetts, they do not meet the definition of independent contractors as set forth in Mass. Gen. L. c. 149 § 148B.

54.     The behavioral and financial control manifested over these workers by Coverall demonstrates that the workers are employees rather than independent contractors.

55.     The cleaning workers perform services within Coverall's usual course of business, which is to provide cleaning services to customers.

56.     Also, Coverall instructs the cleaning workers in how to do their work and dictates their performance of the details of their jobs.

57.     The cleaning workers generally do not work in an independently established trade, occupation, profession, or business.  Instead, as required by their contracts, the cleaning workers perform cleaning services exclusively for Coverall's clients.

58.     Also, the cleaning workers do not represent themselves to the public as being in an independent business to provide cleaning services, and they typically have not invested in an independent business apart from their payment of "franchise" fees to Coverall.

59.     In fact, the Massachusetts Supreme Judicial Court has ruled that a Coverall cleaning worker is an employee of Coverall and thus eligible for unemployment compensation upon the loss of her job, in *Coverall North America, Inc. v. Com'r of Div. of Unemployment Assistance*, 447 Mass. 852 (2006).

60.     Because of their misclassification by Coverall as independent contractors, these cleaning workers have not received the benefits that inure from the employment relationship under law.

61.     For example, Coverall's cleaning workers frequently do not receive the minimum wage for the work they perform.

62.     Although many of them work more than 40 hours per week, they do not receive one and one-half times their regular rate for hours worked in excess of 40 hours per week.

63.     Numerous deductions are made from their pay, which constitute improper deductions from wages.  For example, Coverall deducts payments towards "franchise fees," interest payments, payments for Coverall to manage

the workers' cleaning accounts, and other payments.  It also withholds workers'

pay when it contends that Coverall clients have not paid their bills.

64.     These cleaning workers do not receive pay for their time spent

traveling between different accounts during the work day.

65.     Coverall denies that these workers are eligible for unemployment

payments when they lose their jobs, or when they are constructively discharged

by having their cleaning accounts taken away and not replaced.

66.     Also, because of the misclassification, Coverall's cleaning workers

are not covered by workers' compensation when they are injured on the job.

## COUNT I

### (Breach of Contract)

Coverall has breached its written contracts with the plaintiffs and class

members, as described above, in violation of the common law of all states in

which Coverall does business, including but not limited to Massachusetts, New

Jersey, Florida, California, Pennsylvania, and Texas.

## COUNT II

### (Rescission of Contract)

The written contracts between Coverall and the plaintiffs and class

members are unconscionable and should be held unenforceable in part or in

whole under the common law of all states in which Coverall does business,

including but not limited to Massachusetts, New Jersey, Florida, California,

Pennsylvania, and Texas.

**COUNT III**

**(Misrepresentation)**

Coverall has committed intentional and/or negligent misrepresentation in its representations to the plaintiffs and class members, as described above, in violation of the common law of all states in which Coverall does business, including but not limited to Massachusetts, New Jersey, Florida, California, Pennsylvania, and Texas.

**COUNT IV**

**(Deceptive and Unfair Business Practices)**

Defendant's conduct in inducing the plaintiffs and class members to purchase purported cleaning "franchises" and its conduct with respect to the plaintiffs and class members in the course of, and following, their performing cleaning services as described above constitutes unfair and deceptive practices, in violation of the statutory and common law of all states in which Coverall does business, including but not limited to Mass. Gen. L. c. 93A, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, *et seq.*, the California Business & Professions Code § 17200, *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, and the Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*

**COUNT V**

**(Quantum Meruit)**

Plaintiffs and class members have been deprived by Coverall of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of all states in which Coverall does business, including but not limited to Massachusetts, New Jersey, Florida, California, Pennsylvania, and Texas.

**COUNT VI**

**(Unjust Enrichment)**

Through the conduct described above, Coverall has been unjustly enriched under the common law of all states in which Coverall does business, including but not limited to Massachusetts, New Jersey, Florida, California, Pennsylvania, and Texas.

**COUNT VII**

**(Misclassification as Independent Contractors)**

Coverall has knowingly and willfully misclassified plaintiffs and class members as independent contractors instead of employees, in violation of the statutory and common law of all states in which Coverall does business, including but not limited to Massachusetts (*see* Mass. Gen. L. c. 149 § 148B), New Jersey, Florida, California, Pennsylvania, and Texas.

**COUNT VIII**

**(Wage Violations)**

Coverall's knowing and willful failure to pay the plaintiffs and class members all wages due to them, including minimum wage, overtime, and including making improper deductions from their pay, violates the wage laws of all states in which Coverall does business, including but not limited to Massachusetts (*see* Mass. Gen. L. c. 149 §§ 148 and 150; Mass. Gen. L. c. 151 §§ 1, 1A), New Jersey (*see* N.J. St. 34.11-3, *et seq.*; N.J. St. 34.11-56a, *et seq.*), Florida (*see* F.S. § 448.01, *et seq.*), California (see Cal. Labor Code § 200, *et seq.*; Cal. Labor Code § 500, et seq.; Cal. Labor Code § 1194), Pennsylvania (*see* 43 P.S. § 260.1, *et seq.*; 43 P.S. § 333.101, *et seq.*), and Texas (*see* V.T.C.A. Labor Code § 61.001, *et seq.*;  62.001, *et seq.*).

**JURY DEMAND**

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Certification of this case as a national class action;

2.      Certification of subclasses of Coverall workers who performed work in states with particular statutory claims described in this complaint (or other claims for which subclasses may contribute to the

15

manageability of this litigation), including Massachusetts, Florida, New Jersey, California, Pennsylvania, and Texas;

3.      Damages attributable to Coverall's statutory and common law violations;

4.      Statutory enhancement of damages as allowed by law;

5.      Declaratory and injunctive relief, requiring Coverall to cease its illegal practices;

6.      Rescission of the written contracts between Coverall and the plaintiffs and class members, in whole or in part; and

7.      Any other relief to which the plaintiffs and class members may be entitled.

Respectfully submitted,

PIUS AWUAH, NILTON DOS SANTOS,
GERALDO CORREIA, BENECIRA
CAVALCANTE, DENISSE PINEDA, JAI
PREM, ALDIVAR BRANDAO, PHILLIP BEITZ,
RICHARD BARRIENTOS, MARIAN LEWIS,
STANLEY STEWART,
and all others similarly situated,

By their attorneys,

 / s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Harold L. Lichten, BBO #549689
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
        & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200

Jerald R. Cureton, admitted *pro hac vice*
Anthony L. Marchetti, admitted *pro hac vice*
CURETON CAPLAN
3000 Midlantic Drive, Suite 200
Mt. Laurel, NJ 08054
(856) 824-1001

Dated:        March 13, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2008, I caused a copy of this document to be served by electronic filing on all counsel of record.

 / s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.