```
 1                  UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
                                      Civil Action
 3                                    No. 07-10287-WGY

 4
    * * * * * * * * * * * * * * * * *
 5  PIUS AWUAH, NILTON DOS SANTOS,    *
    GERALDO CORREIA, DENISSE PINEDA,  *
 6  JAI PREM, ALDIVAR BRANDAO,        *
    and all others similarly situated, *
 7                                    *
                 Plaintiffs,          *
 8  v.                                *   MOTION HEARING
                                      *
 9  COVERALL NORTH AMERICA, INC.,     *
                                      *
10               Defendant.           *
                                      *
11  * * * * * * * * * * * * * * * * *
                BEFORE:  The Honorable William G. Young,
12                          District Judge

13  APPEARANCES:

14           PYLE, ROME, LICHTEN, EHRENBERG &
         LISS-RIORDAN, P.C. (By Shannon E. Liss-Riordan,
15       Esq. and Harold L. Lichten, Esq.), 18 Tremont
         Street, Suite 500, Boston, Massachusetts 02108,
16       on behalf of the Plaintiffs

17           DLA Piper US LLP (By Michael D. Vhay,
         Esq.), 33 Arch Street, 26th Floor, Boston,
18       Massachusetts 02110-1447
                 - and -
19           DLA Piper US LLP (By John F. Dienelt,
         Esq.), 1200 19th Street, N.W., Washington, D.C.
20       20036
                 - and -
21           DLA Piper US LLP (By Norman M. Leon, Esq.),
         203 North LaSalle Street, Suite 1900, Chicago,
22       Illinois 60601-1293, on behalf of the Defendant

23
                                    1 Courthouse Way
24                                  Boston, Massachusetts

25                                  May 29, 2008
```

1              **THE CLERK:**  Civil Action 07-10287, Awuah v.

2     Coverall.

3              **THE COURT:**  Yes.  And now, Ms. Liss-Riordan is in

4     the hall, I need someone to go out and get her.

5              (Pause in proceedings.)

6              **THE COURT:**  Well, Ms. Liss-Riordan, I thank you.

7     I'm going to ask you to shift gears now, and I thank you for

8     whatever efforts took place in the other case.

9              Would counsel introduce themselves.

10             **MS. LISS-RIORDAN:**  Good afternoon, your Honor.  For

11    the plaintiffs, I'm Shannon Liss-Riordan, and with me is

12    Harold Lichten.

13             **MR. VHAY:**  Good afternoon, your Honor.  Michael

14    Vhay on behalf of the defendant, Coverall North America.

15    With me are Norman Leon and John Dienelt.

16             **THE COURT:**  All right.  Now, there's only one thing

17    that in one of these various motions that I want to hear

18    argument on and I've set for this afternoon, but there are

19    other motions before the Court that I can deal with

20    summarily, and they are these.

21             There are various motions to transfer the cases of

22    individual plaintiffs to other jurisdictions.  Those motions

23    are denied without hearing and also without prejudice to

24    their renewal should the class action allegations be

25    defeated.  If this isn't going to be a class action, we'll

1    consider transferring those cases to other jurisdictions and

2    we'll consider it afresh.

3         So, what I have before me is plaintiffs' motion to

4    strike the arbitration clause.  Now, I understand there's no

5    basis for just striking an arbitration clause.  And when you

6    look at the briefs, what you're really talking about is to

7    declare that the arbitration clauses here are

8    unconscionable.

9         And I'll hear you, Ms. Liss-Riordan.

10        **MS. LISS-RIORDAN:**  Thank you, your Honor.

11        As we've set forth in the current briefing and

12   previous briefing that we submitted in response to

13   Coverall's earlier motions to compel arbitration, the

14   arbitration provision in this franchise agreement has so

15   many unconscionable terms that the Court should strike it,

16   should refuse to enforce it in its entirety.

17        Now, Coverall picks apart at each of the terms and

18   tries to pull up cases from here and there that said, well,

19   this term was okay, this term was okay.

