```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, DENISE PINEDA, JAI PREM, AND AALDIVAR BRANDAO,<br><br>　　　　　Plaintiffs,<br><br>　　V.<br><br>COVERALL NORTH AMERICA, INC.<br><br>　　　　　Defendant. | CIVIL ACTION No.<br>07-10287-WGY |

ORDER

YOUNG, D.J.　　　　　　　　　　　　　　　　　　　July 1, 2008

　　The above captioned plaintiffs (collectively, "Plaintiffs") are current and former franchisees of Coverall North America, Inc. ("Coverall"), a company that provides janitorial services through franchise agreements with individuals. Sec. Third Am. Compl. [Doc. No. 79] ¶ 1. The Plaintiffs pled six causes of action on their own behalf and on behalf of all "similarly situated individuals," including breach of contract, deceptive trade practices, and violation of state wage and labor laws. See Third Am. Compl. [Doc. No. 79] at 12-15. Coverall has moved to stay all proceedings with respect to three plaintiffs, Pius Awuah, Richard Barrientos, Denise Pineda, on the ground that they are bound by arbitration clauses contained in their Franchise Agreements. Mot. to Stay Pending Arbit. [Doc. Nos. 18, 20, and 88]. In response, the Plaintiffs have moved to strike the arbitration clause in its entirety on the ground that so many

provisions are unconscionable that the entire clause is unenforceable.[1]  See Mot. Strike Coverall's Arbitration Clause [Doc. No. 64].  Below, the Court explains why the Plaintiffs' unconscionability challenge is meet for judicial resolution.

## I.   BACKGROUND

Entitled "Additional Remedies for Breach," Coverall's Arbitration Agreement ("the Agreement") is located on page 20 of the 24 page "Janitorial Franchise Agreement" that each plaintiff signed.[2]  The Plaintiffs have identified seven allegedly unconscionable provisions: a cost-sharing provision, a prohibition on class actions, provisions that prevent the arbitrator from striking offensive clauses and limit the relief the arbitrator may grant, an abrogated statute of limitations, the requirement that the losing party pay the prevailing party's attorneys fees, and a provision that permits Coverall, but not the Plaintiffs, to bring suit in court.  See Pl.'s Rep. Br. Supp.

---

[1] Coverall argues that "Plaintiff's motion to strike Coverall's arbitration clause should be denied for one simple reason: there is no such thing as a motion to 'strike' an arbitration clause." Def.'s Resp. to Mot. to Strike at 1.  The Court is well aware that no such motion exists.  Thus, the Court will treat the motion as a motion to declare the arbitration clause unconscionable.

[2] The arbitration agreements that Awuah, Barrientos, and Pineda signed do not differ in any material respect.  Therefore, for the sake of simplicity, the Court will refer only to Awuah's agreement.

Mot. to Strike [Doc. No. 92] at 2-6.[3] The Plaintiffs contend that collectively these provisions render the arbitration agreement unconscionable, and therefore unenforceable, because they "den[y] plaintiffs the ability to vindicate their rights." Id. at 1.

After entertaining extensive briefing and oral argument, the Court concluded that the record was not sufficiently developed to determine which, if any, of the provisions in the arbitration agreement are unconscionable.  In light of certain scheduling conflicts that would prohibit an expeditious resolution in this session, the Court referred the case to Magistrate Judge Bowler to hold a hearing and issue a report and recommendation concerning unconscionability by the end of the summer. See [Doc. No. 105]. Coverall nevertheless contends that the terms of the Franchise Agreement require the Court to relinquish the entire case, including the question of enforceability raised by Plaintiffs, to an arbitrator.

The Court now addresses two discrete questions.  First, the Court must determine whether the Plaintiffs' challenge to the arbitration agreement has presented a question of arbitrability

---

[3] One prominent defense attorney has compared certain of these provisions to "shark repellant.  They may or may not be enforceable, but if a plaintiff lawyer sees them, he just moves down the street to lower-hanging fruit."  Julie Kay, "Employers Start to Push Waivers," National Law Journal (June 9, 2008) at 8.

that the court, rather than the arbitrator, may resolve. If it does, then the Court must decide whether the Franchise Agreement reveals a clear intent to have issues of arbitrability decided by an arbitration.

## II. DISCUSSION

Arbitration agreements presuppose that the arbitrator will decide questions concerning "contract interpretation and arbitration procedures." Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 453 (2006). "[A]rbitration[, however,] is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).[4] "Although the [Supreme] Court has also long recognized and enforced a 'liberal federal policy favoring arbitration agreements,' it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Id.

Because the Plaintiffs challenge the validity of the arbitration clause, the Plaintiffs have presented a question of

---

[4] For a thorough analysis of Green Tree and Howsam, the recent Supreme Court decisions germane to this issue, see William W. Park, Determining an Arbitrator's Jurisdiction: Timing and Finality in American Law, 8 NEV. L. J. 135, 160-164 (2007).

