1              UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS

2
                                    Civil Action
3                                   No. 07-10287-WGY

4
   * * * * * * * * * * * * * * * * * *
5  PIUS AWUAH, NILTON DOS SANTOS,        *
   GERALDO CORREIA, DENISSE PINEDA,      *
6  JAI PREM, ALDIVAR BRANDAO,            *
   and all others similarly situated,    *
7                                        *
              Plaintiffs,                *
8  v.                                    *   MOTION HEARING
                                         *
9  COVERALL NORTH AMERICA, INC.,         *
                                         *
10            Defendant.                 *
                                         *
11 * * * * * * * * * * * * * * * * * *
              BEFORE:  The Honorable William G. Young,
12                          District Judge
13 APPEARANCES:
14            PYLE, ROME, LICHTEN, EHRENBERG &
          LISS-RIORDAN, P.C. (By Shannon E. Liss-Riordan,
15        Esq. and Harold L. Lichten, Esq.), 18 Tremont
          Street, Suite 500, Boston, Massachusetts 02108,
16        on behalf of the Plaintiffs
17            DLA Piper US LLP (By Michael D. Vhay,
          Esq.), 33 Arch Street, 26th Floor, Boston,
18        Massachusetts 02110-1447
                  - and -
19            DLA Piper US LLP (By John F. Dienelt,
          Esq.), 1200 19th Street, N.W., Washington, D.C.
20        20036
                  - and -
21            DLA Piper US LLP (By Norman M. Leon, Esq.),
          203 North LaSalle Street, Suite 1900, Chicago,
22        Illinois 60601-1293, on behalf of the Defendant
23
                                    1 Courthouse Way
24                                  Boston, Massachusetts
25                                  May 29, 2008

Page 2

1    THE CLERK: Civil Action 07-10287, Awuah v.
2  Coverall.
3    THE COURT: Yes. And now, Ms. Liss-Riordan is in
4  the hall, I need someone to go out and get her.
5    (Pause in proceedings.)
6    THE COURT: Well, Ms. Liss-Riordan, I thank you.
7  I'm going to ask you to shift gears now, and I thank you for
8  whatever efforts took place in the other case.
9    Would counsel introduce themselves.
10    MS. LISS-RIORDAN: Good afternoon, your Honor. For
11  the plaintiffs, I'm Shannon Liss-Riordan, and with me is
12  Harold Lichten.
13    MR. VHAY: Good afternoon, your Honor. Michael
14  Vhay on behalf of the defendant, Coverall North America.
15  With me are Norman Leon and John Dienelt.
16    THE COURT: All right. Now, there's only one thing
17  that in one of these various motions that I want to hear
18  argument on and I've set for this afternoon, but there are
19  other motions before the Court that I can deal with
20  summarily, and they are these.
21    There are various motions to transfer the cases of
22  individual plaintiffs to other jurisdictions. Those motions
23  are denied without hearing and also without prejudice to
24  their renewal should the class action allegations be
25  defeated. If this isn't going to be a class action, we'll

Page 3

1  consider transferring those cases to other jurisdictions and
2  we'll consider it afresh.
3    So, what I have before me is plaintiffs' motion to
4  strike the arbitration clause. Now, I understand there's no
5  basis for just striking an arbitration clause. And when you
6  look at the briefs, what you're really talking about is to
7  declare that the arbitration clauses here are
8  unconscionable.
9    And I'll hear you, Ms. Liss-Riordan.
10    MS. LISS-RIORDAN: Thank you, your Honor.
11    As we've set forth in the current briefing and
12  previous briefing that we submitted in response to
13  Coverall's earlier motions to compel arbitration, the
14  arbitration provision in this franchise agreement has so
15  many unconscionable terms that the Court should strike it,
16  should refuse to enforce it in its entirety.
17    Now, Coverall picks apart at each of the terms and
18  tries to pull up cases from here and there that said, well,
19  this term was okay, this term was okay.
20    THE COURT: Well, you say from here and there. But
21  really we've, at least before me, and if I go down a class
22  action route, and we've, we've covered this ground in other
23  context. I am modestly familiar with the law in
24  Massachusetts. I also have to take a look at the law in New
25  Jersey and Pennsylvania. I'm less familiar with that and,

