## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO,** and all others similarly situated,<br><br>            Plaintiffs,<br><br>                    **v.**<br><br>**COVERALL NORTH AMERICA, INC.,**<br><br>            Defendant. | **Case No. 07-10287** |

### COVERALL NORTH AMERICA, INC.'S OPPOSITION TO
### PLAINTIFFS' ALTERNATIVE MOTION TO SUBMIT UNCONSCIONABILITY
### ISSUE TO THE COURT ON WRITTEN SUBMISSIONS AND AFFIDAVITS

Seeking to evade inquiry into the basis of their claims of unconscionability (and presumably seeking to avoid having to respond to discovery requests that Coverall served over seven weeks ago), Plaintiffs have filed a motion asking this Court to forego evidentiary hearings regarding the various unconscionability arguments they have raised in an effort to circumvent their arbitration agreements. This Court should make its determination regarding the alleged unconscionability of those agreements, Plaintiffs now request, solely on "written submissions from the parties, including affidavits," which Plaintiffs assert could be submitted next week. According to Plaintiffs, this is the very sort of procedure the First Circuit sanctioned in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006). Plaintiffs' motion should be denied for several reasons.

First, while Plaintiffs correctly note that Judge Young left it to this Court to determine what sort of hearings would be held, Judge Young made clear (at the very beginning of the paragraph relied on by Plaintiffs) that he wanted those hearings to be evidentiary in nature:

"Look, I want an evidentiary hearing." (Tr. at 20, lines 11-12.)  While Plaintiffs correctly note

that they chose to proceed with such a hearing, that choice was more of a Hobson's choice than

the free one Plaintiffs imply.  After reviewing the papers that had been submitted in connection

with Plaintiffs' motion to strike the parties' arbitration agreements, Judge Young concluded that

Plaintiffs had not developed "an adequate factual record" on the issues presented to him.

(Tr. at 9, lines 16-17.)  But rather that simply deny their motion (as Coverall requested), Judge

Young gave Plaintiffs a choice: either rest upon the record which they had presented, or proceed

with hearings to develop the record.  (Tr. at 15, line 23 to 16, line 9.)  Not surprisingly, Plaintiffs

chose the latter option.  Plaintiffs should not now be permitted to seek what is, in effect,

reconsideration of Judge Young's ruling.[1]

Second, Plaintiffs' proposed procedure would deny Coverall any opportunity to

investigate the basis of their claims.  The primary thrust of the Plaintiffs' unconscionability

challenge is their assertion that they will not be able to afford the costs of arbitration and,

therefore, the class-action waiver and cost-splitting provisions in the parties' arbitration

agreements are unconscionable.  In *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79,

92 (2000), the Supreme Court made clear that a "party seek[ing] to invalidate an arbitration

agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden

of showing the likelihood" of incurring costs that it is not able to bear.  *Id.*, 531 U.S. at 92, 121

S. Ct. 513.  Once the party makes these showings, the burden switches to "the party seeking

---

[1]     Plaintiffs' claim that their proposal "addresses Coverall's concern" regarding the expense of and time associated with litigation misses the point.  In the motion to stay that it filed with the First Circuit, Coverall argued that all of the Plaintiffs' challenges needed to be submitted to an arbitrator and that, as a result, Coverall should not be forced to incur the expense associated with litigating these issues in the District Court.  To the extent the First Circuit disagrees with Coverall's argument, Coverall intends to fully challenge in this court the Plaintiffs' claims that their arbitration agreements are unconscionable.

