# United States Court of Appeals
## For the First Circuit

No. 08-1920

PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, BENECIRA
CAVALCANTE, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO, PHILLIP
BEITZ, RICHARD BARRIENTOS, MARIAN LEWIS, STANLEY STEWART,
and all others similarly situated,

Plaintiffs, Appellees,

v.

COVERALL NORTH AMERICA, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Stahl, and Howard,
Circuit Judges.

Norman M. Leon with whom Michael D. Vhay, John F. Dienelt, and
DLA Piper U.S. LLP were on brief for appellant.
    Hillary Schwab with whom Shannon Liss-Riordan, Harold Lichten,
and Pyle, Rome, Lichten, Ehrenberg, & Liss-Riordan, P.C. were on
brief for appellees.

January 23, 2009

**BOUDIN, Circuit Judge.** The question before us is whether a dispute over the validity of an arbitration agreement should be decided by a court or by an arbitrator. Appellant is Coverall North America, Inc., itself the subsidiary of still larger enterprises. Coverall contracts to provide commercial janitorial cleaning services to building owners or operators throughout the United States. It "franchises" other companies or individuals to do the actual cleaning of the premises and has more than 5,000 such franchises in place in the United States.

The franchise agreements promise to supply the franchisee with equipment, training, a quality control program, and billing and collection services, as well as a set amount of initial cleaning business per month for buildings whose owners or operators have contracted with Coverall. In exchange, Coverall receives from the franchisee up-front fees in the range of $12,000 to $21,500, and additional payment for each cleaning job a franchisee performs.

Disputes have arisen between Coverall and a number of its franchisees over whether Coverall made misrepresentations, kept its contractual promises, wrongly classified franchisees as independent contractors, and over other aspects of the relationship. On February 15, 2007, a dozen or so franchisees filed a class action against Coverall in federal district court in Massachusetts, alleging fraud, misrepresentation, breach of contract, lost benefits, improper deductions of earnings, and violations of

-2-

minimum wage, overtime, and consumer protection laws. It appears from the record that the plaintiffs in many cases are recent immigrants and persons with limited education.

Among the nearly dozen named plaintiffs, three had franchise agreements containing arbitration clauses--Pius Awuah, Denisse Pineda, and Richard Barrientos, who are the appellees in this court. Apparently Coverall only recently introduced such provisions into its standard franchise contract. For two of the three appellees, the franchise agreement states that if required mediation processes are not successful,

> all controversies, disputes or claims between Coverall, its officers, directors, agents and/or employees (in their respective capacities) and Franchisee . . . arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual . . . shall be submitted promptly for arbitration.

The third contract has a similar provision but also states that parties agree to submit to arbitration disputes about the validity of the franchise agreement or related agreements. However, the agreements signed by all three appellees also provide that "unless otherwise provided or the parties agree otherwise, arbitration shall be in accordance with the then current Rules of the American Arbitration Association." Rule 7(a) of those rules provides that "[t]he arbitrator shall have the power to rule on his

-3-

or her own jurisdiction, including any objections with respect to
the existence, scope or validity of the arbitration agreement."

Citing these provisions, Coverall filed motions to stay
the district court proceedings as to these three franchisees
pending arbitration.  The three franchisees responded that the
arbitration agreements were unconscionable, citing various
provisions of the agreements which they said made arbitration
costly or unfair.[1]  Coverall responded in turn that, by the terms
of Rule 7(a), a challenge to the validity of the arbitration
provision was itself a matter for the arbitrator to determine.

In a decision dated July 1, 2008, the district court held
that the franchise agreements did not clearly and unmistakably
reflect such an intention, and the district judge referred
plaintiffs' claims of unconscionability to a magistrate judge.
Awuah v. Coverall N. Am., Inc., 563 F. Supp. 2d 312 (D. Mass.
2008).  Coverall then appealed to this court, which stayed
proceedings before the magistrate judge pending this appeal.

