UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, BENECIRA CAVALCANTE, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO, PHILLIP BEITZ, RICHARD BARRIENTOS, MARIAN LEWIS, STANLEY STEWART, and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>COVERALL NORTH AMERICA, INC.,<br><br>*Defendant*. | CIVIL ACTION NO. 1:07-cv-10287-WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DOCUMENT PRODUCTION AND ANSWERS TO DEPOSITION QUESTIONS**

Coverall North America, Inc. ("Coverall") has moved pursuant to Fed. R. Civ. P. 37 and LR 37.1 to compel discovery regarding federal tax returns filed by plaintiffs Pius Awuah, Richard Barrientos, and Denisse Pineda (collectively, the "Arbitration Plaintiffs"). This is a dispute regarding the terms of certain contracts (the "Franchise Agreements") between Coverall and the plaintiffs. The Arbitration Plaintiffs' Franchise Agreements contain arbitration clauses, and Coverall has sought to compel arbitration.

The First Circuit Court of Appeals has allowed an inquiry into whether the Franchise Agreements' arbitration remedy is "illusory" because the Arbitration Plaintiffs lack the ability to pay for arbitration. In connection with this inquiry, Coverall sought discovery regarding the Arbitration Plaintiffs' federal tax returns, as these documents will shed light on the Arbitration Plaintiffs' ability to afford arbitration. The Arbitration Plaintiffs have refused to provide this

discovery, and two have even refused to answer deposition questions seeking to discover if they filed federal tax returns.

The Arbitration Plaintiffs' federal tax returns are probative of their financial condition and therefore their ability to pay for arbitration.  As the Arbitration Plaintiffs have not met their burden of demonstrating a verifiable alternate means of discovering the information contained in their returns, Coverall is entitled to examine the returns themselves.  Accordingly, this Court should compel the Arbitration Plaintiffs to answer questions regarding the existence of those returns for the years following the dates of their Franchise Agreements and, if they do exist, produce them.  In addition, this Court should order the Arbitration Plaintiffs to obtain copies of any missing returns from the government, at Coverall's expense.

## BACKGROUND

Coverall markets and sells commercial janitorial franchises throughout the United States. Coverall's franchisees sign Franchise Agreements that entitle them to a variety of benefits, including training, billing services, and a set amount of initial cleaning business in the form of accounts referred by Coverall.

In February of 2007, a number of franchisees filed a prospective class action against Coverall in this Court.  These franchisees included the Arbitration Plaintiffs, who had signed Franchise Agreements containing arbitration clauses.  In June 2007 (before Barrientos had been joined as a plaintiff in this action), Coverall moved to stay proceedings with respect to Awuah and Pineda while it compelled them to arbitrate.  See Docket Entries ##18, 21.  Nine months later, in March 2008, the Plaintiffs moved to "strike" Awuah and Pineda's arbitration clauses from their Franchise Agreements on the grounds that they were unconscionable.

In May 2008, Coverall moved to stay proceedings with respect to Barrientos, newly joined as a plaintiff.  See Docket Entry #88.  The Plaintiffs opposed that motion a month later.  See Docket Entry #112.

In July 2008, this Court referred the question of the arbitration clauses' unconscionability to a magistrate, and Coverall appealed.  In January 2009, the First Circuit Court of Appeals issued a decision (the "Appellate Decision," Docket Entry #150) refocusing the arbitration question before the District Court.  The First Circuit held that the proper inquiry was whether "the arbitration remedy in this case is illusory."  Id. at 13.  It further explained that "[o]ur concern here is not with unconscionability--essentially a fairness issue--but more narrowly with whether the arbitration regime here is structured so as to prevent a litigant from having access to the arbitrator to resolve claims, including unconscionability defenses."  Id. at 12-13 (emphasis in original).

In preparation for the Court's "illusoriness" inquiry, in March 2009, Coverall served document requests and interrogatories designed to discover facts relevant to the Arbitration Plaintiffs' ability to pay for arbitration.  This discovery included requests for production of some of the Arbitration Plaintiffs' federal tax returns.  The Arbitration Plaintiffs objected to these requests.[1]  Coverall subsequently deposed the Arbitration Plaintiffs, and their counsel refused to

---

[1] Coverall's First Set of Rule 34 Requests to Pius Awuah, Richard Barrientos, and Denisse Pineda (respectively the "Awuah Req.," the "Barrientos Req.," and the "Pineda Req.") are attached as Exhibits A-C to affidavit of Matthew Iverson ("Iverson Aff.") filed herewith.  The Arbitration Plaintiffs' responses and objections to these requests (the "Awuah Resp.," the "Barrientos Resp.," and the "Pineda Resp.") are attached as Exhibits D-F to the Iverson Aff.

permit Awuah and Barrientos (but not Pineda) to answer questions regarding whether they had filed federal tax returns.[2]

On or about September 17, 2009, Matthew Iverson, counsel for Coverall, held a telephone conference with Hillary Schwab, counsel for the Arbitration Plaintiffs, to discuss the parties' positions regarding these disputes. The conference was unsuccessful.

