**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, BENECIRA CAVALCANTE, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO, PHILLIP BEITZ, RICHARD BARRIENTOS, MARIAN LEWIS, STANLEY STEWART, and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>COVERALL NORTH AMERICA, INC.,<br><br>            Defendant. | Case No. 1:07-cv-10287-WGY |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

This case has been brought on behalf of janitors who have paid thousands of dollars to obtain cleaning work from Defendant Coverall North America, Inc. ("Coverall"). Four of the named Plaintiffs in this action performed work for Coverall in Massachusetts: Pius Awuah, Nilton dos Santos, Geraldo Correia, and Benecira Cavlcante. Plaintiffs allege that Coverall has misclassified all of its cleaning workers as independent contractors. Though in most states Plaintiffs acknowledge that this claim raises factual issues, in Massachusetts, this issue can be decided in Plaintiffs' favor on summary judgment, under the Massachusetts Independent Contractor statute, Mass. Gen. L. c. 149 §148B. Moreover, the record is clear that Coverall has continued misclassifying its cleaning workers as independent contractors in Massachusetts despite having already lost on this very issue before the Massachusetts Supreme Judicial Court in Coverall North America, Inc. v. Commissioner of the Division of Unemployment Assistance, 447 Mass. 852 (2006). As discussed below, the SJC found in that case that one of Coverall's purported independent contractor "franchisees" was an employee for purposes of the unemployment statute (a law virtually identical to, but even less stringent than, § 148B).

As set out below, the undisputed facts establish a violation of the Massachusetts Independent Contractor Statute, and the Massachusetts plaintiffs are entitled to judgment as a matter of law on that claim (Count VII of Plaintiffs' Third Amended Complaint).  Trial for the Massachusetts cleaning workers would then only be needed to determine the damages to which they are entitled.  See Somers v. Converged Access, Inc., 454 Mass. 582 (2009) (issue of whether employee has been misclassified as independent contractor is separate from issue of damages, which is for the jury; "[a]n employee misclassified as an independent contractor, as a matter of law, *is* an employee").

In its decision in the prior Coverall case, the Massachusetts Supreme Judicial Court considered the precise issue raised in this case—whether Coverall improperly classified a cleaning worker "franchisee" as an independent contractor.[1]  Based on facts indistinguishable from those in this case, the SJC found for the claimant, ruling that Coverall could not meet its burden of proving all three elements of Massachusetts' independent contractor test.  Id. at 856-58.  As set out below, the same is true here—as a matter of law, Coverall cannot establish all three elements of M.G.L. c. 149, § 148B and the Massachusetts plaintiffs are entitled to summary judgment on that claim.[2]

Massachusetts has one of the strongest, if not the strongest, independent contractor statutes in the nation.  Moreover, both the Massachusetts judiciary and the Governor's Office have expressed concern about the problem of independent contractor misclassification in Massachusetts.  Governor Deval Patrick has created a Joint Task Force on the Underground Economy and Employee Misclassification. See Exec. Order No. 499 (March 12, 2008), copy

---

[1] In Coverall, the Supreme Judicial Court was interpreting Mass. Gen. L. c. 151A § 2 in the context of the individual's claim for unemployment benefits after the termination of her relationship with Coverall. However, the language in that statute is nearly identical to Section 148B.

[2] As the Massachusetts Supreme Judicial Court recently made clear in Somers v. Converged Access, Inc., 454 Mass. 582 (Mass. 2009), whether a worker is an employee or independent contractor is an issue that is to be decided separately from the question of damages.  Thus, summary judgment can be granted as to liability alone with damages to be determined in a subsequent phase of the case.

2

attached as Exhibit A.  In its recent Annual Report, the Joint Task Force highlights this problem in the cleaning industry in particular:

> In the construction and **cleaning industries**, in particular, we've observed a trend in  misclassification of employees and establishment of sham businesses using immigrant workers to serve as the employer/fall guy, when, in fact, they are simply misclassified employees.

