THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, BENECIRA CAVALCANTE, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO, PHILLIP BEITZ, RICHARD BARRIENTOS, MARIAN LEWIS, STANLEY STEWART, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COVERALL NORTH AMERICA, INC., <br><br> Defendant. | Case No. 1:07-cv-10287-WGY |

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiffs present their statement of undisputed material facts. As set out in Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support Thereof, the undisputed facts cited herein establish that Defendant Coverall of North America, Inc. violated the Massachusetts Independent Contractor statute, M.G.L. ch. 149, §148B, thus entitling the Massachusetts Plaintiffs to judgment as a matter of law on that claim.

1.   Defendant Coverall of North America, Inc. (referred to herein as "Coverall") does business throughout North America. There are approximately 8,000 Coverall cleaning "franchises" in the United States. (Elliot dep., attached as Ex. 8, pgs. 15 - 16)

2.   Coverall requires all of its cleaning worker franchisees to enter into a Franchise Agreement. Coverall's standard from Janitorial Franchise Agreement is

1

attached as Exhibit 1.  The terms of this agreement applied to all of the Massachusetts Plaintiffs, who were subject to materially identical agreements.

3. Coverall holds itself out as a commercial cleaning company that offers "a scientifically developed cleaning program that cleans for appearance and to reduce the spread of infection in our commercial environments." (Coverall web site, attached here as Exhibit 2)

4. Coverall "obtains customer accounts, which are contracts between Coverall and cleaning customers, under which Coverall delegates the performance of services to its franchisees." (Ex. 1, pg. 2, Recital D)

5. Plaintiffs Pius Awuah, Geraldo Correia, Nilton Dos Santos, and Benecira Cavalcante each contracted with Coverall to provide cleaning services in Massachusetts. They paid fees ranging from $10,000 to $14,000 to obtain cleaning business from Coverall.  For example, Plaintiff Awuah paid $14,000.00 to obtain promised monthly revenue of $3,000.00 and Plaintiff Correia paid $10,500.00 for $1,500.00 in monthly revenue. (Exs. 3 - 5)

6. Coverall does not call its cleaning workers employees; instead, it classifies them independent contractors/franchisees.  (Ex. 1, § 13)

7. Coverall required each of the Massachusetts Plaintiffs to enter into a confidentially and non-competition agreement contained within their respective franchise agreements.  These included in-term and post-term covenants not to compete. (Ex. 1, § 19)

8. The in-term covenant not to compete provide that the franchisee:

> Will not engage in or have any financial interest in . . . any business (other than a franchise granted by this agreement) which performs janitorial or related cleaning

> and management services, franchising, sales or contracting, or any related business anywhere.  In addition, Franchisee will not interfere with Coverall customer accounts, by attempting to persuade the cleaning accounts to do business with anyone other than Coverall; by way of example, influencing the customer accounts to pay Franchisee or some affiliated person or entity directly.

(Ex. 1, § 19).

9. The post-termination covenant is similarly restrictive and applies regardless of why a franchisee is terminated:

> Franchisee agrees not to compete, directly or indirectly , for a period of eighteen (18) months from the date of assignment, termination, or expiration with Coverall or any of Coverall's affiliates or franchisees by engaging in or having any financial interest in …. Any business that performs building cleaning and maintenance services in any county located in partially or entirely within, or contiguous to, the Metropolitan Statistical Areas in which Franchisee's Coverall Regional office conducts business, or within a 100-mile radius of that geographic are covered by this Paragraph 19B, interfere or attempt to interfere with preciously existing Coverall cleaning customers by diverting or attempting to divert from Coverall any cleaning accounts which were being serviced by Coverall franchisees or subcontractors during the year preceding the dated on which Franchisee left the Coverall system.

(Ex. 1, 19.B)

10. Because of the in-term covenant not to compete, Coverall cleaning worker franchisees can only perform cleaning related services under the auspices of Coverall. (Vlaming dep., attached as Ex. 9, 75 – 76)

11. Coverall enforces these covenants not to compete. For example, it sought to prevent Plaintiff Cavalcante from independently contracting with a customer for cleaning work, threatening her with termination. (See Ex. 6)

12. When Coverall assigns accounts to franchisees, it dictates in detail what work is to be performed for the customer.  Individual franchisees do not negotiate this with the customers.  Examples of these customer contracts and work assignments from

Coverall are attached as Ex. 7.  In these documents Coverall sets out in detail the specific tasks that its cleaning worker franchisees are to perform.

13. Coverall has the "exclusive right" to perform all billing and collection for cleaning worker labor – it has the sole right over this. Only after Coverall has deducted its royalties, management fee, and other applicable fees does a cleaning worker receive payment for his or her labor. (Ex. 1, § 6.C; Elliot dep., pgs. 24, 26)

14. Coverall deducts 15% as "royalty" and "management fees" for all sums collected for its cleaning workers franchisees' work. (Ex. 1, §§ 7.E, 7.F; Elliot dep., 25)

15. Coverall requires all cleaning worker franchisees to complete a mandatory training program and to submit to any other training as required. (Ex. 1, at § 9.A)

16. Cleaning worker franchisees are required to abide by all company policies and procedures, including quality control standards, which Coverall reserves the unilateral right to change at any time. (Ex. 1, at §§ 9.B, 9.D)

17. Coverall contracts with its customers, and then assigns the accounts to its cleaning worker franchisees. The franchisees are not parties to these customer contracts. (Elliot dep., pg. 12)

18. Until long after this lawsuit was filed, cleaning worker franchisees were prohibited from contracting with their own customers.  When a franchisee procured a new customer without Coverall's involvement, Coverall still required that the contract be between Coverall and the customer.  The franchisee would not be a party to the contract.  That is, there was no distinction between customers that Coverall assigned and those that franchisees obtained solely through their own efforts.  Coverall asserts

that this policy changed at some point in 2009 and that franchisees are now permitted to contract with their own customers. (Vlaming dep., pgs. 76 – 79)

19. At all times relevant to this litigation, where a cleaning worker franchisee procures his or her own account, Coverall takes its royalty, management and other fees out before paying him or her for work done for that account. (Vlaming dep., pg. 79)

20. Coverall sets all pricing for all accounts that it assigns. (Elliott dep., pg. 25)

21. Coverall requires that all of its cleaning workers wear "approved uniforms and identification badges while on the premises of a customer account." (Ex. 1, § 9.C)

22. Coverall reserves the right to terminate any account assigned to cleaning workers and to cancel the entire franchise agreement. (Ex. 1, §§ 9.C, 9.E, § 17; Elliott dep., pg. 55)

23. Coverall cleaning workers are subject to the company's quality control standards. (Ex. 1, § 9.C)

24. Coverall's quality control standards include the requirement that franchisee use "only uniforms, equipment, supplies, products, sales and promotional materials, control forms and other business forms as a prescribed or permitted by Coverall." (Ex. 1, § 9.C)

25. Coverall has the right to inspect all cleaning work performed by any cleaning worker franchisee. (Ex. 1, § 9.C; Elliott dep., 49)

Respectfully Submitted,

PIUS AWUAH, NILTON DOS SANTOS, GERALDO CORREIA, BENECIRA CAVALCANTE, DENISSE PINEDA, JAI PREM, ALDIVAR BRANDAO, PHILLIP BEITZ, RICHARD BARRIENTOS, MARIAN LEWIS, and STANLEY STEWART

By their attorneys,

 /s/  Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Harold L. Lichten, BBO #549689
Hillary Schwab, BBO #666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated:  December 18, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2009, I served a copy of this motion by electronic filing on all counsel of record in this case.

 /s/  Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.