```
 1                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2
                                        Civil Action
 3                                      No. 07-10287-WGY

 4   * * * * * * * * * * * * * * * * * *
     PIUS AWUAH, NILTON DOS SANTOS,      *
 5   GERALDO CORREIA, BENECIRA           *
     CAVALCANTE, DENISSE PINEDA, JAI     *
 6   PREM, ALDIVAR BRANDAO, PHILIP BEITZ,*
     RICHARD BARRIENTOS, MARIAN LEWIS,   *
 7   STANLEY STEWART, and all others     *
     similarly situated,                 *
 8                                       *
             Plaintiffs,                 *
 9   v.                                  *   MOTION HEARING
                                         *
10   COVERALL NORTH AMERICA, INC.,       *
                                         *
11           Defendant.                  *
                                         *
12   * * * * * * * * * * * * * * * * * *
             BEFORE:  The Honorable William G. Young,
13                        District Judge

14   APPEARANCES:

15          LICHTEN & LISS-RIORDAN, P.C. (By Shannon E.
       Liss-Riordan, Esq. and Hillary Schwab, Esq.), 100
16     Cambridge Street, 20th Floor, Boston,
       Massachusetts 02114, on behalf of the Plaintiffs
17
            DLA Piper US LLP (By Michael D. Vhay,
18     Esq.), 33 Arch Street, 26th Floor, Boston,
       Massachusetts 02110-1447
19          - and -
            DLA Piper US LLP (By John F. Dienelt,
20     Esq.), 1200 19th Street, N.W., Washington, D.C.
       20036
21          - and -
            DLA Piper US LLP (By Norman M. Leon, Esq.),
22     203 North LaSalle Street, Suite 1900, Chicago,
       Illinois 60601-1293, on behalf of the Defendant
23
                                   Boston College Law School
24                                 Boston, Massachusetts

25                                 February 9, 2010
```

```
 1              THE CLERK:  Calling Civil Action 07-10287, Awuah v.
 2     Coverall.
 3              (Whereupon the Court and the Clerk conferred.)
 4              THE COURT:  Would counsel identify themselves.
 5              MS. LISS-RIORDAN:  Good afternoon, your Honor.  For
 6     the plaintiffs, Shannon Liss-Riordan and Hillary Schwab.
 7              MS. SCHWAB:  Good afternoon.
 8              MR. DIENELT:  I'm John Dienelt, your Honor, for
 9     Coverall, along with Norman Leon and Michael Vhay of my
10     firm.
11              THE COURT:  All right.  The two motions that I want
12     to hear oral argument on are the plaintiffs' motion for
13     summary judgment and then the plaintiffs' motion for class
14     certification.  Let's take them in that order.
15              The plaintiffs' motion for partial summary
16     judgment.  And for one thing, I'm not clear as to the sweep
17     of the motion, Ms. Liss-Riordan.  This motion applies only
18     to your Massachusetts claims, correct?
19              MS. LISS-RIORDAN:  Yes, that's correct.
20              THE COURT:  Okay.  And you think in view of the law
21     of Massachusetts and the undisputed facts here I should
22     declare today that the Massachusetts plaintiffs are in
23     effect employees pursuant to Chapter 149, Section 148B.
24              MS. LISS-RIORDAN:  Yes, that's correct, your Honor.
25              THE COURT:  Yes.  Very briefly, why don't you
```

1   develop that.

2   **MS. LISS-RIORDAN:** Certainly, your Honor.

3   There have been a number of decisions within even
4   the past year regarding the Massachusetts independent
5   contractor statute and in a number of cases we've cited for
6   you courts in Massachusetts have granted summary judgment
7   motions just like this one brought by plaintiffs claiming
8   that they were misclassified as independent contractors
9   under the unusually strict law that Massachusetts has
10  enacted.  And as we've set forth in the papers,
11  Massachusetts has a three part test, it's an ABC test, the
12  defendant company has to prove all three prongs of the test.
13  We've set forth here why we do not believe Coverall can
14  satisfy any of the three prongs, and in particular we want
15  to emphasize the strength of prong two which simply asks is
16  the individual performing services in the usual course of
17  the company's business.

18  Here, our clients, plaintiffs are cleaning workers
19  who provide a commercial cleaning service for Coverall.
20  Coverall is a commercial cleaning business.

