```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| PIUS AWUAH, GERALDO CORREIA, BENECIRA CAVALCANTE, DENISSE PINEDA, JAI PREM, AND ALDIVAR BRANDAO, AND RICHARD BARRIENTOS, | |
| Plaintiffs, | CIVIL ACTION No. 07-10287-WGY |
| V. | |
| COVERALL NORTH AMERICA, INC., | |
| Defendant. | |

MEMORANDUM AND ORDER

YOUNG, D.J.                                           March 23, 2010

**I.   INTRODUCTION**

The plaintiffs, workers who performed cleaning services as franchisees for the defendant, Coverall North America, Inc. ("Coverall"), brought this action, alleging that Coverall misclassified its franchisees as independent contractors and committed unfair or deceptive trade practices. The plaintiffs move for partial summary judgment against Coverall on the basis that under Massachusetts General Laws chapter 149, section 148B (the "Independent Contractor Statute"), the Massachusetts franchisees were misclassified as independent contractors.

**II.   UNDISPUTED FACTS**

"Since 1985, Coverall has provided cleaner work environments for a wide variety of over 50,000 customers through [] 90 Support Centers and more than 9,000 Franchise Owners making Coverall one of the largest global commercial cleaning franchising companies." Pls.' Statement of Facts Ex. 2 [Doc. No. 201].  "[A]s the result of the expenditure of time, skill, effort, and money, [Coverall] has developed and owns a distinctive system ("the System") relating to the establishment and operation of janitorial cleaning service businesses."  Pls.' Statement of Facts Ex. 1, 2003 Coverall Janitorial Franchise Agreement, Recital B. Coverall has licensed various components of the System to over 5,000 commercial janitorial cleaning franchises in North America. See Coverall Resp. to Statement of Facts ¶¶ 1, 3.  Each individual who purchases a janitorial cleaning business franchise must enter into a standard contract with Coverall (the "0Unit Agreement"), although terms may vary somewhat from year to year. Pls.' Statement of Facts ¶ 2; Coverall Resp. to Statement of Facts ¶ 2.  According to the Unit Agreement:

> The distinguishing characteristics of the System include, without limitation, methods, procedures, standards, and equipment for janitorial cleaning and business services; procedures for quality control and customer assistance; marketing concepts; bidding, contracting, and billing procedures; training, assistance, advertising, and promotional programs; all of which may be changed, improved, and further developed by Coverall from time to time. . . .

Pls.' Statement of Facts Ex. 1, 2003 Coverall Janitorial Franchise Agreement, Recital B.

To provide consistent service, all franchise owners must complete mandatory training programs and wear approved uniforms and identification badges while on the premises of a customer account. Pls.' Statement of Facts ¶¶ 15, 21. Coverall provides the initial equipment and supplies, with the franchisee responsible for replacing the equipment and supplies as necessary. Pls.' Statement of Facts Ex. 1, 2003 Coverall Janitorial Franchise Agreement ¶ 10B.

The Unit Agreement includes a provision that gives Coverall the exclusive right to perform all billing and collection for services provided by a franchisee and to deduct any fees from these collections before remitting payment to the franchisee. Pls.' Statement of Facts ¶ 13; Coverall Resp. to Statement of Facts ¶ 13. For each cleaning service provided, Coverall receives management and royalty fees. Id. Coverall also deducts any other applicable fees as provided by the Unit Agreement. Id. Until May 2009, all customer contracts were with Coverall, the franchisees could not be a party to the contract unless the customer specifically requested a direct contract with the franchisee. See Pls.'s Statement of Facts ¶¶ 17-18; Coverall Resp. to Statement of Facts ¶ 4; Klein Aff. ¶ 13.

**III. DISCUSSION**

  **A. The Three Prong Test of Mass. Gen. Laws Ch. 149, § 148B**

  Under Massachusetts General Laws Chapter 149, section 148B, an individual performing a service is considered an employee unless:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
> (2) the service is performed outside the usual course of the business of the employer; and,
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B.  The burden is on Coverall to establish these three elements, and it must establish each element.  De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 84 (D. Mass. 2009).

