**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **PIUS AWUAH, et al.**, | |
| Plaintiffs, | Civil Action No. 07-10287-WGY |
| v. | |
| **COVERALL NORTH AMERICA, INC.**, | |
| Defendant. | |

**COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFFS'
SECOND MOTION TO STRIKE THE PARTIES' ARBITRATION AGREEMENTS**

Coverall North America, Inc. ("Coverall"), by its attorneys, submits the following memorandum of law in response to Plaintiffs' second motion to strike the parties' arbitration agreements (Dkt. No. 303).

## ARGUMENT

Plaintiffs' second motion to strike the parties' arbitration agreements should be denied for at least three reasons: (i) it asks this Court to forego the hearing it previously ordered (and that the First Circuit affirmed was necessary) and usurp from the arbitrator the right to rule on the validity of the class action waivers; (ii) it is premised on the faulty presumption that the striking of the class action waivers would cause all of the arbitration agreements to fall in their entirety; and (iii) it assumes, incorrectly, that an arbitrator must conclude that the class action waivers are unenforceable with respect to Plaintiffs' wage act claims.

First, Plaintiffs' motion asks this Court to do what the First Circuit said it may not do: namely, rule on the enforceability of provisions of the parties' arbitration agreements absent some finding, to be made after a hearing, that the arbitration agreements are illusory. In *Awuah v. Coverall North America, Inc.*, 554 F.3d 7 (1st Cir. 2009), the First Circuit concluded that the

enforceability of the arbitration agreements at issue was "clearly and unmistakably" a question for the arbitrator. *Id*. at 11-12. The appellate court nonetheless concluded that Plaintiffs were "entitled to a ruling by th[is] court as to whether the arbitration remedy in this case is illusory." *Id*. at 13.[1] To date, Plaintiffs have not sought such a hearing.[2] Absent a determination that the arbitration agreements are illusory, there is no basis for Plaintiffs' request that this Court disregard the appellate court's decision and make the very sort of ruling which that court held "was for the arbitrator." *Id*. at 12.

Second, Plaintiffs' motion rests on a faulty premise: that a decision striking the class-action waivers means that arbitration cannot proceed. As this Court previously recognized, each of the Franchise Agreements contains a severability clause. *Awuah v. Coverall North America, Inc.*, 563 F. Supp. 2d 312, 315 (D. Mass. 2009). These clauses provide, in pertinent part, that "[i]f any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated." *Id*. (quoting Paragraph 28 of the Franchise Agreements). In light of these clauses, an arbitrator could conclude that the parties intended to preserve their agreements to arbitrate, regardless of the enforceability of individual clauses of those agreements – including the class action waivers. *See Cadillac Auto. Co. of Boston v. Engeian*, 339 Mass. 26, 30 (1959) ("if the part of a contract

---

[1]     The Supreme Court's recent decision in *Rent-A-Center, West, Inc. v. Jackson*, No, 09-497 (U.S. June 21, 2010), has narrowed the permissible scope of this inquiry. In *Jackson*, the Supreme Court held that where an arbitration agreement delegates to the arbitrator the power to address the validity of the arbitration agreement, the party seeking to evade its obligation to arbitrate must specifically challenge the enforceability of the delegation provision itself to justify judicial intervention. Challenges that are not "specific to the delegation provision" may not be considered. *Id*., slip op. at 10.

[2]     Plaintiffs sought to delay the hearing until after this Court ruled on their prior motion for class certification and the parties' prior motions for summary judgment. Coverall did not oppose this delay, but Plaintiffs have done nothing to obtain the hearing since this Court ruled on those motions.

which is valid, can be separated from that which is void, and carried into effect, it may be done.").

That is precisely what the First Circuit concluded in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), the very case that Plaintiffs relied on (and continue to rely on) in pressing the supposed unconscionability of various provisions of the parties' arbitration agreements.[3]   In *Kristian*, the defendant asserted that the class action waiver in the arbitration agreements was not severable, and that if the waiver were to be deemed unenforceable, "the whole arbitration clause would go down, and none of it would be enforceable." *Id*. at 61.   Noting that the parties' contracts contained a severability clause, the First Circuit rejected this argument.   In fact, the court specifically noted that "by applying the savings clause and severing the class arbitration bar, [it was] actually saving the arbitral forum – an outcome consistent with federal policy favoring arbitration." *Id*. at 62; *see also Anderson v. Comcast Corp.,* 500 F.3d 66, 77 (1st Cir. 2007) (relying on severability clause to strike limitations period and holding that doing so allowed the court to "preserve[] the viability of the arbitral forum); *cf. Feeney v. Dell Inc.*, 454 Mass. 192, 210 (2009) (striking defective arbitration clauses in their entirety because "[t]he contracts at issue here do not contain a severability or savings clause.").