20        **THE COURT:**  Well, you say from here and there.  But

21   really we've, at least before me, and if I go down a class

22   action route, and we've, we've covered this ground in other

23   context.  I am modestly familiar with the law in

24   Massachusetts.  I also have to take a look at the law in New

25   Jersey and Pennsylvania.  I'm less familiar with that and,

1    respectfully, you haven't developed that very much.

2         I can't -- and this agreement, I've looked at these

3    agreements, they all say that the law of the place of the

4    franchise governs.  So I am bound by a contractual agreement

5    to apply the laws of New Jersey and Pennsylvania.

6         **MS. LISS-RIORDAN:**  Your Honor, I respectfully

7    disagree with that.  What the First Circuit said in Kristian

8    v. Comcast was that there were basically two lines of cases

9    that were going parallel but not talking to each other.  One

10   line of cases looked at state unconscionability law; the

11   other line of cases looked at the FAA and developed a

12   federal vindication of statutory rights analysis.

13        What Kristian said was that you look at the

14   vindication of statutory rights analysis, which is very

15   similar to the substantive unconscionability doctrine from

16   the state law lines of cases.

17        So, that is why it doesn't matter that these

18   agreements were signed -- well, I've got two responses in

19   the alternative.  One is it doesn't matter that the

20   agreements were signed in various states because the Court

21   would apply a uniform federal analysis under the FAA, under

22   Gilmer.  Remember, the SJC has determined that they're

23   employees for purposes of Mass. law at least.  But in the

24   alternative, even if you were to look at state law, which we

25   don't think under Kristian and Anderson you would need to,

1    but even if you did, you could look at the law of one state

2    which is where Coverall is headquartered, incorporated and

3    created its franchise agreements, and that's Florida, which

4    could solve the issue of the multi-states, having to sort

5    out what the laws of the various states say; or you could

6    look at the laws of the particular states where we have lead

7    plaintiffs where there's an arbitration provision,

8    Pennsylvania and New Jersey.  These are different avenues at

9    the Court's disposal.  And I would suggest it's the federal

10   avenue that the First Circuit in Kristian is counseling the

11   district courts to utilize, but there are other avenues at

12   the Court's disposal as well to resolve this in a way that

13   would not be overly complicated or difficult to administer.

14         And again, looking back at our broader arguments

15   about why a company that we have some evidence and expect to

16   be able to develop further evidence once we get into the

17   merits, operates in a unified manner across the country,

18   shouldn't be able to pick off individual plaintiffs one by

19   one or individual groups of plaintiffs state by state.

20         **THE COURT:**  This -- these contracts have a

21   severability clause.  If I were to agree with you as to one

22   or more than one aspect of this arbitration agreement, the

23   contracts also have a requirement that the arbitrators can't

24   bury the contract.  That makes perfect sense.  So the

25   arbitrators are stuck with the contracts as they are

1    written.   That's the nature of these contracts.

2           But, if I were to say that the cost sharing, the

3    attorneys' fees, the class action restriction, the no

4    punitive damages, take, take a variety, if I were to say

5    that one or more of those aspects of the arbitration

6    agreement were unconscionable under, what you say is this

7    Kristian analysis, we'll see about that, or under the laws

8    of any particular state, then I would simply excise it.   But

9    it would leave an arbitration agreement.   It would simply

10   say to the arbitrators, you know, you're not bound by that.

11   For instance, if state law applies punitive damages and

12   that's appropriate, go ahead, apply punitive damages, or

13   this cost sharing is just not, just not right, instead,

14   we'll do it as courts do it, or some other way.   If I were

15   to prune this contract, it doesn't mean there's no

16   arbitration.   It just means there's no arbitration where the

17   arbitrators are restricted this way.   Isn't that right?

18          **MS. LISS-RIORDAN:**   Well, your Honor, that's what

19   our briefing on the motion to strike and the reply briefing

20   that's currently pending addresses directly.   We have cited

21   a number of cases, significantly Justice Roberts when he was

22   on the circuit court addressed the precise issue that you

23   just raised.