arbitrability.  Moreover, since the Franchise Agreement does not "clearly and unmistakably provide," that such issues will be decided by an arbitrator, id., the Court concludes that the question of unconscionability is fit for judicial resolution.

### A.   THE PLAINTIFFS HAVE RAISED A QUESTION OF ARBITRABILTY

The Supreme Court has described two types of questions of arbitrability fit for judicial determination: "(1) disputes about whether the parties are bound by a given arbitration clause; and (2) disputes about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Kristian v. Comcast Corp., 446 F.3d 25, 42 (1st Cir. 2006).  In the instant case, the Plaintiffs argue that "the penumbra of objectionable provisions, taken collectively, would so undermine any chance for the plaintiffs to be able to vindicate their rights, the Court should strike the arbitration agreement altogether and permit this case to proceed."  Pl.'s Rep. to Def.'s Opp. to Mot. to Strike [Doc. No. 92] at 2 (hereinafter cited as "Rep. Br.").  In other words, Coverall cannot compel arbitration because the agreement is invalid and unenforceable. See Audoire v. Clients' Security Bd., 450 Mass. 388, 393 (2008) (noting that unconscionability renders a contract invalid and unenforceable).

The Court concludes that the Plaintiffs' challenge falls squarely into the first category of arbitrability questions

described in <u>Kristian</u>. Thus, the Court must determine whether the terms of the Franchise Agreement "clearly and unmistakably provide" that questions of arbitrability should be decided by an arbitrator.

    **B.**     THE CONTRACT CONTEMPLATES THAT QUESTIONS OF ARBITRABILITY WILL BE DETERMINED BY A COURT

Coverall contends that even issues of arbitratbility should be decided by the arbitrator because the parties intended such questions to be decided by an arbitrator. Coverall points to a clause in the Agreement where the parties agreed that arbitration would be conducted in accordance with the "then current Rules of American Arbitration Association [("AAA")] for commercial arbitration." Agreement ¶ 21. Rule 7(a) of the current AAA rules, Coverall posits, vests the arbitrator with the ability to determine questions of arbitrability.

Coverall's contentions are contradicted by the contract's plain language, which evinces an intent to allow questions of arbitrability to be decided by a court. To begin, permitting arbitrators to decide questions of arbitrability presumes they will be able to strike offensive provisions. In this case, however, the arbitration clause states that "the arbitrator or appointed arbitrators shall not alter or otherwise reform the terms of this agreement or award any relief or grant any remedy not provided for in this Agreement or specifically excluded by this Agreement." <u>Id.</u> ¶ 21(A)(6). Paragraph 28, however, states

that "[i]f any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated." Id. ¶ 28. Thus, the contracts' terms indicate that a court, but not an arbitrator, may excise clauses from the Agreement.

Coverall urges the Court to "reconcile the [internally inconsistent provisions] so that the agreement will be read as a whole." Mot. Hear'g Tr. [Doc. No. 106] at 13. The Court cannot fairly characterize the contract terms as inconsistent. The Franchise Agreement is an adhesion contract, and it strains credulity to contend that the Plaintiffs noted, much less comprehended, the proffered implications of Coverall's allusion to the AAA Rules of Arbitration.[5] The tortured reading of terms Coverall advocates is inconsistent with the Howsam Court's

---

[5] That defendants raise such arguments has undoubtedly contributed to the introduction of the currently pending Arbitration Fairness Act of 2007. Proposed last summer by Senator Russ Feingold, the Act "reflects concern about the fact that consumers [and franchisees] often have little or no choice in whether to submit to arbitration, the pressures on arbitrators to make decisions favorable to large repeat players, the injustices that can result from the lack of transparency inherent to arbitration, and the fact that the federal policy in favor of arbitration has been used to justify even egregious breaches of individual rights." Recent Proposed Legislation, Arbitration — Congress Considers Bill to Invalidate Pre-Dispute Arbitration Clauses for Consumers, Employees, and Franchisees. — Arbitration Fairness Act of 2007, S. 1782, 110th Cong. (2007), 121 HARV. L. REV. 2262, 2264 (June 2008).

7

admonition that the "the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Howsam, 537 U.S. at 83 (emphasis supplied). Given the clear language in paragraphs 21(a)(6) and 28, there is simply no way to conclude that the parties "clearly and unmistakably" intended to submit questions of arbitrability to an arbitrator rather than a court.

### III. CONCLUSION

Based on the foregoing, the Court concludes that it must determine the issues of arbitrability the Plaintiffs have presented. The parties shall therefore proceed before Magistrate Judge Bowler per the previous order of the Court. Once the issues of unconscionability have been resolved, the Court will make a determination about whether to stay the action pending arbitration.

SO ORDERED.

/s/ William G. Young
William G. Young
District Judge