Page 4

1  respectfully, you haven't developed that very much.
2    I can't -- and this agreement, I've looked at these
3  agreements, they all say that the law of the place of the
4  franchise governs. So I am bound by a contractual agreement
5  to apply the laws of New Jersey and Pennsylvania.
6    MS. LISS-RIORDAN: Your Honor, I respectfully
7  disagree with that. What the First Circuit said in Kristian
8  v. Comcast was that there were basically two lines of cases
9  that were going parallel but not talking to each other. One
10  line of cases looked at state unconscionability law; the
11  other line of cases looked at the FAA and developed a
12  federal vindication of statutory rights analysis.
13    What Kristian said was that you look at the
14  vindication of statutory rights analysis, which is very
15  similar to the substantive unconscionability doctrine from
16  the state law lines of cases.
17    So, that is why it doesn't matter that these
18  agreements were signed -- well, I've got two responses in
19  the alternative. One is it doesn't matter that the
20  agreements were signed in various states because the Court
21  would apply a uniform federal analysis under the FAA, under
22  Gilmer. Remember, the SJC has determined that they're
23  employees for purposes of Mass. law at least. But in the
24  alternative, even if you were to look at state law, which we
25  don't think under Kristian and Anderson you would need to,

Page 5

1  but even if you did, you could look at the law of one state
2  which is where Coverall is headquartered, incorporated and
3  created its franchise agreements, and that's Florida, which
4  could solve the issue of the multi-states, having to sort
5  out what the laws of the various states say; or you could
6  look at the laws of the particular states where we have lead
7  plaintiffs where there's an arbitration provision,
8  Pennsylvania and New Jersey. These are different avenues at
9  the Court's disposal. And I would suggest it's the federal
10  avenue that the First Circuit in Kristian is counseling the
11  district courts to utilize, but there are other avenues at
12  the Court's disposal as well to resolve this in a way that
13  would not be overly complicated or difficult to administer.
14    And again, looking back at our broader arguments
15  about why a company that we have some evidence and expect to
16  be able to develop further evidence once we get into the
17  merits, operates in a unified manner across the country,
18  shouldn't be able to pick off individual plaintiffs one by
19  one or individual groups of plaintiffs state by state.
20    THE COURT: This -- these contracts have a
21  severability clause. If I were to agree with you as to one
22  or more than one aspect of this arbitration agreement, the
23  contracts also have a requirement that the arbitrators can't
24  bury the contract. That makes perfect sense. So the
25  arbitrators are stuck with the contracts as they are

Page 6

1  written. That's the nature of these contracts.
2  But, if I were to say that the cost sharing, the
3  attorneys' fees, the class action restriction, the no
4  punitive damages, take, take a variety, if I were to say
5  that one or more of those aspects of the arbitration
6  agreement were unconscionable under, what you say is this
7  Kristian analysis, we'll see about that, or under the laws
8  of any particular state, then I would simply excise it. But
9  it would leave an arbitration agreement. It would simply
10 say to the arbitrators, you know, you're not bound by that.
11 For instance, if state law applies punitive damages and
12 that's appropriate, go ahead, apply punitive damages, or
13 this cost sharing is just not, just not right, instead,
14 we'll do it as courts do it, or some other way. If I were
15 to prune this contract, it doesn't mean there's no
16 arbitration. It just means there's no arbitration where the
17 arbitrators are restricted this way. Isn't that right?
18 MS. LISS-RIORDAN: Well, your Honor, that's what
19 our briefing on the motion to strike and the reply briefing
20 that's currently pending addresses directly. We have cited
21 a number of cases, significantly Justice Roberts when he was
22 on the circuit court addressed the precise issue that you
23 just raised.
24 THE COURT: He did indeed. And if what's left is
25 this fragment, he says it better, this isn't what the