arbitration [to] come forward with contrary evidence" that such expenses would not bar the party from vindicating its statutory rights in the arbitral forum. *Id.*, 531 U.S. at 92-93, 121 S. Ct. 513. If this matter is resolved on the basis of Plaintiffs' untested affidavits, and if Coverall is deprived of the discovery it has sought on this issue, there is no way for Coverall to come forward with this "contrary evidence." *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 609 (3rd Cir. 2002) ("Without some discovery . . . it is not clear how a claimant could present information on the costs of arbitration required by *Green Tree* and how the defendant could meet its burden to rebut the claimant's allegation that she cannot afford to share the cost."). In fact, if the party seeking to enforce an arbitration agreement is not given the opportunity to challenge an assertion of financial hardship, any party who did not wish to honor its agreement to arbitrate could evade that obligation simply by claiming (as the Plaintiffs do here) "I can't afford arbitration." Permitting arbitration agreements to be so easily evaded would hardly be consistent with the federal policy favoring the enforcement of arbitration agreements. *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 860 (S.D. Ohio 2003) (requiring a claimant to prove that he is unable to vindicate his statutory rights in arbitration "is consistent with the general maxim that arbitration agreements are to be favored and presumed valid, *unless* a claimant can demonstrate how such would not have been at common law or in equity") (emphasis in original).

That *Kristian* addressed a challenge to a class-action waiver in an arbitration agreement solely on the basis of written submissions has no bearing on the matters before this Court, because *Kristian* bears no relationship to the case before this Court. Before commencing its analysis of the enforceability of the class-action waiver before it, *Kristian* discussed the state of the law regarding such waivers. In doing so, *Kristian* acknowledged that the majority of the federal appellate courts deem arbitral class-action waivers enforceable. *Kristian*, 446 F.3d at 55.

*Kristian* never took issue with the reasoning of these cases.  Instead, the *Kristian* panel explained why the majority rationale did not apply to the specific factual situation (an antitrust case) before it, which it called an "important distinction."  *Id.* at 59.  In that regard, *Kristian* noted that the various appellate cases which had enforced class-waivers involved the application of a comparatively uncomplicated statute (the Truth in Lending Act) to a specific transaction.  *Id.* at 57.  Whether a company's conduct violated the antitrust laws was, in contrast, "a complicated question of fact" that required a plaintiff "to undertake an elaborate factual inquiry . . . ."  *Id.* The court characterized the law that applies to those facts as "equally complex."  *Id.*

Because of the "sheer complexity" of this analysis (*id.* at 57), *Kristian* concluded that enforcing the class-action bar and forcing the plaintiffs to proceed individually would prevent the plaintiffs from vindicating their statutory rights.  *Id.* at 61.  *Kristian* based this conclusion on several factors.  First, the plaintiffs had submitted affidavits from three (3) experts who established that the expert witness fees for such a case would alone be a "a minimum of $300,000," and possibly in excess of $600,000.  *Id.* at 58.  These affidavits (which noted the indispensable nature of expert testimony) were "uncontested and unopposed."  *Id.*  Second, prosecuting the claims would entail the expenditure of "several million dollars of attorneys' time," as well as significant additional "direct costs."  *Id.*  Finally, the court noted that even if successful, each individual plaintiff's recovery would range from "a few hundred dollars to perhaps a few thousand dollars" **after** trebling.  *Id.* at 54.  Relying on the disparity between the potential recovery and the fees required to litigate the claims, the court concluded that it was unlikely that an attorney would take such an antitrust case on an individual basis.  *Id.* at 59.

The rationale set forth in *Kristian* is as inapplicable in this case as the TILA-based decisions were to the complex antitrust dispute at issue in *Kristian*.  *See Skirchak v. Dynamics*

*Research Corp.*, 508 F.3d 49, 62 (1st Cir. 2007) (recognizing the limited applicability of *Kristian* and noting that "[t]he *Kristian* holding rests on reasoning that the class action waiver constituted a weakening of antitrust law enforcement mechanisms in a manner inconsistent with congressional intent.").[2]   Initially, this is not a factually or legally complex antitrust case. Plaintiffs' allegations fall into two categories: (i) garden-variety fraud and breach of contract claims (*see* Complaint ¶¶11-40); and (ii) claims that Plaintiffs should be treated as employees under the applicable wage-laws rather than as independent contractors    (*id*. ¶¶41-54). Respectfully, neither the facts nor the law associated with those claims is particularly complex. Prosecuting them will likely not require any expert testimony, and it will certainly not entail the expenditure of "several million dollars of attorneys' time." *Kristian*, 446 F.3d at 56.