Coverall's interlocutory appeal to this court is pursuant
to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(A)

_____

[1]These included the agreement's cost-sharing provisions,
prohibition of punitive and exemplary damages, bar on class action
arbitration, "no-modification clause," a requirement that the
losing party pay the prevailing party's attorney costs, a
prohibition on a claimant using the results of another arbitration
proceeding in his own proceeding, and a provision allowing Coverall
alone to initiate suit in court in certain circumstances.  See
Articles 21(A)(11), 22.

-4-

(2000), which entitles a party to appeal a refusal to stay court proceedings pending arbitration. <u>Fit Tech, Inc.</u> v. <u>Bally Total Fitness Holding Corp.</u>, 374 F.3d 1, 5 (1st Cir. 2004).[2] Although the district court has not yet definitively rejected arbitration on the merits of the three appellees' claims, it has rejected arbitration on the issue--which Coverall claims to be committed to the arbitrator--as to whether the arbitration clause itself is so unconscionable that an interlocutory appeal is permitted. <u>Madol</u> v. <u>Dan Nelson Automotive Group</u>, 372 F.3d 997, 998-99 (8th Cir. 2004).

The FAA provides that where "the making of the agreement for arbitration or the failure to comply therewith is not in issue," arbitration should be ordered.   9 U.S.C. § 4.   Based on this language, the Supreme Court has determined that whether an issue is subject to arbitration under an agreement containing an arbitration clause is itself presumptively a matter for the court to decide before ordering arbitration.   <u>First Options</u> v. <u>Kaplan</u>, 514 U.S. 938, 943-44 (1995).   However, this general rule can be qualified by agreement of the parties.

Thus, where the parties have themselves "clearly and unmistakably agreed" that the arbitrator should decide whether an issue is arbitrable, the Supreme Court has held that this issue is

---

[2]The franchise agreements provide that they are subject to the FAA but are otherwise governed by the substantive law of the state in which the franchisee is located: here, the three appellees are respectively residents of Massachusetts (Awuah), New Jersey (Pineda), and Pennsylvania (Barrientos).

-5-

to be decided by the arbitrator.  E.g., Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Additionally, a challenge to the validity of the contract itself is subject to arbitration and that allocation of authority to the arbitrator will also be respected by the court.  Buckeye Check Cashing v. Cardegna, 546 U.S. 440, 443-45 (2006).

Yet where the parties merely agree that the validity of the contract should be subject to arbitration, this does not commit to the arbitrator a dispute about whether the arbitration clause is valid.  Id. at 445-46; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). Unfortunately, the Supreme Court has not said definitively whether the arbitrator gets to decide the latter question where, as here, arbitration rules incorporated in the contract say that the arbitrator should decide whether the arbitration clause is valid.

How the Court would decide such a case is not entirely clear. On the one hand, one might think that Howsam's principle of party autonomy might extend to such a case. On the other, Buckeye did not cite Howsam and conceivably the Court might regard the validity of the arbitration clause as a special case in which challenges should be decided by the judge, either as a matter of

policy or because of statutory language.[3]   If the matter were completely open in this circuit, we are not certain of the outcome.

However, this court has said expressly that the validity of an arbitration clause is itself a matter for the arbitrator where the agreement so provides. In Apollo Computer v. Berg, 886 F.2d 469 (1st Cir. 1989), the parties had consented to International Chamber of Commerce rules, which stipulate that challenges to the "validity of the arbitration agreement" shall be decided by an arbitrator. Apollo said:

> These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a *prima facie* agreement to arbitrate whose continued existence and validity is being questioned. The arbitrator should decide whether a valid arbitration agreement exists.
> . . .

Id. at 473-74.