## ARGUMENT

### I. The Requests For Production Of Tax Returns.

The Document Requests sought production of "[a]ll tax returns" filed by each Arbitration Plaintiff since the date they signed their Franchise Agreement.[3] See Awuah Req. ¶ 8, Barrientos Req. ¶ 8, Pineda Req. ¶ 8. The Arbitration Plaintiffs objected to each request "on the grounds that it seeks information not relevant to the subject matter involved in the action, it is not reasonably calculated to the discovery of admissible evidence, it is unreasonably cumulative and/or duplicative, overly broad, and unduly burdensome, it constitutes an invasion of privacy, and it seeks information obtainable from some other source that is more convenient, less burdensome, and/or less expensive." Awuah Resp. ¶ 8, Barrientos Resp. ¶ 8, Pineda Resp. ¶ 8.

Awuah and Barrientos initially agreed to produce only the Schedule C forms from their 2005 tax returns, see Awuah Resp. ¶ 8, Barrientos Resp. ¶ 8, and Pineda initially denied that she had any tax records, see Pineda Resp. ¶ 8. All three Arbitration Plaintiffs eventually produced selected tax documents: Awuah produced a W-2 form from 2005 and his 1040 Schedule Cs from 2005, 2006, and 2007; Barrientos produced W-2s from 2005 and 2006, a 1040 Schedule C

---

[2] Relevant portions of the deposition transcripts in this matter (the "Awuah Dep.," "Barrientos Dep.," and "Pineda Dep.") are attached as Exhibits G-I of the Iverson Aff.

[3] Awuah signed his Franchise Agreement in 2005, Barrientos signed his in 2002, and Pineda signed hers in 2006.

from 2005, and 1040 Schedule Ds from 2005 and 2006; and Pineda produced W-2s from 2004, 2005, 2007, and 2008, and a 1040 Schedule C from 2006.

**Coverall's Position.**

Tax returns are discoverable when (1) they are relevant to the action, and (2) the information they contain is not otherwise obtainable. Buntzman v. Springfield Redevelopment Auth., 146 F.R.D. 30, 32 (D. Mass. 1993) (Ponsor, J.). See also Halperin v. Berlandi, 114 F.R.D. 8, 11 (D. Mass. 1986) ("[t]ax returns are subject to discovery as long as they are relevant to the subject matter of the action"). "The burden to show relevancy lies on the party seeking the returns; the party resisting disclosure bears the burden of establishing alternative sources for the information." Id., citing United States v. Bonanno Organized Crime Family of La Cosa Nostra, 119 F.R.D. 625 (E.D.N.Y. 1988). Further, a taxpayer who does not physically possess otherwise discoverable returns must obtain copies from the government if the requesting party agrees to pay the fees required to obtain them. See Tollefsen v. Phillips, 16 F.R.D. 348, 348-49 (D. Mass. 1954) (copies of tax returns held by government are within taxpayer's constructive possession for discovery purposes and owner must obtain and produce them).

The relevance of the Arbitration Plaintiffs' federal tax returns is obvious. The Arbitration Plaintiffs are asking to be excused from their arbitration clauses because they cannot afford to pay arbitration fees. See Appellate Decision at 11. The Court of Appeals has charged this Court with determining, after a hearing, whether that claim has an adequate basis in fact. Appellate Decision at 12-13 (requiring determination of whether "large arbitration costs could preclude [the Plaintiffs] from effectively vindicating [their] rights in the arbitral forum," quoting Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000)). The Arbitration Plaintiffs' tax returns are the best available evidence of their financial condition and, therefore, their ability to afford

arbitration fees.  See Buntzman, 146 F.R.D. at 32-33 (tax returns are probative of financial condition and discoverable when financial condition is at issue).  In these circumstances, "the subject returns are relevant under the broad interpretations of relevance suggested by the Federal Rules of Civil Procedure."  Halperin, 114 F.R.D. at 11.

Nor is Coverall's request overbroad.  Coverall asked for all federal tax returns that the Arbitration Plaintiffs filed since signing their Franchise Agreements because this was the period during which the Arbitration Plaintiffs could have brought an arbitration claim against Coverall.  Given that the Arbitration Plaintiffs' financial condition throughout this period is relevant to the Court's inquiry, Coverall's request cannot be characterized as unreasonably cumulative, overbroad, or unduly burdensome.  See Halperin, 114 F.R.D. at 11 (production of eight years of tax returns not unduly burdensome where returns were relevant to disputed issue).