Joint Task Force Annual Report, included here as Exhibit B, at 7 (June 2009) (emphasis added), citing Massachusetts Attorney General's Office.

Additionally, Massachusetts courts have repeatedly found liability for violations in cases similar to this one and granted summary judgment under § 148B to plaintiffs.  In addition to the previous finding against Coverall mentioned above, in recent decisions in Massachusetts Superior Court, courts have concluded on records similar to the one in this case that defendants have misclassified their workers as independent contractors in violation of the statute.  See Fucci v. Eastern Connection Operating, Inc., Superior Court Civil Action No. MICV 2008-2659 (Middlesex Sup. Ct. September 21, 2009), attached as Exhibit C (delivery drivers misclassified as independent contractors; summary judgment granted to plaintiffs); Chaves, et al. v. King Arthur's Lounge, Inc., Superior Court Civil Action No. 07-2505 (July 30, 2009), attached as Exhibit D (exotic dancers misclassified as independent contractors; summary judgment granted to plaintiffs); Amero v. Townsend Oil, Superior Court Civil Action No. 07-1080-C (Essex Sup. Ct. April 15, 2009), attached as Exhibit E (oil delivery driver misclassified as independent contractor; summary judgment granted to plaintiff); see also Somers v. Converged Access, Inc.,[3] 454 Mass. 582 (2009) (reversing summary judgment for defendant in a case in which a computer engineer was misclassified as independent contractor and recognizing the strict requirements of Section 148B);.  All of these decisions have come out within the last year,

---

[3]   The SJC's interest in ensuring that the Massachusetts Independent Contractor statute is applied as the Legislature intended was demonstrated by its *sua sponte* decision to take up Somers, which was litigated by a *pro se* plaintiff in Superior Court and as to which the appeal was originally filed at the Massachusetts Appeals Court, as well as its *sua sponte* decision to take up the first Coverall case.  447 Mass. at 853.

3

reflecting Massachusetts courts' recognition of the strength of the state's independent contractor misclassification statute.

As in the previous Coverall case before the SJC and these other Massachusetts cases granting summary judgment to plaintiff workers under Section 148B, the cleaning workers who performed work for Coverall in Massachusetts are entitled to a finding that Coverall misclassified them as independent contractors.

## BACKGROUND

Plaintiffs initiated this action in 2007, alleging wage claims and claims of unfair and deceptive business practices (and related common law claims) against Coverall, relating to Coverall essentially selling low-paying janitorial jobs to individuals for large sums of money. Plaintiffs have alleged numerous violations of state and federal law in connection with their employment as Coverall cleaning workers and have brought claims in this litigation for unfair and deceptive trade practices, independent contractor misclassification (the claim at issue here), wage law violations, misrepresentation, quantum meruit, and unjust enrichment. As set forth below, Plaintiffs are entitled to summary judgment on their independent contractor misclassification claim brought under Mass. Gen. L. c. 149 § 148B.

The Plaintiffs' Statement of Undisputed Facts, which accompanies this memorandum, is incorporated here by reference. Central material facts are referenced herein without repeating the statement of facts here.

## ARGUMENT

**AS A MATTER OF LAW, COVERALL'S CLEANING WORKERS MUST BE DEEMED EMPLOYEES UNDER THE MASSACHUSETTS INDEPENDENT CONTRACTOR STATUTE, M.G.L. CHAPTER 149, SECTION 148B.**

In order to overcome the Massachusetts plaintiffs' misclassification claim, Coverall has the burden to prove that they were properly classified as independent contractors under all three prongs of § 148B. Specifically, Coverall must prove:

4

1. The individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

2. The service is performed outside the usual course of the business of the employer; and

3. The individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. L. c. 149 § 148B. The test is *conjunctive*; Coverall's cleaning workers are employees unless Coverall can satisfy *all three* of the prongs in Section 148B. See id.; Somers v. Converged Access, Inc., 454 Mass. at 590-91 ("[U]nless [the defendant] were to prove at trial the three criteria required to establish that the plaintiff was an independent contractor under G.L. c. 149, § 148B the [plaintiff], as a matter of law, *was* an employee of [defendant] even if he was not hired as an employee . . .") Significantly, in the prior Coverall case, the SJC found that because of this conjunctive nature of the test, it needed "not belabor whether Coverall satisfied the first two prongs… because the weight of the evidence established that Coverall failed to establish the third prong…" 447 Mass. 857.

Here, as set forth below, Coverall cannot satisfy any one of Section 148B's three prongs. As such, as the SJC observed in Somers, Plaintiffs "as a matter of law, *[are]* employee[s] of [the defendants] even if [they were] not hired as . . . employee[s]." 454 Mass. at 590; see also Fucci v. Eastern Connection Operating, Inc., Exhibit C at 6 ("Because this test is conjunctive, the employer's failure to prove any one of these three elements suffices to establish that the individual is an employee.").[4] Accordingly, the Massachusetts plaintiffs are entitled to summary judgment on this claim.

---

[4] Notably, in another case raising similar claims against another cleaning franchise company that operates virtually identically to Coverall, this Court recently certified a Massachusetts class under § 148B, holding, *inter alia*, that "[c]ommon questions will predominate for the plaintiffs' employment classification class under all three prongs of the Massachusetts test." See Docket No. 91 (Sept. 21, 2009, Mem. & Ord.), at 31, De Giovanni et al. v. Jani-King International, Inc. et al., D. Mass. Civil Action No. 07-10066. (That case was recently reassigned to the Honorable Mark L. Wolf.)

1. The individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

2. The service is performed outside the usual course of the business of the employer; and

3. The individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. L. c. 149 § 148B. The test is *conjunctive*; Coverall's cleaning workers are employees unless Coverall can satisfy *all three* of the prongs in Section 148B. See id.; Somers v. Converged Access, Inc., 454 Mass. at 590-91 ("[U]nless [the defendant] were to prove at trial the three criteria required to establish that the plaintiff was an independent contractor under G.L. c. 149, § 148B the [plaintiff], as a matter of law, *was* an employee of [defendant] even if he was not hired as an employee . . .") Significantly, in the prior Coverall case, the SJC found that because of this conjunctive nature of the test, it needed "not belabor whether Coverall satisfied the first two prongs… because the weight of the evidence established that Coverall failed to establish the third prong…" 447 Mass. 857.

Here, as set forth below, Coverall cannot satisfy any one of Section 148B's three prongs. As such, as the SJC observed in Somers, Plaintiffs "as a matter of law, *[are]* employee[s] of [the defendants] even if [they were] not hired as . . . employee[s]." 454 Mass. at 590; see also Fucci v. Eastern Connection Operating, Inc., Exhibit C at 6 ("Because this test is conjunctive, the employer's failure to prove any one of these three elements suffices to establish that the individual is an employee.").[4] Accordingly, the Massachusetts plaintiffs are entitled to summary judgment on this claim.

---

[4] Notably, in another case raising similar claims against another cleaning franchise company that operates virtually identically to Coverall, this Court recently certified a Massachusetts class under § 148B, holding, *inter alia*, that "[c]ommon questions will predominate for the plaintiffs' employment classification class under all three prongs of the Massachusetts test." See Docket No. 91 (Sept. 21, 2009, Mem. & Ord.), at 31, De Giovanni et al. v. Jani-King International, Inc. et al., D. Mass. Civil Action No. 07-10066. (That case was recently reassigned to the Honorable Mark L. Wolf.)

Section 148B severely limits any company from treating individuals as independent contractors in the Commonwealth. This fact has been noted by commentators and the Massachusetts Attorney General's office. See, e.g., Recent Change to Independent Contractor Law; An Earthquake for Employers in Massachusetts?, Massachusetts Lawyers Weekly, 5/05/05, attached as Exhibit F; Attorney General Advisory on M.G.L. c. 149, § 148B 2008/1, attached as Exhibit G; The Independent Contractor Law; What Additional Requirements Does it Place on Massachusetts Employers; Massachusetts Lawyers Weekly 11/14/05, attached as Exhibit H. Moreover, not only is it one of the strongest statutes in the country—requiring defendants to satisfy all three prongs of Section 148B in order to avoid treating individuals as employees,[5] but the Massachusetts SJC has emphasized that the statute imposes what is essentially "strict liability" on employers that misclassify their workers. In Somers, the Court explained:

> Regardless of the agreement between the plaintiff and [defendant], and regardless of the parties' intentions that his work be performed as an independent contractor, unless [the employer] successfully satisfies the requirements of G.L. c. 149, § 148B, the plaintiff was [the defendant's] employee. None of the statutory criteria speaks of the employer's intent; rather, all speak of the nature of the service provided. To this extent, § 148B is a strict liability statute, as is the wage act. Good faith or bad, if an employer misclassifies an employee as an independent contractor, the employer must suffer the consequences.

454 Mass. at 590-91.

Significantly, the statute was amended effective July 2004. See St. 2004 Chapter 193, Section 26. The amendment strengthened prong two which had previously read "and such service is performed either outside the usual course of the business for which the service is

---

[5] In this way, the Massachusetts statute differs from (and is stronger than) the tests used to determine employee status under federal law (including the FLSA, IRS, and NLRB standards) and under the laws of many other states, many of which employ multifactor balancing tests, with no one factor being dispositive. See, e.g., Baker v. Flint Engineering & Const. Co., 137 F.3d 1436, 1440 (10th Cir. 1998) (when applying economic realities test under the FLSA, court applies six-factor balancing test); U.S. v. Total Employment Co., Inc., 305 B.R. 333, 337 (M.D.Fla. 2004) ("[T]he IRS has developed a twenty-factor test to determine whether an individual is an employee or an independent contractor") (citing to Revenue ruling 87-41, 1987-1 C.B. 296).

6

performed *or is performed outside of all places of business of the enterprise.*" See Mass. Gen. L. c. 149 § 148B; Attorney General Advisory on Mass. Gen. L. c. 149 § 148B 2008/1, Exhibit G at p. 2.[6] The Legislature's amendment of prong two of Section 148B (to delete the italicized language above) signaled that it is irrelevant *where* the service is performed. The only relevant inquiry for prong two is whether "the service is performed outside the usual course of the business of the employer." See Amero, Exhibit E at 5 ("[U]nder the amended version [of 148B], the inquiry is concerned solely with whether the service performed was outside of the employer's normal course of business."); Rainbow Development, LLC v. Com., Dept. of Industrial Accidents, 2005 WL 3543770 at *2 ("bottom line: were Auto Shine to have employees, they would perform the same services as those whom the agreement terms as independent contractors. The only business of Auto Shine is to provide customers with the services that these employees perform").

Even putting aside the fact that the statute imposes strict liability, without regard to "the employer's intent," Somers, 454 Mass. at 590-91, it should be noted that the Legislature's reasons for enacting a strong independent contractor statute are not merely academic or an improper attempt to saddle businesses with social obligations. Rather, the independent contractor statute ensures that all businesses operate on a level playing field. If some cleaning businesses could escape paying workers' compensation, state payroll taxes, health insurance and other costs by calling some of their workers "independent contractors," they would gain an unfair competitive advantage over those companies who played by the rules and properly categorized all of the individuals performing service for it as employees. Thus, not only does the statute ensure the payment of appropriate taxes, and the obtaining of necessary workers'

---

[6] Section 148B is thus even more restrictive than its counterpart in the unemployment compensation statute, Mass. Gen. L. c. 151A § 2, the statute pursuant to which the SJC found another Coverall cleaning worker to be Coverall's employee. 447 Mass. 852. Mass. Gen. L. c. 151A § 2's prong two still contains the previous language ("and such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all places of business of the enterprise") but is otherwise identical to § 148B.

compensation and unemployment insurance, but it also prevents some employers from undercutting their competition with this unfair advantage.  See Attorney General Advisory on M.G.L. c. 149, § 148B 2008/1, Exhibit G, pg. 1; cf. Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1324 (1st Cir. 1992) (recognizing that FLSA wage protections are "intended to protect complying competitors of the defendants, in addition to making the employee whole.")

While an employee's misclassification claim succeeds as a matter of law if the employer is unable to satisfy any one of the three prongs set forth above, Coverall clearly cannot satisfy any of the prongs.  Thus, the Massachusetts plaintiffs are entitled to summary judgment on this claim.

**I.      COVERALL CANNOT PROVE THAT THE SERVICES PERFORMED BY ITS CLEANING WORKERS ARE OUTSIDE THE USUAL COURSE OF ITS BUSINESS (PRONG TWO OF SECTION 148B).**

Under the second prong of the test, the Massachusetts cleaning workers must be deemed employees unless Coverall can establish that the services performed by them were "performed outside the usual course of the business of the employer."  G.L. c. 149, § 148B(a)(2).  There is simply no question that the service performed by Coverall's cleaning workers/franchisees (cleaning services) is not outside the usual course of business of Coverall, which holds itself out as a company that provides commercial cleaning services, offering "a scientifically developed cleaning program that cleans for appearance and to reduce the spread of infection in our commercial environments." SOF, ¶ 3.  Coverall "obtains customer accounts, which are contracts between Coverall and cleaning customers, under which Coverall delegates the performance of services to its franchisees." SOF, ¶ 5.  In short, Coverall exists to provide cleaning services through its "franchisees."

As many commentators have noted, this second prong of § 148B makes it extremely difficult for any employer to characterize an individual as an "independent contractor" when they perform a service which constitutes part of the core services performed by the company.  See, e.g., Attorney General's Advisory, Exhibit G, at p. 3.  Thus, it is not surprising that courts that

have applied the prong two analysis to similar fact patterns have repeatedly held that the employer has failed to meet its burden of proof. In <u>Fucci v. Eastern Connection</u>, decided recently, the court held that the defendant could not satisfy prong two as a matter of law, when the plaintiffs were package delivery drivers and the company's website, contracts with the plaintiffs and corporate filings acknowledged that the company's business was package delivery. <u>Fucci</u>, Exhibit C at 9.[7] In <u>Chaves, et al. v. King Arthur's Lounge, Inc.</u>, the court granted plaintiffs summary judgment, finding that the company could not prove prong two, where the employee's work (exotic dancing) contributed to the employer's revenue and was a significant reason for customers to patronize the business. Exhibit D.[8] Similarly, in <u>Amero</u>, the court held that the plaintiff was entitled to summary judgment on prong two because "[t]he bulk of Townsend's business is fuel oil delivery, and that was the service Amero provided." Exhibit E at 4-5. In <u>Rainbow Development, LLC</u>, the employer, Auto Shine, was in the business of providing "detailing and conditioning" for new cars. 2005 WL 3543770 at *1. The court found that the employer had failed to prove prong two because "[t]he workers are engaged in the exact business Auto Shine is engaged in; Auto Shine merely provides the administration." <u>Id.</u> at *3. As the court pointed out, "[w]ithout the services of the workers, Auto Shine would cease to operate." <u>Id.</u>;

The analysis used in these cases applies just as strongly here. Coverall cannot contest that its business consists of providing cleaning services to its customers. Furthermore, there is no question that the services performed by the cleaning workers/franchisees consisted of providing such services to Coverall clients. SOF, ¶¶ 1 - 4. Thus, it is simply undeniable that their work is within the usual course of Coverall's business and that it would cease to exist without

---

[7] In <u>Fucci</u>, the company argued that it was not a package delivery company, but merely "a marketing logistics corporation," but the court rejected this argument and recognized the company for what it was—a package delivery company. Exhibit C at 9.

[8] As in <u>Fucci</u>, the defendant in <u>Chaves</u> claimed that its business was "selling alcohol rather than exotic dancing," an argument the court rejected, recognizing that it was a strip club. Exhibit D at 6.

9

the services provided by the individuals who perform cleaning services for Coverall's clients. The facts here closely parallel those of Fucci and the other cases cited herein where summary judgment was granted to the plaintiffs, and the same conclusion is warranted here.

Consequently, as a matter of law, Coverall cannot possibly contend that the services performed by its Massachusetts cleaning workers/franchisees were outside the usual course of the business of the employer. On the contrary, the services provided are part of the core structure of the company and go to the heart of its revenue source. Accordingly, Plaintiffs are entitled to summary judgment under "prong two."

**II.   BECAUSE COVERALL REQUIRES ITS CLEANING "FRANCHISEES" TO ADHERE TO A NONCOMPETITION CLAUSE, AS A MATTER OF LAW, THESE "FRANCHISEES" ARE NOT CUSTOMARILY ENGAGED IN AN INDEPENDENTLY ESTABLISHED TRADE, OCCUPATION, PROFESSION OR BUSINESS OF THE SAME NATURE AS THAT INVOLVED IN THE SERVICE PERFORMED (PRONG THREE OF SECTION 148B).**

The third element of § 148B must also be determined in Plaintiffs' favor. This element requires Coverall to prove that its cleaning workers have been customarily engaged in independently established business that involved commercial cleaning. G.L. c. 149 § 148B(a)(3). In analyzing this element, the Court may consider whether "'the worker is capable of performing the service to anyone wishing to avail themselves of the services, or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services.'" Coverall, supra, at 858 (quoting Athol Daily News v. Board of Review of Div. of Emp. and Training, 439 Mass. 171, 181 (2003)). The Court must determine "whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise. Boston Bicycle Couriers, Inc. v. Deputy Dir. Of the Div. of Employment & Training, 56 Mass. App. Ct. 473, 480 (2002) (interpreting identical provision in G.L. c. 151A, §2(c)).

Indeed, in the previous Coverall case, which involved precisely the same company, the Massachusetts SJC concluded that a Coverall "franchisee" was an employee, not an

10

independent contractor, under prong three, based on the same arrangement at issue here. The court rejected Coverall's argument that its cleaning workers are "capable" of acting independently, noting:

> Here, the claimant was required to allow Coverall to negotiate contracts and pricing directly with clients, bill clients, and provide a daily cleaning plan to which the claimant was required to adhere. Thus, the claimant was required to rely heavily on Coverall. Even if the claimant was capable of being an "entrepreneur" and expanding her own business as Coverall suggests, it is undisputed that the growth of her own business inevitably expanded Coverall's clientele base, as each new "client" became a Coverall client.

Coverall at 858 (2006) (emphasis supplied). Of course, this rationale applies with equal force to Coverall's cleaning workers in this case and is a basis for granting summary judgment to Plaintiffs on prong three.[9]

Similarly, in Fucci v. Eastern Connection, the court granted summary judgment to plaintiffs on prong three, concluding that "each plaintiff 'wore the hat' of an Eastern Connection employee when delivering its customers' packages" and also noting that Eastern Connection negotiated the cost of services with customers and controlled billing. Exhibit C at 10-11. Likewise, in Chaves v. King Arthur's Lounge, the court also granted summary judgment to plaintiffs on prong three. The court noted that "Chaves did not perform exotic dance at any other strip clubs during the time she worked at King Arthur's" and concluded that she was "'wearing the hat of an employee' of King Arthur's." Exhibit D at 9-11.

In addition, there is yet an even stronger basis for holding that Plaintiffs are entitled to summary judgment on prong three: Coverall requires all of its cleaning workers to adhere to a strict non-competition agreement that prohibits them from engaging in cleaning work except under the auspices of Coverall (both during and even after their relationship with Coverall has ended). SOF, ¶¶ 7-11. This additional factor, which was not even in the SJC record and thus

---

[9] Until recently, Coverall even prohibited cleaning worker franchisees from entering into contracts with customers whom they procured on their own. The new customers had to contract with Coverall, not the franchisee. SOF, ¶ 18. Still, however, all work that franchisees perform is subject to Coverall taking its "royalty" and "management" fees even where a franchisee, not Coverall itself obtained the customer. SOF, ¶ 19.

was not addressed in the original Coverall decision, even more firmly establishes that Coverall cannot prove that its cleaning workers were "part of an independently established trade, occupation, profession, or business" as § 148B requires. Indeed, the existence of a non-competition agreement, without more, has been held to suffice to establish summary judgment on prong three, because such an agreement necessarily requires that the plaintiff not be customarily engaged in an independently established business. In Amero, the court granted summary judgment to the plaintiff under prong three where defendant had a noncompetition agreement, noting that "[h]ere, Amero did not provide fuel oil delivery services to anyone independent of Townsend, ***nor could he have given the non-competition agreement Townsend required him to sign.***" Amero, Exhibit E at 5-6 (emphasis added).

Moreover, as in Fucci, the company requires its workers to comply with exhaustive policies and work requirements and otherwise be completely responsible to Coverall in literally all of their cleaning work during and after the life of their relationship with Coverall under penalty of termination, all while having no independent control over billing, collection, pricing, customer contracts, uniforms, equipment supplies, or other normal business practices relating to their work. See SOF, ¶¶ 12, 13, 16, 16, 20, 21, 24.

In light of this undisputed evidence, there can be no question that Coverall's cleaning workers are not entrepreneurs operating independently established businesses. Instead, each cleaning worker "wears the hat" of a Coverall employee. As such, it cannot be said that Coverall's franchisees work in an "independently established trade, occupation, profession or business" separate from their cleaning work for Coverall. The cleaning workers are simply not independent of Coverall. Accordingly, summary judgment is appropriate under this third prong of § 148B.

**III.    COVERALL CANNOT PROVE THAT ITS CLEANING WORKERS ARE FREE FROM CONTROL AND DIRECTION IN CONNECTION WITH THE PERFORMANCE OF THEIR SERVICES (PRONG ONE OF SECTION 148B).**

Finally, Coverall cannot establish independent contractor status under prong one of the test either, because it controls virtually every aspect of the service performed by its cleaning workers. Prong one requires that an employer prove that the worker is "free from control and direction in connection with the performance of the service." G.L. c. 149, §148B(a)(1). The key to application of prong one is determining whether the employer maintains the "right to control" the worker in the performance of his services. Athol Daily News, 439 Mass. at 177. Indeed, "[t]he essence of the distinction under common law has always been the right to control the details of the performance and the freedom from supervision not only as to the result to be accomplished but also as to the means and methods that are to be utilized in the performance of the work." Id. (internal citations and quotations omitted). As such, "it is the right of control rather than the exercise of it . . . that is legally determinative." Rainbow Development, LLC, at * 3.

In Fucci v. Eastern Connection, the court found that summary judgment was warranted for the plaintiff delivery drivers on the first element of § 148B despite evidence that the plaintiffs had some control over their work, including the right to turn down work, and could hire others to assist them because the "overall evidence demonstrates that [the defendant] exercised a degree of control over the plaintiffs' performance, both under their Agreements and in fact, sufficient for them to be deemed employees and not independent contractors under the first element of the § 148B test." Exhibit A at 8; see also Driscoll v. Worcester Telegram & Gazette, 72 Mass. App. Ct. 709, 714-718 (2008) (finding sufficient indicia of control in another case involving delivery drivers); Amero, Exhibit E at 4; College News Service v. Department of Indus. Accidents, 2006 WL 2830971, *2 (Mass. Super. 2006).

Here, there is evidence establishing beyond dispute that Coverall has substantial control over its cleaning workers. Examples of this include:

- Coverall dictates in detail all cleaning work to be performed for customers it assigns. Coverall, not the franchisees, negotiates these details with customers. (SOF, ¶ 12)

13

- Coverall contracts with its customers, then assigns the accounts to its cleaning worker franchisees. The franchisees are not parties to these customer contracts. (SOF, ¶ 17)
- At most times relevant to this litigation, cleaning worker franchisees were prohibited from contracting with their own customers. (SOF, ¶ 18)
- Coverall sets all pricing for all accounts that it assigns. (SOF, ¶ 20)
- Coverall has the "exclusive right" to perform all billing and collection for cleaning worker labor. (SOF, ¶ 13)
- Only after Coverall has deducted its royalties, management fee, and other applicable fees does a cleaning worker receive payment for his or her labor from Coverall. (SOF, ¶ 14)
- Coverall requires all cleaning worker franchisees to complete a mandatory training program and to submit to any other training as required. (SOF, ¶ 15)
- Cleaning worker franchisees are required to abide by all company policies and procedures, including quality control standards. (SOF, ¶ 16)
- Coverall has the unilateral right to change the policies and practices that govern its cleaning worker franchisees at any time. (SOF, ¶ 16)
- Coverall's quality control standards include the requirement that franchisee use "only uniforms, equipment, supplies, products, sales and promotional materials, control forms and other business forms as a prescribed or permitted by Coverall." (SOF, ¶ 24)
- Coverall requires that all of its cleaning workers wear "approved uniforms and identification badges while on the premises of a customer account." (SOF, ¶ 21)
- Coverall has the right to inspect all cleaning work performed by any cleaning worker franchisee. (SOF, ¶ 25)
- Coverall reserves the right to terminate any account assigned to cleaning workers and to cancel the entire franchise agreement prior to its expiration. (SOF, ¶ 22)

Accordingly, it is clear that Coverall controls the means and the methods of virtually every aspect of the service performed by its cleaning workers. Given this extraordinary level of control, it is simply not possible for Coverall to maintain that the workers have retained the "right to control" their work. Therefore, Coverall cannot prove that they have been free from control or direction in the performance of their services for the company. Consequently, this Court must find the workers to be employees under prong one of c. 149, § 148B (in addition to prongs two and three).

**CONCLUSION**

While Plaintiffs would only need to prove that Coverall could not satisfy one of the three prongs of Section 148B in order to be entitled to summary judgment, as set forth above, Coverall cannot satisfy any of these prongs. Accordingly, the Plaintiffs are entitled to summary judgment as to Coverall's liability on their independent contractor misclassification claim under Massachusetts law. The only issue remaining for trial on this claim is damages.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, BENECIRA CAVALCANTE, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO, PHILLIP BEITZ, RICHARD BARRIENTOS, MARIAN LEWIS, and STANLEY STEWART |
|  | By their attorneys, |
|  | /s/ Shannon Liss-Riordan |
|  | Shannon Liss-Riordan, BBO #640716 |
|  | Harold L. Lichten, BBO #549689 |
|  | Hillary Schwab, BBO #666029 |
|  | LICHTEN & LISS-RIORDAN, P.C. |
|  | 100 Cambridge Street, 20th Floor |
|  | Boston, MA 02114 |
| Dated: December 18, 2009 | (617) 994-5800 |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2009, I served a copy of this motion by electronic filing on all counsel of record in this case.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.