21  Now, it argues --

22  **THE COURT:** Well, it argues that it's not.  It
23  argues it's in the franchising business.

24  **MS. LISS-RIORDAN:** Yes, exactly.  And we've
25  defeated companies several times who tried to raise similar

```
 1    arguments.  Coverall holds itself out to the world on its
 2    website that it provides commercial cleaning services.  It
 3    contracts with customers to provide commercial cleaning
 4    services.  In a case that we won, Fucci v. Eastern
 5    Connection, there was a delivery company that tried to argue
 6    to the Court we're not a package delivery company, we're a
 7    marketing/logistics company that hooks up drivers with
 8    customers and packages delivered to them.  The Court said
 9    no, you're a delivery company, and we won under prong two.
10              In the case of Chaves v. King Arthur's Lounge,
11    that's a strip club, they tried to claim we're not a strip
12    club, we are an institution that sells alcoholic beverages.
13    And the Court saw it for what it was and said no, you're a
14    strip club.  We won under prong two, the strippers were
15    providing services in the usual course of business of the
16    company.
17              And here we have the same type of attempts by the
18    company to get around the statute.  In this case, we have
19    the SJC having ruled in a case involving this very company
20    that someone who it claimed is a franchisee, the SJC
21    wouldn't even use the term franchisee to describe her
22    because it decided that she was an employee.  Not even
23    looking at prongs one and two, the Court decided under prong
24    three that she was an employee.  No difference on the facts.
25              THE COURT:  I asked you and you've given me your
```

1       strongest argument.
2              That does seem to be her strongest argument.  What
3       do you say to that?
4              **MR. DIENELT:**  Your Honor, there are basically two
5       reasons why we say that there are genuinely disputed issues
6       of material fact here.  To address first the point that
7       opposing counsel made with respect to the nature of the
8       business.  There really is no dispute as to the nature of
9       Coverall's business.  It is a franchise business.  There are
10      some franchise businesses --
11             **THE COURT:**  Is it?
12             **MR. DIENELT:**  Yes.  There are some franchise
13      businesses, let's take McDonald's as an example, where the
14      franchiser, McDonald's itself, through company-owned units,
15      operates the business and sells food to the public.
16             **THE COURT:**  Through some, and of course with
17      McDonald's they have all sorts of quality control and they
18      have centralized research on new food items and the like.
19      And so it would be ludicrous to say that McDonald's is not
20      in the fast food business.  But you distinguish what you do
21      from McDonald's.
22             **MR. DIENELT:**  Right.
23             **THE COURT:**  How so in light of what seems to be
24      undisputed on your website.
25             **MR. DIENELT:**  Well, I do not believe that the

1    website indicates that we do cleaning business.  We provide
2    franchises to independent contractors, franchisees, who
3    engage in cleaning businesses, and we do not have our own
4    company-operated businesses that do cleaning.
5            **THE COURT:**  I recognize --
6            **MR. DIENELT:**  That is the distinction that we would
7    make.
8            **THE COURT:**  Yes, I recognize my obligation to
9    adjudicate each case on its merits.  But the cases that she
10   cites say what she says they say.  You say they're factually
11   different?
12           **MR. DIENELT:**  No, I think if you read them they, in
13   context they indicate what we do which is to provide
14   franchise opportunities to people to engage in the cleaning
15   business.  Yes, we provide guidance.  Yes, we provide
16   systems.  In that sense we are like virtually any other
17   franchise company.
18           **THE COURT:**  How --
19           **MR. DIENELT:**  I'm sorry.
20           **THE COURT:**  How do you, how do you get around, if
21   that's the proper term, the adjudication of the Supreme
22   Judicial Court of Massachusetts on this issue?
23           **MR. DIENELT:**  As you just indicated, you have and
24   any judge has the responsibility to take each case on its
25   facts.  We believe that --

1       **THE COURT:**  I do and I take that very seriously.

2       **MR. DIENELT:**  And we believe that the facts as they
3  would be developed here, as they are in dispute here, would
4  indicate that on that prong of the ABC test we would
5  prevail.  But that's not the issue before you.  The issue
6  before you is whether there is a dispute of fact, a material
7  dispute of fact.

8       **THE COURT:**  Correct.

9       **MR. DIENELT:**  And we believe that on the issue that
10 counsel focused on, which the Court has indicated you agree
11 is her strongest point, that we, we do have a disputed fact.