  In an unrelated case, Coverall was unable to establish these three elements when a Massachusetts franchisee claimed unemployment benefits.  See Coverall North Am., Inc. v. Comm'r of Div. of Unemployment Assistance, 447 Mass. 852 (2006).  While the Massachusetts Division of Employment and Training found that Coverall could not satisfy any of the prongs of the Independent Contractor Statute, the Supreme Judicial Court only focused its decision on the third prong.  Id. at 857.  Similarly, this Court

will consider only the prong that it holds dispositive – the second prong.

To satisfy the second prong, Coverall must establish that the worker "is performing services that are part of an independent, separate, and distinct business from that of the employer." American Zurich Ins. Co. v. Mass. Dept. Of Indus. Accidents, No. 053469A, 2006 WL 2205085, at *4 (Mass. Sup. Ct. June 1, 2006) (Troy, J.).  In its attempt to establish that Coverall and its franchisees are in distinct businesses, Coverall argues that it is not in the commercial cleaning business, but rather it is in the franchising business.  Coverall Opp'n Summ. J. at 2.  Coverall argues that it sells franchises and trains and supports the franchises, but it does not clean any establishments, nor does it employ anyone who cleans.  Id. at 2-3.  Coverall claims that "[n]umerous courts have accepted that the functions and business of a franchisor are separate and distinct from those of a franchisee and that their shared economic interest does not make one the employer of the other." Id. at 13.  While Coverall is correct in the second part of that statement – that courts have ruled that a "shared economic interest does not make one the employer of the other" – such rulings do not establish Coverall's conclusion that "the functions and business of a franchisor are separate and distinct from those of a franchisee."  The cases cited by Coverall do not

discuss or explore whether a franchisor and a franchisee are in the same business. See, e.g., Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635, 639-41 (2004) (discussing covenants not to compete in the franchise context); Corwax Staffing Servs., LLC v. Coleman, No. 2005436F, 2007 WL 738913, at *5-6 (Mass. Super. Ct. Feb. 7, 2007) (MacLeod-Mancuso, J.) (discussing respondeat superior in the franchise context); Kerl v. Dennis Rasmussen, Inc., 682 N.W.2d 328, 337-41 (Wis. 2004) (same).

Coverall's argument is not unlike arguments made by other employers in Massachusetts who also required their employees to sign agreements stating that they were independent contractors. In Rainbow Dev., LLC v. Mass. Dep't of Indus. Accidents, No. SUCV2005-00435, 2005 WL 3543770 (Mass. Super. Ct. Nov. 17, 2005) (Cratsley, J.), Auto Shine was in the business of "detailing and reconditioning" automobiles, but did not have any "employees" who actually performed such services because it had all workers sign contracts classifying themselves as independent contractors. Id. at *1. In holding that Auto Shine was in the same business as its independent contractors, the court held "[t]he only 'business' Auto Shine does is to provide its customers with the services that these employees perform. The workers are engaged in the exact business Auto Shine is engaged in; Auto Shine merely provides the administration. Without the services of the workers, Auto Shine would cease to operate." Id. at *3 (internal

citations omitted.)  Similarly, in <u>Fucci</u> v. <u>Eastern Connection Operating, Inc.</u>, No. 2008-2659 (Mass. Super. Ct. Sept. 24, 2009) (Gershengorn, J.), the court disregarded Eastern Connection's assertion that it was not in the delivery business, but was "only a marketing logistics corporation which outsources transportation needs for customers," and that the delivery truck drivers with which it contracted were in a different business.  <u>Id.</u> at 9.  Eastern Connection had the drivers sign agreements entitled "Agreement with Independent Contractor," which stated that the drivers were sole proprietorships, yet none of the drivers ever operated a delivery business themselves.  <u>Id.</u> at 2, 4.  In ruling against Eastern Connection, the Superior Court held that "the evidence reveals that Eastern Connection is in fact a courier business that picks up, transports, and delivers packages for customers located in the upper eastern region of the United States."  <u>Id.</u> at 9.