---

[3]    Plaintiffs' assertion that the arbitration agreements are unconscionable is premised almost entirely on provisions that have long been held enforceable – such as the mutual attorneys' fees and the mutual limitations provisions (*see Carter v. Warren Five Cents Sav. Bank*, 409 Mass. 73, 80, 564 N.E.2d 579 (1991) ("There is no doubt that the parties may provide in an agreement that, in certain circumstances, one of them may be obligated to pay the other's attorney's fees, incurred in asserting rights under the agreement."); *I.V. Servs. of Am., Inc. v. INN Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79, 86 (D. Mass. 1998) ("The law is settled in this circuit, based in Massachusetts law, that contracting parties may agree upon a shorter limitations period as long as it is reasonable.")) – provisions that reflect the inherent nature of arbitration, such as the confidentiality requirement (*see Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 8 n.4 (1st Cir. 1999) (recognizing that privacy is one of the main reasons parties choose to resolve their disputes by arbitration)) – and obligations that they would bear even if the agreements were silent on the subject, such as the requirement that the parties split the costs of arbitration. *See* Rule 50 of the Commercial Arbitration Rules of the American Arbitration Association (The costs of arbitration "shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.").

The Supreme Court's decision in *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758 (2010), does not support a contrary conclusion.  *Stolt-Nielsen* stands for the limited proposition that "a party cannot be required to participate in class arbitration against its consent." [Pl. Motion at pp. 8-9.]  Relying on this proposition, Plaintiffs leap to the conclusion that, if the class action waiver is stricken, class arbitration cannot proceed.  This is so, Plaintiffs contend, because by including a class-action waiver in some of its arbitration agreements, Coverall "took unambiguous stance against class arbitration …."  [Pl. Motion at 9.]

Plaintiffs' argument assumes far too much.  If, after holding a hearing, the Magistrate Judge concludes that Plaintiffs' claims should proceed to arbitration, it will be for an arbitrator to determine whether the class-action waivers are unenforceable.  If an arbitrator concludes that they are unenforceable, only then will the issue of Coverall's willingness to participate in class arbitration be ripe.  And unlike *Stolt-Nielson* – where Stolt-Nielson (i) consistently opposed class arbitration, and (ii) immediately filed a petition to vacate the arbitration panel's determination that class arbitration was permissible – there is nothing in this record to support Plaintiffs' assumption that Coverall would not be amenable to class arbitration if an arbitrator determined that the class action waivers were unenforceable.  For this Court to conclude as a matter of law that Coverall would not participate in class arbitration, this Court would need to find a provision in the arbitration agreements that states that the striking of the class-action waivers terminates the arbitration clauses in their entirety.  There is no such provision in any of the agreements before this Court.  Instead, those agreements contain severability clauses.  Whether those clauses preserve the arbitration agreements in the event the class action waivers are stricken is, respectfully, a question in the first instance for the arbitrator, and not this Court (unless Plaintiffs succeed at hearing in showing that the arbitration remedy is "illusory").

Third, Plaintiffs' assumption that the arbitrator will be required to strike the class action waivers (and that this will necessarily force the parties back into court) is simply incorrect. The arbitrator could decide (as this Court recently did) to try the claims of the named Plaintiffs before determining whether class certification is appropriate. *See Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 11 (1st Cir. 2001) ("the arbitrator is free to set his own rules of procedure so long as he stays within the bounds of fundamental fairness"). If the arbitrator determines that certification is inappropriate, he/she will have no need to address the validity of the waivers. Alternatively, the arbitrator could decide – prior to addressing the validity of the waivers – that the Plaintiffs have not asserted valid statutory claims and, therefore, that the principle set forth in *Feeney* does not apply. The arbitrator could also determine that the principle set forth in *Feeney* is preempted by the FAA.[4]

Finally, the arbitrator could conclude that *Feeney's* reasoning is not applicable to wage act claims. While Plaintiffs presume that *Feeney's* conclusion must apply to all statutory claims that permit a plaintiff to file on behalf of a class, *Feeney* never came to such a far-reaching conclusion. To the contrary, *Feeney's* holding rests on the unique history and structure of c. 93A, and the court's determination that the class-action mechanism was an integral part of c. 93A's statutory scheme. The wage statutes under which Plaintiffs are suing share neither this

---

[4]    Coverall acknowledges that *Feeney* addressed whether its conclusion was preempted by the FAA. *Feeney*, 454 Mass. at 208-09.  However, the SJC's conclusion regarding the impact of federal law is not binding on this Court (or an arbitrator), and Coverall respectfully submits that the SJC's conclusion is inconsistent with the pronouncements of the First Circuit on this issue. *See, e.g., KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50-51 (1st Cir. 1999) (Rhode Island franchise statute which rendered unenforceable any provision that restricted jurisdiction to a forum outside Rhode Island was preempted by the FAA because the statute applied to only one type of provision (venue clauses) in one type of agreement (franchise agreements), and therefore did not "apply to *any* contract," as required under the FAA) (emphasis in original).

history nor this structure, as Plaintiffs themselves recognize.  *See* Pl. Motion at 7 (noting c. 93A's "more detailed provisions for class action certification").[5]

Additionally, the factors upon which the *Feeney* Court relied in striking down a class action waiver are not present in this case.  *Feeney* made clear that its holding was premised on two factors: the specific nature of the claims at issue (consumer protection claims brought under c. 93A) and the amount at stake:

> Our decision is not based on any judgment about the merits of a particular forum for class action adjudication-arbitration or litigation-*but rather on a determination that in the circumstances of a case such as this (small value claims sought under our consumer protection statute, G.L. c. 93A)*, a clause effectively prohibiting class proceedings in any forum violates the public policy of the Commonwealth.

*Feeney*, 454 Mass. at 205-06 (emphasis added).  Unlike *Feeney*, the claims that Plaintiffs are pursing are not (at least in Plaintiffs' opinion) small damage claims.   In the jurisdictional memorandum they previously filed [Docket No. 63], Plaintiffs asserted that each member of this supposed class had suffered, on average, **$45,111** in compensatory damages – *before* trebling, attorneys' fees and costs.  *Cf. Feeney*, 454 Mass. at 204 (noting that the claimed damages were $13.65 for one of the named plaintiffs and $215.55 for the other).  This case, therefore, does not involve the type of low-dollar claims that would not be litigated absent the availability of a class proceeding.  They are sufficiently "large to provide an incentive for lawyers to take on individual cases" (Pl. Motion at 5), which Plaintiffs assert is the proper test.  In fact, during trial, evidence

---

[5]       Plaintiffs attempt to find a similar intent in the part of c. 149, § 148 that provides that "[n]o person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty."  As the Court will recall, Plaintiffs recently claimed (in their Opposition to Coverall's Motion in Limine) that this same language rendered releases that Plaintiffs. Cavalcante and. Correia executed unenforceable as to claims arising under the wage laws.  *See* Dkt. No. 250, at p. 7.  The courts have rejected this argument.  See *Gordon v. Millivision Holdings, LLC*, 19 Mass. L. Rptr. 61, 2005 WL 705110, at *3 (Mass. Super. Jan. 14, 2005) ("[A] waiver is very different from a release.  The law prohibits a waiver of the employee's rights under the Wage Act; it does not prohibit releasing those rights after the claim has been established.  In other words, there is no proscription in the statute to releasing an acknowledged wage claim ….").  Plaintiffs' current assertion likewise stretches § 148 well beyond its plain meaning.

was introduced that one of the plaintiffs – Geraldo Correia – had little difficulty retaining a lawyer to resolve his disputes with Coverall.[6]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' second motion to strike the parties' arbitration agreements should be denied.

Dated:  June 25, 2010                       **COVERALL NORTH AMERICA, INC.**

                                            By its attorneys,

                                            /s/ Michael D. Vhay
                                            Michael D. Vhay (BBO No. 566444)
                                            *michael.vhay@dlapiper.com*
                                            Matthew J. Iverson (BBO No. 653880)
                                            *matthew.iverson@dlapiper.com*
                                            Paul S. Ham (BBO No. 673193)
                                            *paul.ham@dlapiper.com*
                                            DLA PIPER LLP (US)
                                            33 Arch Street, 26th Floor
                                            Boston, MA  02110-1447
                                            (617) 406-6000 (*telephone*)

                                            Norman M. Leon
                                            DLA PIPER LLP (US)
                                            203 North LaSalle Street, Suite 1900
                                            Chicago, IL  60601
                                            (312) 368-4000 (*telephone*)

                                            John F. Dienelt
                                            DLA PIPER LLP (US)
                                            1200 Nineteenth Street, NW
                                            Washington, DC  20036
                                            (202) 861-3900 (*telephone*)

---

[6] Plaintiffs assert that an arbitrator's failure to apply Feeney's conclusion to wage act claims would be in "manifest disregard" of the law.  For the foregoing reasons, that assertion is unfounded.  Moreover, as Plaintiffs acknowledge, it is not clear (in light of *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008)) whether "manifest disregard" remains a valid basis for overturning arbitration awards.  *See Stolt-Nielsen*, 130 S. Ct. at 1768 n.3 (refusing to decide whether "manifest disregard" survived the Court's decision in *Hall Street*).

**<u>Certificate of Service</u>**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent to those indicated as non-registered participants on mailing time and provide for a uniform period regardless of the use of the mails.

                                   /s/ Michael D. Vhay
                                   Michael D. Vhay