24          **THE COURT:**   He did indeed.   And if what's left is

25   this fragment, he says it better, this isn't what the

1    parties agree, it's just a fragment, then the whole thing

2    ought to go because courts know how to adjudicate disputes

3    and we ought to adjudicate them.

4          I'm saying there's a spectrum here.  And don't you

5    agree, unless you win on various of these so that there's

6    only a remnant there, the result will be, I will reform the

7    contract, or some of them, we'll see, and then it will go

8    back to arbitration, unless I go so far as Judge, now Chief

9    Justice Roberts went in the DC Circuit.

10         **MS. LISS-RIORDAN:**  Two, two points to that, your

11   Honor.  One is, I know you didn't get the final ruling, but

12   as we've submitted to you, Judge Wolf, looking at this very

13   agreement at an initial conference, stated just what Justice

14   Roberts said, was that it would be a perverse incentive for

15   the courts to encourage companies to go so far knowing that

16   if they go, that if they go too far the courts will merely

17   prune them back.

18         **THE COURT:**  I understand that.  But he didn't write

19   an opinion.  Have you got the transcript?

20         **MS. LISS-RIORDAN:**  I did.  I submitted it.  In

21   fact --

22         **THE COURT:**  Yes.

23         **MS. LISS-RIORDAN:**  -- it's an attachment to

24   plaintiffs' motion to submit, to strike the Coverall -- it's

25   Exhibit A to our motion to strike.

1          THE COURT:  Actually there's some merit to that.

2     Let me --

3          MS. LISS-RIORDAN:  And if I could just make the

4     second point, your Honor.

5          THE COURT:  Please.

6          MS. LISS-RIORDAN:  And it's in the papers but just

7     to emphasize.  And I know that there's mixed case law on

8     this, but I think part of the totality of what the Court can

9     consider is that, Coverall instituted this arbitration

10    clause at a certain point in time.  So it's only the

11    franchisees who entered an agreement with them after that

12    date that have arbitration clauses.  The earlier ones don't.

13    So we only have a couple of the lead plaintiffs who actually

14    signed these.  Regardless of what your Honor does on this

15    arbitration clause, this case is going to proceed in this

16    Court because many franchisees did not sign an arbitration

17    clause.

18         THE COURT:  But what difference does that make to

19    this analysis?

20         MS. LISS-RIORDAN:  The difference it makes to the

21    analysis is that the Court can look at the goals of the

22    Federal Arbitration Act which was to honor the parties'

23    agreements to promote efficiency in dispute resolution and

24    send to arbitration cases that can go to arbitration, and

25    one of the goals that's talked about in a number of

1    decisions is to relieve the federal courts of increasing

2    case dockets when private dispute resolution has been agreed

3    to and allows the vindication of statutory rights under

4    Gilmer.

5            So, I'm just saying that even if you were to not

6    agree with Judge Wolf, not agree with Justice Roberts, and

7    prune this agreement back, this case is still going to be

8    before your Honor, it's still going to take judicial

9    resources.  If it's not, if it's not certified as a class,

10   it could very well take the resources of many courts around

11   the country if the plaintiffs have to go file in different

12   courts.  And it would be far more efficient to focus the

13   parties, the Court's, counsel's resources in one forum that

14   can hear the whole thing as a whole.

15           **THE COURT:**  All right.  Let me put this question.

16           I'm not so sure that I have before me an adequate

17   factual record to resolve the issues that I've raised.  What

18   do you think about a next step being to hold hearings

19   relative to these issues, costs, the deterrent effect of the

20   class action bar and the like.  What do you think about

21   that?

22           **MS. LISS-RIORDAN:**  Your Honor, we would be all in

23   favor of your Honor doing that.  I just want to explain just

24   by way of background information.

25           That is what Judge Wolf said in the Machado case.

1    We spent a year approximately in discovery leading up to

2    that hearing that you've just described.  The goal of

3    arbitration, you know, since it's to make things more

4    efficient and quicker, I would just want the Court, if we do

5    go down that road, to place reasonable limitations on the

6    parties for how far --

7              THE COURT:  Sure.

8              MS. LISS-RIORDAN:  -- discovery could go.

9              THE COURT:  And quicker.

10             MS. LISS-RIORDAN:  And quicker.  Because --

11             THE COURT:  I understand.

12             MS. LISS-RIORDAN:  Because Coverall engaged in

13   scorched earth discovery tactics when we proceeded along

14   those lines before.

15             THE COURT:  Well, I hear what you say.

16             All right, let me turn to them.  And really my

17   questions are the same.  I mean, these are the questions

18   before the Court.

19             MR. DIENELT:  Very well.

20             THE COURT:  What do you think of her, what do you

21   think of her Kristian analysis?

22             MR. DIENELT:  Well, I think it applies well in a

23   federal case, but that's not -- this is not a federal case.

24   I believe that Kristian limited itself to a federal

25   antitrust claim that what you have before you are state law

1    common law claims.

2            **THE COURT:**  It's a federal case.

3            **MR. DIENELT:**  It is a federal case, of course, it

4    is in federal court, but it does not implicate federal

5    rights in the same way the Kristian case did.  That case and

6    the doctrine from our reading of vindication of rights is a

7    balancing of federal statutes, the Federal Arbitration Act,

8    particularly Section 2, against federally protected rights.

9    What you have is the Federal Arbitration Act and a series of

10   alleged state common law claims that would fit within the

11   Section 2 approach which would be consistent with and in

12   which you should apply an unconscionability analysis.

13           **THE COURT:**  All right.  Now --

14           **MR. DIENELT:**  In fact --

15           **THE COURT:**  And in performing that analysis, I

16   sketched for her a spectrum.  Don't you -- do you agree that

17   that's accurate, that given the severability clause what I

18   have to do here is see if anything ought be struck, and the

19   way you go at it, under the law of any of the necessary

20   jurisdictions, and if so, is there enough left that a proper

21   application of the severability clause is to send the case

22   to, the individual to arbitration not so shackled.

23           **MR. DIENELT:**  If you conclude, and we would urge

24   you not so to conclude, that it is your job rather than the

25   job of the arbitrator to make these determinations --

1          **THE COURT:**  Well, isn't it --

2          **MR. DIENELT:**  -- then the answer is yes.

3          **THE COURT:**  Isn't it the job of the Court to decide

4     whether there is in fact an arbitration agreement that is

5     not unconscionable?

6          **MR. DIENELT:**  Here we have a situation in which the

7     parties agreed, as we've indicated in our briefs, that the

8     rules of the AAA would apply.  And Rule 7(a) of the AAA

9     rules vests the arbitrator with the ability to determine the

10    existence, scope or validity of the arbitration agreement.

11    So our primary argument here, Judge Young, is that you

12    should defer, if you will, to the arbitrator on these

13    arbitrability issues, that the arbitrator can determine

14    which, if any, of the six aspects of the franchise agreement

15    the plaintiffs challenge here as in one way or another being

16    unconscionable are in fact so and should be severed from the

17    agreement.

18          Now, there is a provision, and I want to

19    specifically focus on it, that you mentioned in argument

20    with opposing counsel about the limitation set forth with

21    respect to the arbitrator revising the agreement.

22          **THE COURT:**  Yes.

23          **MR. DIENELT:**  In our view, the AAA rules and the

24    concept that we urge you to embrace of placing this in the

25    arbitrator's bailiwick puts the arbitrator in effect in your

```
1    shoes, or your robe, and gives him the same level of

2    discretion to sever that you have.

3            THE COURT:  Well, you say that now.  It doesn't

4    look like that's what the contract says.

5            MR. DIENELT:  Well, the contract, if you read it as

6    saying that the arbitrator may not sever is inconsistent

7    internally, and it would in that circumstance be your job,

8    or his job, to reconcile the two so that the agreement will

9    be read as a whole.  And we suggest that the language of the

10   provision of the arbitration agreement that focus, that

11   you're focusing on, which talks about reforming the terms of

12   the agreement, can be reconciled with the language in, I

13   believe it's Section 28 of the franchise agreement that

14   talks about severability and not reformation.  We believe

15   that if you, or if, as we suggest, the arbitrator looks at

16   the arbitration agreement, you can take, or he or she can

17   take a pen and sever the provisions, if any, that are deemed

18   unconscionable.  And if the Chief Justice were here and he

19   were applying the Booker case in which he wrote the majority

20   opinion, which did enforce, did send the matter to

21   arbitration, I believe he would not include, I don't believe

22   you should conclude, and I don't believe an arbitrator

23   should conclude that we would be left no matter what you

24   did --

25           THE COURT:  Isn't --
```

 1          **MR. DIENELT:**  -- with a fragment as you put it and

 2     as he put it.

 3          **THE COURT:**  Isn't Chief Judge Wolf's comment,

 4     though, a very apt one:  It would be odd to create

 5     incentives to add in unconscionable provisions confident

 6     that a court or an arbitrator would strike them and you

 7     nevertheless get arbitration.

 8          I must say what my Chief has said resonates with

 9     me.  It's not controlling.  But isn't that an odd incentive?

10          **MR. DIENELT:**  He did say that there would be a

11     possibility that it would create incentives or

12     disincentives, depending upon how you look at it.  But what

13     he said was we would need to know whether we were left with

14     this disintegrated fragment --

15          **THE COURT:**  Yes.

16          **MR. DIENELT:**  -- that would remain.  And he talked

17     about infecting an arbitration clause and not having to

18     unravel a highly integrated, complex document.  You know

19     that because you read and you quoted the opinion.

20          **THE COURT:**  Right.

21          **MR. DIENELT:**  This is not a highly complex

22     document.  If you severed everything, if you or the

23     arbitrator severed everything after the first section, what

24     you would have is a plain vanilla arbitration provision.

25          **THE COURT:**  Yes.

1        **MR. DIENELT:**  It would say we will arbitrate

2   pursuant to the AAA rules.

3        **THE COURT:**  You may well be right.

4        What do you say to my concern that, and these have

5   been able arguments and I appreciate them, to my concern

6   that I probably ought not make this decision save on a more

7   completely developed record as to expense, incentives,

8   disincentives and the like.  What do you say to the fact

9   that I ought proceed first at least to some limited hearing

10  on that issue before making this decision.

11       **MR. DIENELT:**  I say first, your Honor, that the

12  plaintiffs have had an ample opportunity to put forth the

13  kind of specific evidence that the courts, starting with

14  Green Tree, have required with regard to issues of

15  unconscionability.  They didn't do it the first time.  They

16  haven't done it the second time.  And --

17       **THE COURT:**  And the first time you say is in

18  Machado.

19       **MR. DIENELT:**  In response, in response to our

20  motion to stay pending arbitration.

21       **THE COURT:**  Oh, I see.

22       **MR. DIENELT:**  And now they come back with a motion

23  to strike or declare unconscionable, or whatever, the

24  agreement, extensively briefed, offered evidence as they see

25  it from another case, from another lawyer, motions we've

1    moved to strike, but what they didn't do is get specific.

2         **THE COURT:**  Well --

3         **MR. DIENELT:**  They didn't get down and say Awuah

4    can't afford it because of this and Pineda can't afford it

5    because of that, and so forth and so on.

6         Our point is they've had their chance.  If

7    that point is rejected then our position would be, yes, go

8    forward, satisfy yourself, assuming that you are also going

9    to reject our proposition that this is something that the

10   arbitrator, when referred to him or her, would be quite

11   capable of determining.

12        **THE COURT:**  No, your logic is impeccable.

13        Here's, here's -- let's talk practically for a

14   moment.  I'm going to take -- here's what I think I'm going

15   to do.  But let's talk timing.

16        I'm going to take under advisement the issue of

17   whether I should leave this arbitrability issue to the

18   arbitrator, or whether I should decide.  At the same time, I

19   have a paired magistrate judge on this case.  You probably

20   know who it is.  I'm sorry, I don't.

21        Given my schedule, for the immediate future, it

22   would be very difficult for me to hold these hearings within

23   the next couple of months.  But, since at least as to those

24   plaintiffs who have arbitration agreements, we have to sort

25   this out first.  And I don't want this delaying the

1    remainder of the case.  My thought would be to send it to

2    the paired magistrate judge for a prompt hearing and report

3    and recommendation as to the issues of unconscionability

4    that have been raised.

5            What do you say to that, Ms. Liss-Riordan?

6            **MS. LISS-RIORDAN:**  Your Honor, as I stated just a

7    moment ago, the plaintiffs would have no objection if your

8    Honor decided it was necessary to do that.  But let me

9    just point out two more things, if I might.

10           In the First Circuit case of Skirchak v. Dynamics

11   Research Corporation, a case in which the plaintiffs

12   challenged a class action waiver as unconscionable, the case

13   was submitted to the district court on affidavits alone.

14   The defendant said that it was necessary to have a hearing

15   and to have a more developed factual record on the

16   challenge, the unconscionability challenge.

17           When it went up on appeal to the First Circuit, the

18   defendant again said there was only the submission of

19   affidavits and we never got a hearing on these issues.  The

20   First Circuit affirmed the district court which denied the

21   discovery and denied a hearing on this.  And secondly, if I

22   can just briefly --

23           **THE COURT:**  Well, let me -- no, but let me --

24           **MS. LISS-RIORDAN:**  Okay.

25           **THE COURT:**  -- put this to you.  You're willing to

1  do this.  His argument is you had your chance.  I express no

2  opinion on it.  But I'm certainly not going to impose

3  additional litigation costs unless one party, at least one

4  party wants them.

5        If you're content to rest upon this record -- they

6  say they are -- I am, too, and then I'll simply take it

7  under advisement.  If you want such hearings, promptly, with

8  their attendant costs, you have to tell me.

9        And now I'm asking that question.

10       **MS. LISS-RIORDAN:**  Okay, your Honor, while we don't

11 think that we need it because we don't know what your

12 Honor's going to say and the First Circuit is going to say

13 or potentially the Supreme Court is going to say, we would

14 like to develop within the confines what you are describing

15 that record.

16       **THE COURT:**  Okay.

17       **MS. LISS-RIORDAN:**  And we did say in our original

18 brief we would do it if you thought it was necessary.  We

19 didn't think it was necessary in Kristian.  But we --

20       **THE COURT:**  I think it's necessary.  But I want to

21 run two tracks.  I wasn't just throwing out comment --

22 compliments when I say your logic was impeccable.  I'm

23 taking under advisement the issue of whether I ought to do

24 this at all.  But things are not going to happen

25 immediately.  And if I decide that this is a matter for the

1    arbitrator, in essence you will have won because I will then

2    send these cases, the ones that have arbitration agreements,

3    to the arbitrators.  So it will be over.  And I get a little

4    while to figure that out.

5           But here's the order.  The paired magistrate judge

6    on this case is directed at his or her earliest convenience

7    to hold such hearings as may be necessary to develop the

8    record as to the issues of unconscionability presently

9    raised by the plaintiffs, no others, but presently raised by

10   the plaintiffs, and to give this Court a report and

11   recommendation thereon.

12          These hearings and the report and recommendation

13   shall be rendered to the Court before Labor Day in a

14   practical world, recognizing that the magistrate judge is

15   going to need some time and you're all going to need some

16   time, and that's why I can't do it myself.  That's how we're

17   going to proceed.

18          If, having entered this order, I think I'm just

19   creating more trouble and a clean send these people to

20   arbitration is the proper order, I will enter that order

21   promptly.  And by promptly, I mean I'll enter that within

22   the next three weeks.

23          **MS. LISS-RIORDAN:**  Your Honor, may I just ask for a

24   point of clarification --

25          **THE COURT:**  Yes.

1        **MS. LISS-RIORDAN:**  -- if I may, and it also loops

2    into the point that I just wanted to make one second ago.

3        There are cases that we've cited that say that you

4    look at, in determining an unconscionability analysis you

5    look at similarly situated individuals of similar

6    socioeconomic status, et cetera.  Because, because this is

7    brought as a class action, we would proffer these lead

8    plaintiffs obviously for the unconscionability analysis.

9    But we're raising -- they're raising the claims on behalf of

10   the class.

11       **THE COURT:**  Look, I want an evidentiary hearing.  I

12   haven't got the time to do it.  I have a skilled magistrate

13   judge, though I can't remember his or her name.  I don't

14   know who I'm paired with.  But they're all skilled.  I've

15   entered an order.  I'm not micromanaging it.  Except I'm

16   limiting it to what you've already said.  So that if you

17   come up with some other ground of unconscionability, I'm

18   paying no attention to it and I don't want the magistrate

19   judge to pay any attention to it, because I'm not trying to

20   add to litigation costs.  I will do my job as to whether I

21   want this to go forward within the next three weeks.  But,

22   in the meantime, that's the order, it will be conveyed to

23   the magistrate judge, the magistrate judge will do whatever

24   he or she believes appropriate under the circumstances.  I'm

25   not tainting their mind or taking a slant on it.

1          Questions?

2          **MR. DIENELT:**  If I may make one or two, make one or

3    two points of clarification.  So that the Court knows, one

4    of the matters which you said you would not transfer

5    involving the New Jersey plaintiff --

6          **THE COURT:**  Right.

7          **MR. DIENELT:**  -- is the subject of a separate

8    proceeding in New Jersey and which we've moved to compel to

9    arbitration.  So there may be another opinion there.  I

10   wanted to let the Court know that so that --

11         **THE COURT:**  I respect that entirely, and I respect

12   your rights to follow whatever rights you have and whatever

13   happens happens.  You've told me.

14         **MR. DIENELT:**  And then, secondly, we have this

15   issue, but I take it that is the issue before you as to

16   whether it is the arbitrator or the judicial system that

17   should be making this determination, and that will be going

18   on simultaneously with this hearing before the magistrate.

19         **THE COURT:**  It is.

20         **MR. DIENELT:**  And finally, I'm assuming based on

21   the comment you just made, but in light of a comment that

22   opposing counsel made, if there's an issue, I think it would

23   be efficient to get it on the table right now, that if there

24   are issues of discovery those are issues for the magistrate.

25         **THE COURT:**  Yes.  Thank you very much.

1          **MS. LISS-RIORDAN:**  Thank you, your Honor.

2          **MR. DIENELT:**  Thank you.

3          **MS. LISS-RIORDAN:**  Your Honor, just one

4    housekeeping matter and --

5          **THE COURT:**  Yes.

6          **MS. LISS-RIORDAN:**  -- one sentence point if I may.

7          In your decision over the next few weeks whether to

8    keep this or send it to the arbitrator, Coverall argued that

9    because there are state law claims here the Kristian, the

10   vindication of statutory rights analysis doesn't apply.

11   Kristian and Anderson, both First Circuit cases, involved

12   state law claims.

13         **THE COURT:**  Thank you.  We'll call the next case.

14         **MS. LISS-RIORDAN:**  On the motions for summary

15   judgment --

16         **THE COURT:**  The motions for summary judgment are

17   not before me and they're not ripe.  But when they are ripe,

18   I will entertain them.

19         **MR. DIENELT:**  Thank you, Judge Young.

20         (Whereupon the matter concluded.)

21

22

23

24

25

**C E R T I F I C A T E**

        I, Donald E. Womack, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.


                    /S/ DONALD E. WOMACK
                    _____
                       DONALD E. WOMACK
                      Official Court Reporter
                         P.O. Box 51062
                 Boston, Massachusetts 02205-1062
                       womack@megatran.com