Page 7

1  parties agree, it's just a fragment, then the whole thing
2  ought to go because courts know how to adjudicate disputes
3  and we ought to adjudicate them.
4  I'm saying there's a spectrum here. And don't you
5  agree, unless you win on various of these so that there's
6  only a remnant there, the result will be, I will reform the
7  contract, or some of them, we'll see, and then it will go
8  back to arbitration, unless I go so far as Judge, now Chief
9  Justice Roberts went in the DC Circuit.
10 MS. LISS-RIORDAN: Two, two points to that, your
11 Honor. One is, I know you didn't get the final ruling, but
12 as we've submitted to you, Judge Wolf, looking at this very
13 agreement at an initial conference, stated just what Justice
14 Roberts said, was that it would be a perverse incentive for
15 the courts to encourage companies to go so far knowing that
16 if they go, that if they go too far the courts will merely
17 prune them back.
18 THE COURT: I understand that. But he didn't write
19 an opinion. Have you got the transcript?
20 MS. LISS-RIORDAN: I did. I submitted it. In
21 fact --
22 THE COURT: Yes.
23 MS. LISS-RIORDAN: -- it's an attachment to
24 plaintiffs' motion to submit, to strike the Coverall -- it's
25 Exhibit A to our motion to strike.

Page 8

1  THE COURT: Actually there's some merit to that.
2  Let me --
3  MS. LISS-RIORDAN: And if I could just make the
4  second point, your Honor.
5  THE COURT: Please.
6  MS. LISS-RIORDAN: And it's in the papers but just
7  to emphasize. And I know that there's mixed case law on
8  this, but I think part of the totality of what the Court can
9  consider is that, Coverall instituted this arbitration
10 clause at a certain point in time. So it's only the
11 franchisees who entered an agreement with them after that
12 date that have arbitration clauses. The earlier ones don't.
13 So we only have a couple of the lead plaintiffs who actually
14 signed these. Regardless of what your Honor does on this
15 arbitration clause, this case is going to proceed in this
16 Court because many franchisees did not sign an arbitration
17 clause.
18 THE COURT: But what difference does that make to
19 this analysis?
20 MS. LISS-RIORDAN: The difference it makes to the
21 analysis is that the Court can look at the goals of the
22 Federal Arbitration Act which was to honor the parties'
23 agreements to promote efficiency in dispute resolution and
24 send to arbitration cases that can go to arbitration, and
25 one of the goals that's talked about in a number of

Page 9

1  decisions is to relieve the federal courts of increasing
2  case dockets when private dispute resolution has been agreed
3  to and allows the vindication of statutory rights under
4  Gilmer.
5  So, I'm just saying that even if you were to not
6  agree with Judge Wolf, not agree with Justice Roberts, and
7  prune this agreement back, this case is still going to be
8  before your Honor, it's still going to take judicial
9  resources. If it's not, if it's not certified as a class,
10 it could very well take the resources of many courts around
11 the country if the plaintiffs have to go file in different
12 courts. And it would be far more efficient to focus the
13 parties, the Court's, counsel's resources in one forum that
14 can hear the whole thing as a whole.
15 THE COURT: All right. Let me put this question.
16 I'm not so sure that I have before me an adequate
17 factual record to resolve the issues that I've raised. What
18 do you think about a next step being to hold hearings
19 relative to these issues, costs, the deterrent effect of the
20 class action bar and the like. What do you think about
21 that?
22 MS. LISS-RIORDAN: Your Honor, we would be all in
23 favor of your Honor doing that. I just want to explain just
24 by way of background information.
25 That is what Judge Wolf said in the Machado case.

Page 10

1  We spent a year approximately in discovery leading up to
2  that hearing that you've just described. The goal of
3  arbitration, you know, since it's to make things more
4  efficient and quicker, I would just want the Court, if we do
5  go down that road, to place reasonable limitations on the
6  parties for how far --
7       THE COURT: Sure.
8       MS. LISS-RIORDAN: -- discovery could go.
9       THE COURT: And quicker.
10      MS. LISS-RIORDAN: And quicker. Because --
11      THE COURT: I understand.
12      MS. LISS-RIORDAN: Because Coverall engaged in
13  scorched earth discovery tactics when we proceeded along
14  those lines before.
15      THE COURT: Well, I hear what you say.
16      All right, let me turn to them. And really my
17  questions are the same. I mean, these are the questions
18  before the Court.
19      MR. DIENELT: Very well.
20      THE COURT: What do you think of her, what do you
21  think of her Kristian analysis?
22      MR. DIENELT: Well, I think it applies well in a
23  federal case, but that's not -- this is not a federal case.
24  I believe that Kristian limited itself to a federal
25  antitrust claim that what you have before you are state law

Page 11

1  common law claims.
2       THE COURT: It's a federal case.
3       MR. DIENELT: It is a federal case, of course, it
4  is in federal court, but it does not implicate federal
5  rights in the same way the Kristian case did. That case and
6  the doctrine from our reading of vindication of rights is a
7  balancing of federal statutes, the Federal Arbitration Act,
8  particularly Section 2, against federally protected rights.
9  What you have is the Federal Arbitration Act and a series of
10  alleged state common law claims that would fit within the
11  Section 2 approach which would be consistent with and in
12  which you should apply an unconscionability analysis.
13      THE COURT: All right. Now --
14      MR. DIENELT: In fact --
15      THE COURT: And in performing that analysis, I
16  sketched for her a spectrum. Don't you -- do you agree that
17  that's accurate, that given the severability clause what I
18  have to do here is see if anything ought to be struck, and the
19  way you go at it, under the law of any of the necessary
20  jurisdictions, and if so, is there enough left that a proper
21  application of the severability clause is to send the case
22  to, the individual to arbitration not so shackled?
23      MR. DIENELT: If you conclude, and we would urge
24  you not so to conclude, that it is your job rather than the
25  job of the arbitrator to make these determinations --

Page 12

1       THE COURT: Well, isn't it --
2       MR. DIENELT: -- then the answer is yes.
3       THE COURT: Isn't it the job of the Court to decide
4  whether there is in fact an arbitration agreement that is
5  not unconscionable?
6       MR. DIENELT: Here we have a situation in which the
7  parties agreed, as we've indicated in our briefs, that the
8  rules of the AAA would apply. And Rule 7(a) of the AAA
9  rules vests the arbitrator with the ability to determine the
10  existence, scope or validity of the arbitration agreement.
11  So our primary argument here, Judge Young, is that you
12  should defer, if you will, to the arbitrator on these
13  arbitrability issues, that the arbitrator can determine
14  which, if any, of the six aspects of the franchise agreement
15  the plaintiffs challenge here as in one way or another being
16  unconscionable are in fact so and should be severed from the
17  agreement.
18      Now, there is a provision, and I want to
19  specifically focus on it, that you mentioned in argument
20  with opposing counsel about the limitation set forth with
21  respect to the arbitrator revising the agreement.
22      THE COURT: Yes.
23      MR. DIENELT: In our view, the AAA rules and the
24  concept that we urge you to embrace of placing this in the
25  arbitrator's bailiwick puts the arbitrator in effect in your

Page 13

1  shoes, or your robe, and gives him the same level of
2  discretion to sever that you have.
3       THE COURT: Well, you say that now. It doesn't
4  look like that's what the contract says.
5       MR. DIENELT: Well, the contract, if you read it as
6  saying that the arbitrator may not sever is inconsistent
7  internally, and it would in that circumstance be your job,
8  or his job, to reconcile the two so that the agreement will
9  be read as a whole. And we suggest that the language of the
10  provision of the arbitration agreement that focus, that
11  you're focusing on, which talks about reforming the terms of
12  the agreement, can be reconciled with the language in, I
13  believe it's Section 28 of the franchise agreement that
14  talks about severability and not reformation. We believe
15  that if you, or if, as we suggest, the arbitrator looks at
16  the arbitration agreement, you can take, or he or she can
17  take a pen and sever the provisions, if any, that are deemed
18  unconscionable. And if the Chief Justice were here and he
19  were applying the Booker case in which he wrote the majority
20  opinion, which did enforce, did send the matter to
21  arbitration, I believe he would not include, I don't believe
22  you should conclude, and I don't believe an arbitrator
23  should conclude that we would be left no matter what you
24  did --
25      THE COURT: Isn't --

Page 14

1    MR. DIENELT: -- with a fragment as you put it and
2  as he put it.
3    THE COURT: Isn't Chief Judge Wolf's comment,
4  though, a very apt one: It would be odd to create
5  incentives to add in unconscionable provisions confident
6  that a court or an arbitrator would strike them and you
7  nevertheless get arbitration.
8    I must say what my Chief has said resonates with
9  me. It's not controlling. But isn't that an odd incentive?
10    MR. DIENELT: He did say that there would be a
11  possibility that it would create incentives or
12  disincentives, depending upon how you look at it. But what
13  he said was we would need to know whether we were left with
14  this disintegrated fragment --
15    THE COURT: Yes.
16    MR. DIENELT: -- that would remain. And he talked
17  about infecting an arbitration clause and not having to
18  unravel a highly integrated, complex document. You know
19  that because you read and you quoted the opinion.
20    THE COURT: Right.
21    MR. DIENELT: This is not a highly complex
22  document. If you severed everything, if you or the
23  arbitrator severed everything after the first section, what
24  you would have is a plain vanilla arbitration provision.
25    THE COURT: Yes.

Page 15

1    MR. DIENELT: It would say we will arbitrate
2  pursuant to the AAA rules.
3    THE COURT: You may well be right.
4    What do you say to my concern that, and these have
5  been able arguments and I appreciate them, to my concern
6  that I probably ought not make this decision save on a more
7  completely developed record as to expense, incentives,
8  disincentives and the like. What do you say to the fact
9  that I ought proceed first at least to some limited hearing
10  on that issue before making this decision.
11    MR. DIENELT: I say first, your Honor, that the
12  plaintiffs have had an ample opportunity to put forth the
13  kind of specific evidence that the courts, starting with
14  Green Tree, have required with regard to issues of
15  unconscionability. They didn't do it the first time. They
16  haven't done it the second time. And --
17    THE COURT: And the first time you say is in
18  Machado.
19    MR. DIENELT: In response, in response to our
20  motion to stay pending arbitration.
21    THE COURT: Oh, I see.
22    MR. DIENELT: And now they come back with a motion
23  to strike or declare unconscionable, or whatever, the
24  agreement, extensively briefed, offered evidence as they see
25  it from another case, from another lawyer, motions we've

Page 16

1  moved to strike, but what they didn't do is get specific.
2    THE COURT: Well --
3    MR. DIENELT: They didn't get down and say Awuah
4  can't afford it because of this and Pineda can't afford it
5  because of that, and so forth and so on.
6    Our point is they've had their chance. If
7  that point is rejected then our position would be, yes, go
8  forward, satisfy yourself, assuming that you are also going
9  to reject our proposition that this is something that the
10  arbitrator, when referred to him or her, would be quite
11  capable of determining.
12    THE COURT: No, your logic is impeccable.
13    Here's, here's -- let's talk practically for a
14  moment. I'm going to take -- here's what I think I'm going
15  to do. But let's talk timing.
16    I'm going to take under advisement the issue of
17  whether I should leave this arbitrability issue to the
18  arbitrator, or whether I should decide. At the same time, I
19  have a paired magistrate judge on this case. You probably
20  know who it is. I'm sorry, I don't.
21    Given my schedule, for the immediate future, it
22  would be very difficult for me to hold these hearings within
23  the next couple of months. But, since at least as to those
24  plaintiffs who have arbitration agreements, we have to sort
25  this out first. And I don't want this delaying the

Page 17

1  remainder of the case. My thought would be to send it to
2  the paired magistrate judge for a prompt hearing and report
3  and recommendation as to the issues of unconscionability
4  that have been raised.
5    What do you say to that, Ms. Liss-Riordan?
6    MS. LISS-RIORDAN: Your Honor, as I stated just a
7  moment ago, the plaintiffs would have no objection if your
8  Honor decided it was necessary to do that. But let me
9  just point out two more things, if I might.
10    In the First Circuit case of Skirchak v. Dynamics
11  Research Corporation, a case in which the plaintiffs
12  challenged a class action waiver as unconscionable, the case
13  was submitted to the district court on affidavits alone.
14  The defendant said that it was necessary to have a hearing
15  and to have a more developed factual record on the
16  challenge, the unconscionability challenge.
17    When it went up on appeal to the First Circuit, the
18  defendant again said there was only the submission of
19  affidavits and we never got a hearing on these issues. The
20  First Circuit affirmed the district court which denied the
21  discovery and denied a hearing on this. And secondly, if I
22  can just briefly --
23    THE COURT: Well, let me -- no, but let me --
24    MS. LISS-RIORDAN: Okay.
25    THE COURT: -- put this to you. You're willing to

Page 18

1  do this. His argument is you had your chance. I express no
2  opinion on it. But I'm certainly not going to impose
3  additional litigation costs unless one party, at least one
4  party wants them.
5      If you're content to rest upon this record -- they
6  say they are -- I am, too, and then I'll simply take it
7  under advisement. If you want such hearings, promptly, with
8  their attendant costs, you have to tell me.
9      And now I'm asking that question.
10      MS. LISS-RIORDAN: Okay, your Honor, while we don't
11  think that we need it because we don't know what your
12  Honor's going to say and the First Circuit is going to say
13  or potentially the Supreme Court is going to say, we would
14  like to develop within the confines what you are describing
15  that record.
16      THE COURT: Okay.
17      MS. LISS-RIORDAN: And we did say in our original
18  brief we would do it if you thought it was necessary. We
19  didn't think it was necessary in Kristian. But we --
20      THE COURT: I think it's necessary. But I want to
21  run two tracks. I wasn't just throwing out comment --
22  compliments when I say your logic was impeccable. I'm
23  taking under advisement the issue of whether I ought to do
24  this at all. But things are not going to happen
25  immediately. And if I decide that this is a matter for the

Page 19

1  arbitrator, in essence you will have won because I will then
2  send these cases, the ones that have arbitration agreements,
3  to the arbitrators. So it will be over. And I get a little
4  while to figure that out.
5      But here's the order. The paired magistrate judge
6  on this case is directed at his or her earliest convenience
7  to hold such hearings as may be necessary to develop the
8  record as to the issues of unconscionability presently
9  raised by the plaintiffs, no others, but presently raised by
10  the plaintiffs, and to give this Court a report and
11  recommendation thereon.
12      These hearings and the report and recommendation
13  shall be rendered to the Court before Labor Day in a
14  practical world, recognizing that the magistrate judge is
15  going to need some time and you're all going to need some
16  time, and that's why I can't do it myself. That's how we're
17  going to proceed.
18      If, having entered this order, I think I'm just
19  creating more trouble and a clean send these people to
20  arbitration is the proper order, I will enter that order
21  promptly. And by promptly, I mean I'll enter that within
22  the next three weeks.
23      MS. LISS-RIORDAN: Your Honor, may I just ask for a
24  point of clarification --
25      THE COURT: Yes.

Page 20

1      MS. LISS-RIORDAN: -- if I may, and it also loops
2  into the point that I just wanted to make one second ago.
3      There are cases that we've cited that say that you
4  look at, in determining an unconscionability analysis you
5  look at similarly situated individuals of similar
6  socioeconomic status, et cetera. Because, because this is
7  brought as a class action, we would proffer these lead
8  plaintiffs obviously for the unconscionability analysis.
9  But we're raising -- they're raising the claims on behalf of
10  the class.
11      THE COURT: Look, I want an evidentiary hearing. I
12  haven't got the time to do it. I have a skilled magistrate
13  judge, though I can't remember his or her name. I don't
14  know who I'm paired with. But they're all skilled. I've
15  entered an order. I'm not micromanaging it. Except I'm
16  limiting it to what you've already said. So that if you
17  come up with some other ground of unconscionability, I'm
18  paying no attention to it and I don't want the magistrate
19  judge to pay any attention to it, because I'm not trying to
20  add to litigation costs. I will do my job as to whether I
21  want this to go forward within the next three weeks. But,
22  in the meantime, that's the order, it will be conveyed to
23  the magistrate judge, the magistrate judge will do whatever
24  he or she believes appropriate under the circumstances. I'm
25  not tainting their mind or taking a slant on it.

Page 21

1      Questions?
2      MR. DIENELT: If I may make one or two, make one or
3  two points of clarification. So that the Court knows, one
4  of the matters which you said you would not transfer
5  involving the New Jersey plaintiff --
6      THE COURT: Right.
7      MR. DIENELT: -- is the subject of a separate
8  proceeding in New Jersey and which we've moved to compel to
9  arbitration. So there may be another opinion there. I
10  wanted to let the Court know that so that --
11      THE COURT: I respect that entirely, and I respect
12  your rights to follow whatever rights you have and whatever
13  happens happens. You've told me.
14      MR. DIENELT: And then, secondly, we have this
15  issue, but I take it that is the issue before you as to
16  whether it is the arbitrator or the judicial system that
17  should be making this determination, and that will be going
18  on simultaneously with this hearing before the magistrate.
19      THE COURT: It is.
20      MR. DIENELT: And finally, I'm assuming based on
21  the comment you just made, but in light of a comment that
22  opposing counsel made, if there's an issue, I think it would
23  be efficient to get it on the table right now, that if there
24  are issues of discovery those are issues for the magistrate.
25      THE COURT: Yes. Thank you very much.

Page 22

1       MS. LISS-RIORDAN:  Thank you, your Honor.
2       MR. DIENELT:  Thank you.
3       MS. LISS-RIORDAN:  Your Honor, just one
4   housekeeping matter and --
5       THE COURT:  Yes.
6       MS. LISS-RIORDAN:  -- one sentence point if I may.
7       In your decision over the next few weeks whether to
8   keep this or send it to the arbitrator, Coverall argued that
9   because there are state law claims here the Kristian, the
10  vindication of statutory rights analysis doesn't apply.
11  Kristian and Anderson, both First Circuit cases, involved
12  state law claims.
13      THE COURT:  Thank you.  We'll call the next case.
14      MS. LISS-RIORDAN:  On the motions for summary
15  judgment --
16      THE COURT:  The motions for summary judgment are
17  not before me and they're not ripe.  But when they are ripe,
18  I will entertain them.
19      MR. DIENELT:  Thank you, Judge Young.
20      (Whereupon the matter concluded.)
21
22
23
24
25

Page 23

1          C E R T I F I C A T E
2
3
4       I, Donald E. Womack, Official Court Reporter for
5   the United States District Court for the District of
6   Massachusetts, do hereby certify that the foregoing pages
7   are a true and accurate transcription of my shorthand notes
8   taken in the aforementioned matter to the best of my skill
9   and ability.
10
11
12
13
14
            _____
            DONALD E. WOMACK
15          Official Court Reporter
            P.O. Box 51062
16          Boston, Massachusetts 02205-1062
            womack@megatran.com
17
18
19
20
21
22
23
24
25