Further, unlike *Kristian* – where there was no dispute that the plaintiffs could not afford to arbitrate their complex antitrust claims individually, and where the plaintiffs actually submitted evidence which addressed the costs of prosecuting their claims – it is hardly clear that the Plaintiffs cannot afford the costs associated with arbitrating their claims on an individual basis – particularly where Coverall has offered to pay the costs of any franchisee who is truly unable to pay the costs of arbitration.

Finally, Judge Young has already rejected the procedure which Plaintiffs now ask this Court to adopt.[3]   At various points during the May 29, 2008 hearing, Plaintiffs' counsel asserted

---

[2]      Plaintiffs cite *Skirchak* as support for their claim that this matter should be resolved based on whatever untested affidavits Plaintiffs seek to submit.  The First Circuit's opinion in *Skirchak* can be searched in vain for any language sanctioning this procedure.

[3]      Judge Young is not alone in rejecting this proposed procedure.  In a prior action which Plaintiffs' counsel filed against Coverall (Case No. 1:05-cv-11867-MLW), counsel urged the Court to resolve those plaintiffs' challenges to the enforceability of their arbitration agreements based solely on the affidavits which the plaintiffs had submitted.  Chief Judge Wolf rejected this argument, and ordered the parties to

*(footnote continued to next page)*

that this matter could be resolved solely on the basis of the Plaintiffs' affidavits.  Judge Young

rejected this argument:

> MS. LISS RIORDAN:  Your honor, as I stated just a moment ago, the plaintiffs would have no objection if your Honor decided it was necessary to do that [to hold a hearing on the issues of unconscionability].  But let me just point out two more things, if I might.

> In the First Circuit case of Skirchak v. Dynamics Research Corporation, a case in which the plaintiffs challenged a class action waiver as unconscionable, the case was submitted to the district court on affidavits alone.  The defendant said that it was necessary to have a hearing and to have a more developed factual record on the challenge, the unconscionability challenge.

> When it went up on appeal to the First Circuit, the defendant again said there was only the submission of affidavits and we never got a hearing on these issues.  The First Circuit affirmed the district court which denied the discovery and denied a hearing on this.  And second, I if can just briefly –

> THE COURT:  Well, let me – no, but let me –

> MS. LISS-RIORDAN:  Okay.

> THE COURT: -- put this to you.  You're willing to do this.  His argument is you had your chance.  I express no opinion on it.  But I'm certainly not going to impose additional litigation costs unless on party, at least one party wants them.  If you're content to rest upon this record – they say they are – I am too, and then I'll simply take it under advisement.  If you want such hearings, promptly, with their attendant costs, you have to tell me.

> And now I'm asking that question.

> MS. LISS-RIORDAN:  Okay, your Honor, while we don't think that we need it because we don't know what your Honor's going to say and the First Circuit is going to say or potentially the Supreme Court is going to say, we would like to develop within the confines what you are describing that record.

> THE COURT:  Okay.

> MS. LISS-RIORDAN:  And we did say in our original brief we would do it if you thought it was necessary.  We didn't think it was necessary in Kristian.  But we –

---

*(footnote continued from previous page)*

conduct discovery on the plaintiffs' claims, after which he was going to hold evidentiary hearings on the enforceability of the arbitration agreements.  (*See* Transcript of August 7, 2006 Hearing at 19-27; excerpts from the transcript of that hearing are annexed hereto as <u>Exhibit A</u>.)

THE COURT:  I think it's necessary. …

(Tr. at 17-18.)

## <u>CONCLUSION</u>

Judge Young has ordered this Court to conduct an evidentiary hearing into the unconscionability issues raised by Plaintiffs.  Plaintiffs have offered no legitimate basis for revisiting that decision.  For the foregoing reasons, Plaintiffs' alternative motion to submit the unconscionability issues to the Court on written submissions and affidavits should be denied.

**COVERALL NORTH AMERICA, INC.**,

By its attorneys,

_____/s/ Michael D. Vhay_____
Michael D. Vhay (BBO No. 566444)
Jennifer L. Sullivan (BBO No. 663945)
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

Norman M. Leon
John A. Hughes
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL  60601
(312) 368-4000

John Dienelt
DLA PIPER US LLP
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4000

Dated: July 31, 2008