Apollo accords with the views of at least one other circuit, see Terminix Int'l Co. LP v. Palmer Ranch Ltd., 432 F.3d 1327, 1332-33 (11th Cir. 2005), and has been taken at face value by

---

[3]In a number of cases, including ones where AAA rules were cross-referenced in the contract, courts have examined arbitration clauses for unconscionability, but without any indication that anyone argued that the issue should have gone to arbitration based on the cross-reference.  See Davis v. O'Melveny & Myers, 485 F.3d 1066 (9th Cir. 2007), cert. dismissed, 128 S.Ct. 1117 (2008); Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006); Gemini Ernst & Young v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003); Alexander v. Anthony Int'l, L.P., 341 F.3d 256 (3d Cir. 2003); Burden v. Check Into Cash of Kentucky, LLC, 267 F.3d 483 (6th Cir. 2001), cert. denied, 535 U.S. 970 (2002).

a district court within our own circuit.  Morris v. Regis Corp.,
No. 08-68-P-H, 2008 U.S. Dist. LEXIS 56612, at *3 (D. Me., July 25,
2008).  Morris held that district court should adjudicate the
validity of the arbitration clause only because the contract at
issue contained ambiguous language with respect to whether a court
or arbitrator should decide this gateway dispute.  Morris, 2008
U.S. Dist. LEXIS 56612, at *6, *9-10.

        Admittedly, the precise controversy in Apollo involved
the question whether one party had authority to bind the other to
arbitrate rather than (as here) a question of unconscionability.
Still, the language quoted above, although perhaps broader than
necessary to resolve the controversy, did constitute the rationale
for the decision.  Given that the Supreme Court has not clearly
spoken, the interests of predictability are served by respecting
our own prior language unless either the Supreme Court or an en
banc panel say otherwise.  United States v. Holloway, 499 F.3d 114,
118 (1st Cir. 2007).

        The district court did not disagree with Apollo's
premise--that the parties can contract for the arbitrator to decide
challenges to his own authority--but the court held that the
parties in this case had not clearly and unmistakably committed to
the arbitrator the question whether the arbitration clause itself
was valid.  This would be a hard position to defend if one looked
only to the language of Rule 7(a), since it appears explicitly to

-8-

affirm the arbitrator's authority to decide challenges to the "validity of the arbitration agreement."

The district court's answer was that allowing the arbitrator to decide the validity of the arbitration clause would entail his striking the clause if it were invalid; yet the arbitration clause provides that "the arbitrator . . . shall not alter or otherwise reform the terms of this agreement" and other language to the same effect. By contrast, the agreements have a severability clause allowing other provisions to survive if "a court of competent jurisdiction" invalidates a provision.

With respect, this is too thin a basis for concluding that the agreements' language "evinces an intent to allow questions of arbitrability to be decided by a court." Awuah, 563 F. Supp. 2d at 315. Rule 7(a) says plainly that the arbitrator may "rule on his or her own jurisdiction" including any objection to the "existence, scope or validity of the arbitration agreement." This is about as "clear and unmistakable" as language can get, meeting the standard we have followed. E.g., Rosenberg v. Merrill Lynch Pierce, Fenner & Smith, Inc., 170 F.3d 1, 20-21 (1st Cir. 1999); Skirchak v. Dynamic Research Corp., 508 F.3d 49, 60-61 (1st Cir. 2007).

Of course, a larger question, or perhaps several, lie behind this controversy. It is doubtful that many people read the small print in form contracts, let alone the small print in

-9-

arbitration rules that are cross-referenced by such contracts, however explicit the cross-reference.  While one might expect more in a commercial setting, Coverall franchisees are (it is alleged) often far from sophisticated business men and women. In all events whether "knowledge" is the real issue may be doubtful.

Franchise agreements are often contracts of adhesion offered to those with little bargaining power; probably few would go unsigned even if Rule 7(a) were printed in bold type on the front page.[4]  Further, courts have no general power to relieve parties of bad bargains except in extreme cases, i.e., where the contract is unconscionable. The question here is simply who should decide the unconscionability issue, and the arbitration clause said in effect that this was for the arbitrator.

What is the most potent concern is an argument embedded, although not stressed, in appellees' brief, namely, that arbitration in this case may itself be an illusory remedy.  In principle, having the arbitrator decide questions of validity may be fine if the parties so agreed; but if the terms for getting an arbitrator to decide the issue are impossibly burdensome, that outcome would indeed raise public policy concerns. If arbitration

---

[4]Although pertinent on certain issues, the fact that an agreement is a contract of adhesion or includes documents by cross-references does not alone make the document invalid or nullify the cross reference.  E.g., Am. Bankers Mortgage Corp. v. Fed. Home Loan Mortgage Corp., 75 F.3d 1401 (9th Cir. 1996); Level Export Corp. v. Wolz, Aiken & Co., 305 N.Y. 82, 87 (1953); Farnsworth, § 4.28 n.33; Williston on Contracts, § 49:22 (4th ed. 2008).

prevents plaintiffs from vindicating their rights, it is no longer a "valid alternative to traditional litigation."  Kristian v. Comcast Corp., 446 F.3d 25, 37 (1st Cir. 2006)

In this instance, appellees' allegations do raise claims that the arbitral forum is illusory.  In particular, they assert that the amounts likely to be recovered by each of the individual franchisees may be modest and that the costs of arbitration itself- -independent of counsel fees, which can be contingent--would be overwhelming.  Of course, court litigation can also be expensive, but at least one does not need to pay the judge.  Appellees asserted in the district court that franchisees

> could be liable for substantial administrative
> fees payable up front to the American
> Arbitration Association, half of all the
> arbitration fees to the neutral arbitrator
> (who, at a reduced hourly rate of $300.00 per
> hour, would still cost $2,400 per day for both
> hearings and writing) and in addition would
> have to pay the whole fee for an additional
> arbitrator.

They also submitted the report of a franchise law attorney, which states that he has been involved in arbitrations that have cost $100,000 and $150,000 (for one arbitrator) and $300,000 and $400,000 (for a three-person arbitration panel).  This concern about fees is the most prominent but not necessarily the only basis for appellees' claim that in practical effect they have no real opportunity to get issues, including unconscionability, resolved in arbitration.

In Green Tree Fin. Corp. v. Randolph, the Supreme Court observed: "It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." 531 U.S. 79, 90 (2000). Several circuits have agreed that where a plaintiff asserts that excessive arbitration costs deprive the plaintiff of an arbitral forum, a threshold issue is presented for consideration by the court. See, e.g., Faber v. Menard, Inc., 367 F.3d 1048, 1052-55 (8th Cir. 2004); Musnick v. King Motor Co., 325 F.3d 1255, 1259 (11th Cir. 2003).

Yet, despite the failure of Coverall's brief to respond to these contentions, how burdensome arbitration would be is uncertain. Given the franchise fees, the individuals may have substantial but not excessively large claims--the complaint specifies amounts of $4,740, $8,500 and $46,064, respectively, but says these are bare minimums. And the American Arbitration Association rules have provisions for expedited treatment and lesser procedures in cases where the amount in controversy is $75,000 or less. Whether access to the arbitrator is really a colorable defense is not clear on this record.

Our concern here is not with unconscionability-- essentially a fairness issue, Farnsworth, supra, § 4.28, at 584- 88,--but more narrowly with whether the arbitration regime here is structured so as to prevent a litigant from having access to the

-12-

arbitrator to resolve claims, including unconscionability defenses. The standard for such a showing of illusoriness would also be high--all formal dispute resolution involves costs and inconvenience. But if the remedy is truly illusory, a court should not order arbitration at all but decide the entire dispute itself.

Accordingly, although our view of the district court's initial role is narrower, we agree that the appellees are entitled to a ruling by that court as to whether the arbitration remedy in this case is illusory. Our current stay will terminate when the mandate issues in the case. Subject to the district court's wishes, we see no reason why the magistrate judge cannot proceed with the inquiry, refocused in accordance with this decision.

The district court's refusal to order arbitration at this time is affirmed on the grounds set forth above, and the matter is remanded to the district court for proceedings consistent with this decision.

It is so ordered.