While the Arbitration Plaintiffs (who bear the burden of identifying an alternative information source when resisting tax return production) maintain that other, more convenient means exist to verify their financial condition during the period in question, the only other source they offer is the hodgepodge of W-2s and 1040 Schedules that the Arbitration Plaintiffs agreed to produce.  These are not only facially incomplete (Awuah produced a single W-2 and no records at all for 2008, Barrientos failed to produce any records for the years 2002-04 and 2007-08, and Pineda failed to produce any W-2s for 2006), but without access to full returns Coverall has no way of determining the accuracy of the financial picture these documents paint.  For example: Awuah stated that he did not know if he received income in 2007 in addition to that shown on his Schedule C, see Awuah Dep. 121:4-12; Barrientos claims that he makes $45,000 a year in his present position, see Barrientos Dep. at 31-32, but produced nothing to verify that claim; and

Pineda admitted that she receives significant rental income in addition to what would appear on her W-2s, see Pineda Dep. at 35-36.

The Arbitration Plaintiffs also object to producing copies of their tax returns on privacy grounds. However, "fairly discoverable information cannot be withheld on the ground that discomfort arises in disclosing it." Buntzman, 146 F.R.D. at 33. This is particularly true where, as here, discovery is sought from "[a] party who chooses to litigate an issue upon which his tax returns may cast significant light . . . ." Rubenstein v. Kleven, 21 F.R.D. 183, 184 (D. Mass. 1957) (emphasis added). This Court should accordingly order the Arbitration Plaintiffs to assemble and produce complete copies of their tax returns for all years since the signing of their Franchise Agreements, obtaining copies from the government (at Coverall's expense) where necessary. See Tollefsen, 16 F.R.D. at 349 (requiring plaintiff to obtain and produce copies of tax returns from government at defendants' expense).

## II. The Deposition Questions.

Coverall's counsel asked each Arbitration Plaintiff if they had filed federal tax returns for certain years. Awuah Dep. at 115-16; Barrientos Dep. at 35-37; Pineda Dep. at 31-32. While Pineda answered these questions in the affirmative, Plaintiffs' counsel instructed Awuah and Barrientos not to answer on the grounds that tax returns are "confidential and privileged." Awuah Dep. at 115:12-16 ("The tax returns are entitled to a -- they are a privileged document, privileged and confidential document, both generally and specifically in the First Circuit and Massachusetts."); Barrientos Dep. at 35:10 ("I'm going to object and instruct Mr. Barrientos not to answer on the grounds that whether he filed tax returns is a confidential and privileged matter and is not relevant.").

**Coverall's Position.**

These instructions were improper. "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). None of those exceptions apply here: Plaintiff did not present a motion under Rule 30(d)(3), the Court placed no topical limitations on discovery, and "[i]t is well settled that tax returns do not enjoy an absolute privilege from discovery." Buntzman, 146 F.R.D. at 32. "Wright & Miller recognize that a few early decisions found tax returns privileged but that there is now 'overwhelming authority to the contrary and the matter should now be considered resolved.'" Id., quoting Wright & Miller, Federal Practice and Procedure, § 2019 at 163 (1970). See also supra Part I. Moreover, even if the contents of the Plaintiffs' tax returns are privileged, there is no authority for the proposition that facts regarding whether a witness has filed a tax return are privileged.

Although Plaintiffs' counsel also instructed Barrientos not to answer on relevance grounds, see Barrientos Aff. at 35:10, this objection is spurious. As set forth above, see supra Part I, the Arbitration Plaintiffs' federal tax returns bear directly on their ability to afford arbitral fees. Accordingly, questions designed to determine if those tax returns exist are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Accordingly, unless Awuah and Barrientos first produce all of the requested federal tax returns, this Court should order them to answer deposition questions regarding the existence of those returns.

**CONCLUSION**

For the reasons set forth above, this Court should allow this motion and enter an order requiring that (1) Awuah obtain and produce copies of his federal tax returns for 2005-2008; (2) Barrientos obtain and produce copies of his federal tax returns for 2002-2008; (3) Pineda obtain

and produce copies federal tax returns for 2006-2008; and (4) all of the Arbitration Plaintiffs answer deposition questions regarding whether they filed a federal tax return for any of the years listed above for which they fail to produce a return.

                    **COVERALL NORTH AMERICA, INC.**

                    By its attorneys,

                    /s/ Matthew J. Iverson
                    Michael D. Vhay (BBO No. 566444)
                    *michael.vhay@dlapiper.com*
                    Matthew J. Iverson (BBO No. 653880)
                    *matthew.iverson@dlapiper.com*
                    Paul S. Ham (BBO No. 673193)
                    *paul.ham@dlapiper.com*
                    DLA PIPER LLP (US)
                    33 Arch Street, 26th Floor
                    Boston, MA  02110-1447
                    (617) 406-6000

                    Norman M. Leon
                    DLA PIPER LLP (US)
                    203 North LaSalle Street, Suite 1900
                    Chicago, IL  60601
                    (312) 368-4000

                    John F. Dienelt
                    DLA PIPER LLP (US)
                    1200 Nineteenth Street, NW
                    Washington, DC  20036
                    (202) 861-3900

Dated:  October 7, 2009

## Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on mailing time and provide for a uniform period regardless of the use of the mails.

                    /s/ Matthew J. Iverson
                    Matthew J. Iverson