12      **THE COURT:**  And what are they?

13      **MR. DIENELT:**  This is the nature of the business
14 that we offer.

15      **THE COURT:**  And what's the dispute?

16      **MR. DIENELT:**  The dispute is whether or not we
17 provide cleaning services, whether we do, whether we are in
18 the business of cleaning as opposed to the business of
19 providing opportunities to others to engage in that
20 business.  That's the distinction.

21      **THE COURT:**  All right.  I understand.

22      **MR. DIENELT:**  The other point that I would want to
23 make with respect to this is that there's a threshold issue
24 which we believe precludes summary judgment here.  And that
25 is an issue that to our knowledge was not addressed in the

1  Supreme Judicial Court.  It is an issue which was not
2  addressed previously in this Court's consideration of a
3  comparable or similar case involving Jani-King.  And that is
4  the fact of injury question.  Does the individual here, has
5  the individual suffered injury, as opposed to some issue
6  about whether or not the individual, what the amount of the
7  damages to the individual would be.
8         **THE COURT:**  But on that, on that, you see, I agree
9  with you.  They want partial summary judgment.  If I grant
10 them the partial summary judgment they seek then the
11 Massachusetts plaintiffs are employees.  That doesn't mean
12 they were injured, or at least I didn't think it meant they
13 were injured.  It's not some sort of strict liability here.
14        **MR. DIENELT:**  I suggest --
15        **THE COURT:**  I mean, isn't that right?
16        **MS. LISS-RIORDAN:**  Well, actually, your Honor, in
17 the Somers versus, the Somers case, the SJC recently did say
18 that the independent contractor statute is a strict
19 liability statute.  So I just want you to know that.
20        **THE COURT:**  I appreciate your correction.  I'll
21 tell you I have more problem then.  But thank you.  I
22 interrupted him.
23        It would seem that that would be an element they've
24 got to prove here, some damage.  But she says it's a strict
25 liability statute.

1          **MR. DIENELT:**  It is perhaps a strict liability
2     statute if opposing counsel here were representing the
3     Attorney General.  But in a private cause of action under
4     Section 150 there is a requirement of aggrievement.  And
5     that's part of liability, it's not a damages issue.  To my
6     way of thinking, because of my background, it's somewhat
7     similar to the requirement of injury in fact in an antitrust
8     case.  You have to establish that to get to damages.  You
9     have to have that as part of liability.  A Court may not
10    slice it so thinly as to say they meet this element with
11    respect to liability and therefore I'm going to grant some
12    form of judgment.  But it's not a judgment as to liability
13    because they still as to these two individuals, I think it's
14    only two who would be involved, the third one has a
15    relationship with an intermediate, a master franchise
16    relationship -- by the way, I don't know if that, if our
17    argument for summary judgment with respect to that is on the
18    calendar or not.  But that's a side note.  Whether it's two
19    or three, those individuals must show injury in fact and we
20    think that's a dispute of material fact.
21         **THE COURT:**  Help me out on this.  In your argument
22    here pretty much it goes to class certification, I want to
23    move to that.
24              Given the remedial nature of the Massachusetts law
25    to protect its employees, we have no choice of law issue,

```
 1    this Florida issue.  That comes up in class certification,
 2    am I right?
 3              MR. DIENELT:  Yes.
 4              THE COURT:  All right.  Thank you.  That's helpful.
 5              Well, let's now move to class certification.  I
 6    know Ms. Liss-Riordan will be familiar with this and it's
 7    interesting how they tailored their argument.
 8              I just certified a class in a case where she
 9    represents the plaintiffs, a skycaps class.  And of
10    course -- no, I'm going to hear him first, because I think
11    you know the arguments here.
12              I think this is different.  Of course you've got to
13    contend also with this Court's opinion in Jani-King, and I
14    want to hear you on that.
15              But I just wrote a case DiFiore v. American
16    Airlines.  And the guts of the case is that I've certified a
17    class in 34 different states and that gets us numerosity and
18    everything else.  But I recognize that the laws -- two
19    different claims there -- that the laws are different in
20    those states, but I nevertheless thought, well, this is
21    manageable because what I'll do is try the case as to the
22    core elements that appear in all states, then I'll ask
23    special questions as to the others.  Now, since they and you
24    can appeal under 23(f), I will be instructed as to whether I
25    did right in DiFiore.
```

1              But that approach -- again, here the facts are
2     significantly different in my mind than the skycaps.  But if
3     you're at all familiar with that case, and they did brief
4     that approach, why won't that approach work here?
5              **MR. DIENELT:**  Well, I am familiar with the case.
6              **THE COURT:**  I'm sure you are.  Thank you.  And
7     there's no pride of place, it's just that's what I've been
8     wrestling with.
9              **MR. DIENELT:**  And I would give you basically two
10    answers to that.  The first answer that I would give is not
11    yet, and the next answer I would give is probably not.  Let
12    me try to elaborate.
13             **THE COURT:**  Well, this case is going to trial in
14    May.
15             **MR. DIENELT:**  It is.  And we will be absolutely
16    ready to go to trial in May.
17             **THE COURT:**  On something.  Right.
18             **MR. DIENELT:**  The reason I said not yet --
19             **THE COURT:**  Yes.
20             **MR. DIENELT:**  -- is that when I read the American
21    Airlines case in light of your earlier decision in the
22    DiFiore case --
23             **THE COURT:**  Where I denied class certification.
24             **MR. DIENELT:**  -- what you said, and I'm certainly
25    going to paraphrase and I hope that I don't mangle it, and

12

| | |
|---|---|
| 1 | if I do, I'm confident that you will correct me, what you |
| 2 | said is I've learned the landscape because I've been down |
| 3 | the road.  What you did, and I think it may be appealed and |
| 4 | it may not be appealed, and there may be a hundred different |
| 5 | variants on the theme, but what you did was say I have a |
| 6 | management problem and I see some common issues here and I |
| 7 | think that if I manage it correctly, I can make it so that |
| 8 | the common issues will predominate and I'll have a superior |
| 9 | method of adjudicating and that will meet Rule 20(b)(3). |
| 10 | You already heard a trial -- |
| 11 | **THE COURT:**  I have to say you did that very well. |
| 12 | That's probably better than I explained it.  All right. |
| 13 | **MR. DIENELT:**  All right. |
| 14 | **THE COURT:**  But that's what I thought I was doing. |
| 15 | So we understand what I thought I was doing. |
| 16 | **MR. DIENELT:**  I understand. |
| 17 | **THE COURT:**  Now, help me in this case.  Why would I |
| 18 | come aproper in this case if I tried the same type of thing. |
| 19 | **MR. DIENELT:**  And I'll lay aside for the moment |
| 20 | what it would be that would be tried, because we've got |
| 21 | three sets of issues and different layers of potential class |
| 22 | certification.  But, what I'm suggesting as a management |
| 23 | matter, given that everybody will be ready for trial in May, |
| 24 | is try the four individuals, we think that our motion for |
| 25 | partial summary judgment as to the four who are franchisees |

1   of --

2        **THE COURT:**  Understand.

3        **MR. DIENELT:**  -- a sub-franchisee, we think you

4   should grant that.

5        **THE COURT:**  I have that very much in mind.  All

6   right.  So that leaves us four.

7        **MR. DIENELT:**  For the sake of argument there are

8   four.  Two of them, Correia and Cavalcante, are

9   Massachusetts citizens.  One, Prem, is a New Jersey citizen.

10  The fourth, Brandao, is a Florida citizen.

11       **THE COURT:**  Yes.

12       **MR. DIENELT:**  All of them are former franchisees.

13  We suggest that that case can go to trial in May.  That will

14  take us all down the road.  You will see the landscape.

15  Then there will be the time, that's why I said not yet, I'm

16  prepared to go to no --

17       **THE COURT:**  Right.

18       **MR. DIENELT:**  -- but that's why I said not yet.

19       **THE COURT:**  Thank you.  Thank you.  Your answer

20  again, I both understand that and it makes sense and I think

21  I would like to hear from Ms. Liss-Riordan.

22            Now, to his great credit he directly answered and I

23  rather warm to that.  Assuming he wins on these others, I've

24  got a trial of four people, three jurisdictions, I can

25  handle that, win, lose or draw, we don't have to sink

1    enormous amounts of resources, and then I'll know a lot more
2    about this case.
3            **MS. LISS-RIORDAN:**  Well, your Honor, in our motion
4    for class certification we've laid out several alternatives
5    for you, and we don't think you need to go down such a
6    narrow road as what the defendant is proposing here.
7            For one thing you could certify six test case
8    states where we have the plaintiffs from.  And we disagree
9    that a number of these plaintiffs are out or that they're
10   not here today.
11           **THE COURT:**  I understand.
12           **MS. LISS-RIORDAN:**  We have also laid out the
13   alterative that for the, other than the employment
14   classification of claims, the rubric of unfair business
15   practices under both statutory and common law, you could
16   under the Supreme Court's guidance apply Florida law.  So
17   that way you don't need to get into the interworkings of the
18   variances and commonality among the laws of the different
19   states.  Or alternatively, you could do, as you did in the
20   skycaps case, certify an unjust enrichment clause.  Because
21   many of the arguments that we've made here could fall under
22   the rubric of a common law claim.  So we have laid out
23   various alternatives for you.
24           **THE COURT:**  Let me ask you a problem I had in
25   DiFiore and I just dropped a footnote.  I noted it, but on

15

1   balance I agreed with the plaintiffs there.
2           You're not -- you, in that case, you gave up your
3   wage claims based on the statutes of the cases, at least for
4   your representation of this class.
5           **MS. LISS-RIORDAN:**  We never alleged them actually.
6           **THE COURT:**  Well, in any event, all right.
7           **MS. LISS-RIORDAN:**  Yes.  We agree we weren't
8   relying on that.
9           **THE COURT:**  But here, let's say I like your idea of
10  an unjust enrichment class.  You have other claims.  You're
11  not going to give those up.  So, I have to engage -- isn't
12  that right?
13          **MS. LISS-RIORDAN:**  Yes.
14          **THE COURT:**  Of course.
15          **MS. LISS-RIORDAN:**  Yes.
16          **THE COURT:**  So, I mean, if you prevail or even if
17  you don't, the settlement posture of the case may differ
18  again as a practical matter.  But I still have to deal with
19  those sometime because I have to dismiss them or grant
20  summary judgment against the putative class members.  What
21  about them?
22          **MS. LISS-RIORDAN:**  Yes.  So, you're talking about
23  this case, I assume.
24          **THE COURT:**  I'm talking about our case, yes.
25          **MS. LISS-RIORDAN:**  Yes.  So, what the case law

| | |
|---|---|
| 1 | instructs, as this Court is aware, the commonality does not |
| 2 | need to encompass all issues or all facts.  We believe we've |
| 3 | identified our core commonalities.  And even looking at the |
| 4 | statutory unfair business practices claims of the states |
| 5 | that are at issue there are four common allegations that |
| 6 | we're making.  And just because the damages analyses may |
| 7 | vary somewhat regarding how those state statutes play out, |
| 8 | that's not a reason to deny a class certification.  So, we |
| 9 | think what you can do is essentially similar to what you did |
| 10 | in the Jani-King case, is certify umbrellas of claims, for |
| 11 | instance, under -- |
| 12 | **THE COURT:**  You don't mean in Jani-King.  You lost |
| 13 | in Jani-King. |
| 14 | **MS. LISS-RIORDAN:**  No, we won class certification |
| 15 | in Jani-King.  But on class, on employee classification and |
| 16 | then with respect to the 93A claim -- |
| 17 | **THE COURT:**  I see. |
| 18 | **MS. LISS-RIORDAN:**  -- you identified excessive fees |
| 19 | is one category which you said was certifiable so long as we |
| 20 | had an adequate typical plaintiff which we have now |
| 21 | submitted to Judge Wolf that we do.  And then you also |
| 22 | identified the other type of unfair business practices claim |
| 23 | which we've put under the rubric of churning, although |
| 24 | churning really encompasses several concepts.  And what |
| 25 | we've argued to you here is why we believe we've got |

1  stronger evidence as to part of it with respect to churning.
2  So what I'm saying is if you certify these groups of claims
3  under common law and unjust enrichment you've already
4  recognized it's similar state to state as well as under the
5  state consumer protection statute which at their core are
6  the same from state to state as we've laid out for you.  Or
7  alternatively you could certify the test case states, the
8  six states where we have named plaintiffs, or alternatively
9  you could apply Florida law to all of this.
10         **THE COURT:**  I could.  The question is what should I
11  do.  And I will take the matter under advisement, but I
12  would like to see you on the record but at the said bar.
13         **MS. LISS-RIORDAN:**  Thank you, your Honor.
14  SIDEBAR CONFERENCE, AS FOLLOWS:
15         **MR. DIENELT:**  Your Honor, I have a hearing
16  disability so I'm going to have to ask you to --
17         **THE COURT:**  Yes, that's fine.  Let's let them get
18  up here.
19         **MR. DIENELT:**  I'm sorry.
20         **THE COURT:**  I'm going to speak on the record though
21  I reserve my right to do exactly the opposite.  And I'm
22  speaking on the record before I ask you a question.  What I
23  want to ask you a question about is the arbitration issue.
24  And what I want to do is, I want to tell you tentatively,
25  after I've heard your oral arguments, where I am.  You will

```
 1   understand that I'm not bound by this at all.  But with a
 2   May trial staring us in the face, as I order further, in
 3   fairness you ought to know and then I'll ask my question.
 4            I think tentatively that the defendant's motion for
 5   summary judgment as to Santos, Lewis, Beitz and Stewart
 6   ought be granted.  I think that the plaintiffs' motion for
 7   partial summary judgment as to the now two Massachusetts
 8   plaintiffs ought be granted.  I think that his not yet
 9   argument as to class certification is correct.  And I would
10   just as soon try a four plaintiff case, three jurisdictions,
11   and we'll see where we are.
12            I reserve the right to do exactly the opposite.
13   But it's not in my mind now, I'm telling you truly.
14            Now, the reason I wanted to get it out is, so you
15   won't think I'm gaming anything, someone said something
16   about arbitration.  And I had given that to Magistrate Judge
17   Bowler, and I've had no interaction with her because she's
18   an independent judicial officer, and I thought it was
19   appropriate.
20            Now, are we pressing forward or -- suppose it comes
21   out the way I just said it would.  Are we any longer
22   interested in arbitration, the arbitration issue, or not?
23            **MS. LISS-RIORDAN:**  Well, what we --
24            **MR. DIENELT:**  Go ahead.
25            **MS. LISS-RIORDAN:**  What we had done, your Honor,
```

```
 1    was we filed a joint motion to stay the arbitration pending
 2    the ruling on these decisions frankly because we have all of
 3    these plaintiffs who don't have arbitration agreements today
 4    with them.  It was our thought that that might be too
 5    rigorous for the whole case, including the plaintiffs,
 6    but --
 7             THE COURT:  So either way, either way -- in other
 8    words, if you lose class certification you nevertheless get
 9    a trial on that in May.  If you win some sort of class
10    certification, I'm going to go to trial in May.  Either way,
11    you are jointly going to press your motion before Magistrate
12    Judge Bowler to stay the arbitration business because you
13    want to see how that piece goes.
14             MS. LISS-RIORDAN:  Well, that's what I believe
15    would be the best, correct.  Technically, at this point not
16    until you ruled on these motions, but we could discuss
17    whether it made some sense to continue that as a joint stay.
18             THE COURT:  Okay.  I just wondered what you --
19             MR. DIENELT:  I'm going to defer to my younger,
20    faster, smarter colleague, Mr. Leon, who knows about
21    arbitration.
22             THE COURT:  I don't -- I just -- I think I've heard
23    enough.
24             MR. LEON:  I think counsel is correct, just to
25    table it for the time being to see what happens today, your
```

1  Honor.

2  **THE COURT:** And that's fine. And you know what you

3  know. It's a May trial. And I thank you very much.

4  **MR. LEON:** Thank you.

5  **THE COURT:** All right.

6  (Whereupon the sidebar conference concluded.)

7  **THE CLERK:** And that's it.

8  All rise. Court is in recess.

9  (Whereupon the matter concluded.)

10

11  **C E R T I F I C A T E**

12

13

14  I, Donald E. Womack, Official Court Reporter for

15  the United States District Court for the District of

16  Massachusetts, do hereby certify that the foregoing pages

17  are a true and accurate transcription of my shorthand notes

18  taken in the aforementioned matter to the best of my skill

19  and ability.

20

21

22  /S/ DONALD E. WOMACK 3-19-2010
   _____
23           DONALD E. WOMACK
            Official Court Reporter
24             P.O. Box 51062
      Boston, Massachusetts 02205-1062
25          womack@megatran.com