Interestingly, one of the cases cited favorably by Coverall for the proposition that a franchisor and franchisee are in different businesses, actually makes some statements that suggest the opposite.  In <u>Kerl</u>, the court explained:

> A franchise relationship is a marriage of convenience. It enables franchisors to spread the capital cost of enlarging the market **for their goods and services** by transferring most of those costs to local franchisees. The franchise arrangement enables the franchisor to reach new, far-flung markets without having to directly manage a vast network of individual outlets.

682 N.W.2d at 338 (emphasis added).  Along the same vein, Coverall leads its opposition brief with a quote describing franchising "[i]n its broadest sense" as "a product or service distribution system."  Coverall Opp'n Summ. J. at 2 (quoting George W. Mykulak and John S. Rhee, "Franchise Disputes," 2 <u>Business Torts in Massachusetts</u> § 15.2.2 (MCLE 2002)).  These quotes suggest that franchising is not in itself a business, rather a company is in the business of selling goods or services and uses the franchise model as a means of distributing the goods or services to the final end user without acquiring significant distribution costs.  Describing franchising as a business in itself, as Coverall seeks to do, sounds vaguely like a description for a modified Ponzi scheme – a company that does not earn money from the sale of goods and services, but from taking in more money from unwitting franchisees to make payments to previous franchisees.

Such a description is not applicable to Coverall.  Coverall developed "as the result of the expenditure of time, skill, effort, and money" the System used by its franchisees.  Pls.' Statement of Facts Ex. 1, 2003 Coverall Janitorial Franchise Agreement, Recital B.  Coverall trains its franchisees and provides them with uniforms and identification badges.  Pls.' Statement of Facts ¶¶ 15, 21; Coverall Resp. to Statement of Facts ¶¶ 15, 21.  Coverall contracted with all customers, with

limited exceptions, until May 2009, and Coverall is the party billing all customers for the cleaning services performed. Pls.' Statement of Facts ¶¶ 13, 17-18; Coverall Resp. to Statement of Facts ¶¶ 4, 13. Finally, Coverall receives a percentage of the revenue earned on every cleaning service. Pls.' Statement of Facts ¶ 13; Coverall Resp. to Statement of Facts ¶ 13. These undisputed facts establish that Coverall sells cleaning services, the same services provided by these plaintiffs. Because the franchisees did not perform services outside the usual course of Coverall's business, Coverall fails to establish that the franchisees are independent contractors.

### B. Proving Aggrievement

Coverall also argues in opposition to the motion for partial summary judgment that the Court cannot enter partial summary judgment because it cannot find missclassification without a specific harm resulting from such missclassification. Coverall Opp'n Summ. J. [Doc. No. 211] at 7-12. The Supreme Judicial Court rejected this type of argument in Somers v. Converged Access, Inc., 454 Mass. 582 (2009). There, the employer argued that the employee benefitted from being classified as an independent contractor because he was paid more than he would have been paid as an employee. Id. at 591. Accepting this argument, the trial court granted the employer summary judgment on the plaintiff's misclassification claim despite finding that

there were material issues of fact as to whether the employer could satisfy the three prong test of the Independent Contractor Statute. Id. at 583. In reversing and remanding the case, the Supreme Judicial Court held that as matter of law, the only considerations for determining whether someone is an employee or independent contractor are the three prongs of the Independent Contractor Statute. Id. at 591. The court held that regardless of the agreement between the employer and the individual or the intent of the employer, if the employer cannot satisfy the three prongs, the individual is an employee. "To this extent, § 148B is a strict liability statute. . . ." Id. The Supreme Judicial Court explained that at trial, the employer first had the burden of satisfying the three prong requirement of the Independent Contractor Statute and if unsuccessful, the plaintiff was entitled under Massachusetts General Laws Chapter 149, Section 150, the Wage Act Statute, to "damages incurred." Id. at 594. Thus, this Court here can rule on the partial summary judgment motion of missclasification without now considering the issue of damages.

**IV. CONCLUSION**

Because Coverall failed to establish the second prong of the Independent Contractor Statute, the Court holds that the Massachusetts franchisees were misclassified as independent contractors. Accordingly, the plaintiffs' motion for partial summary judgment [Docket No. 200] is ALLOWED.

SO ORDERED.

                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE