## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____ )
PIUS AWUAH, DENISSE PINEDA,                     )
JAI PREM, RICHARD BARRIENTOS,           )
ANTHONY GRAFFEO, MANUEL DASILVA,        )
and all others similarly situated,              )
                                        )
                     Plaintiffs,        )
                                        )       Civil Action No. 07-10287
                                        )
            v.                          )
                                        )
COVERALL NORTH AMERICA, INC.,           )
                                        )
                     Defendant.         )
_____ )

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES AVAILABLE FOR VIOLATION OF MASSACHUSETTS INDEPENDENT CONTRACTOR STATUTE, M.G.L. c. 149 § 148B AND MEMORANDUM IN SUPPORT THEREOF

**I.      INTRODUCTION**

On March 23, 2010, this Court ruled that Massachusetts "franchisees" who have provided cleaning services in Massachusetts for Defendant Coverall North America, Inc. ("Coverall") are employees under M.G.L. c. 149 § 148B. Awuah v. Coverall North America, Inc., 2010 WL 1257980, 5 (D.Mass. 2010). Having established that they are employees, Plaintiffs now, pursuant to the Court's instructions during the status conference held on July 13, 2010, move for partial summary judgment on the issue of whether the cleaning workers may obtain damages for the expenses they were required to pay due to their misclassification as independent contractors.

1

It is undisputed that Plaintiffs may obtain damages for such individualized issues as any overtime they worked, as well as any weeks in which they received less than minimum wage for their labor.  However, as discussed at the recent court conference, the more significant legal issue remaining in the case is that addressed in this motion, namely whether Plaintiffs may obtain damages for expenses they were required to pay, due to their misclassification as independent contractors.  Because of the significance of this issue, both as it will impact another trial of this case, and because it is a weighty unanswered question of state law in Massachusetts affecting the enforcement of the Independent Contractor Statute, Plaintiffs submit that the Court should decide this legal issue and then certify the question to the Massachusetts Supreme Judicial Court.[1]

As laid out in Plaintiffs' Statement of Facts, Coverall's cleaning workers have been charged a variety of expenses by Coverall.  For example, the workers have had to pay fees to Coverall in order to receive work from Coverall, both in the form of their initial franchise fees when they first come into the Coverall system, as well as fees to purchase additional business once they are in the system.  In addition, the workers have had deductions equaling 15% of their earnings from cleaning accounts taken out of their monthly paychecks; Coverall

---

[1] There is no need for the Court to hold another trial before this important legal issue is resolved.  Because the parties do not dispute that the plaintiffs would be entitled to such damages as overtime and minimum wage violations they may have suffered, holding a trial on these issues alone for the named plaintiffs will do little to advance this litigation.  In other words, if the Court were to disagree with the plaintiffs' contention in this motion, then it should allow this issue to be decided by the SJC prior to putting the parties through the time and expense of another trial on issues that would do little to advance the litigation.  On the other hand, if the Court were to agree with the plaintiffs' contention, then Coverall would certainly want to seek review of that decision.  Because this significant issue of state law has not been addressed by the Massachusetts appellate courts, it would be particularly appropriate for the Court to certify the issue to the SJC.

calls these deductions "Royalty and Management Fees."  Plaintiffs have also

been charged for several types of insurance, supplies, "charge backs" (charges

billed to the workers when Coverall is unable to collect payments from customers

for the cleaning work performed), and other fees.  Plaintiffs submit that none of

these expenses are proper, since employees simply would not be charged for:

obtaining work; having their employer "manage" their accounts and collect

payments from customers; liability and occupational insurance; supplies; or

reimbursement to the employer when customers do not pay their bills.

By charging these expenses to the cleaning workers, Coverall has

essentially sold jobs to the workers, as well as shifted to the workers expenses of

running a business that are typically borne by employers.  While it would be

unthinkable, for example, that a janitor classified as an employee by a school

district would be required to provide and pay for his own mop bucket and

cleaning supplies, or for a laborer to pay his employer for the right to perform a

construction job, or for a nurse to pay her employer for liability insurance, or for a

legal secretary to pay her employer for the service of billing and collecting fees

from clients, Coverall has managed to pass these same business related costs

onto its cleaning workers through its misclassification of them as independent

contractors.[2]

It is this very type of victimization of those workers misclassified as

independent contractors that led the Massachusetts Legislature to require that

---

[2]      It is Plaintiffs' understanding that Coverall is no longer selling franchises to cleaning
workers in Massachusetts, since the Court's decision on Plaintiffs' summary judgment motion,
thus acknowledging that it is not appropriate for an employer to sell a job to an employee.
Plaintiffs have sought discovery from Coverall regarding the changes it has made in
Massachusetts since the Court's ruling but has not yet obtained such discovery.

M.G.L. c. 149 § 148B be enforced through M.G.L. c. 149 § 150, which allows individuals injured by such a violation to recover "any damages incurred" *and* "any lost wages and other benefits."  As stated last year by the Supreme Judicial Court in Somers v. Converged Access, Inc., a plaintiff injured by a violation of § 148B:

> [W]ill be entitled under G.L. c. 140, § 150, to "damages incurred," including treble damages for "any lost wages and other benefits." The "damages incurred" will include any wages and benefits the plaintiff proves he was denied because of his misclassification as an independent contractor, including the holiday pay, vacation pay, *and other benefits that he would have been entitled to as a CAI employee.*

454 Mass. 582, 594 (2009) (emphasis added).  Here, Plaintiffs contend that a benefit they would have been entitled to as employees is the right not to have to pay for their jobs, or to pay for Coverall to manage its cleaning clients, or to pay for supplies, to pay for liability and occupational insurance (indeed, as employees, Coverall cleaning workers should have been covered by workers compensation, which would have been paid for by the company), or to bear the cost if a customer does not pay its bill.  Neither the Supreme Judicial Court nor the Massachusetts Legislature has limited the damages available to a misclassified employee for a violation of the Independent Contractor Statute to damages arising from a failure to provide the minimum wage or a failure to pay overtime.  Rather, recognizing the multitude of ways in which misclassified workers can be victimized by their misclassification, the SJC and the Legislature have allowed for the recovery of "any damages."  These damages should include the types of expenses and deductions at issue here.  To hold otherwise would allow Coverall to sell jobs to its cleaning workers and to continue to make these

workers responsible for Coverall's costs of doing business, thus continuing the victimization of these workers and harming those competitors of Coverall who classify their cleaning workers as employees and pay their own business costs.[3]

Accordingly, the Court should grant Plaintiffs' Motion for Partial Summary Judgment and hold that the expenses charged to Coverall's cleaning workers, described here, are among the damages they may obtain from Coverall's violation of M.G.L. c. 149 § 148B.  After the Court's ruling, and before holding a trial on damages for the misclassification claim, the Court should certify this significant legal issue to the Massachusetts Supreme Judicial Court.

## II.    FACTS AND BACKGROUND

As explained in Plaintiffs' Statement of Facts, Coverall cleaning workers have been charged a variety of expenses in connection with their performance of cleaning services.[4]  These expenses include the following:

1. **Fees to purchase cleaning jobs from Coverall.**  These fees include initial franchise fees cleaning workers pay to purchase an initial set of cleaning accounts, as well as additional business fees to purchase additional cleaning accounts after they are in the Coverall system.[5]

---

[3]    As the First Circuit has stated, in addition to compensating workers who have been harmed, the wage laws are also designed to protect complying competitors.  See Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1324 (1st Cir. 1992).

[4]    The Court will also be familiar with these charges based upon the trial held in May.

[5]    Plaintiff Anthony Graffeo paid an initial franchise fee of $3,250 and later paid additional business fees (which total more than $1,312 since July 2004, the period in which the current Massachusetts Independent Contractor Law has been in effect).  See SOF ¶¶ 4-6.  Janeth Velez paid an initial fee of $10,500 and later paid additional business fees (which total approximately $324 since July 2004).  See SOF ¶ 8-7 (SOF refers to the Plaintiffs Statement of Material Facts).
       Anthony Graffeo has already been added to the complaint as a named plaintiff.  Plaintiffs have also moved to add Janeth Velez as a named plaintiff.  See Motion to Amend, Docket No. 318 (which is currently pending).  Coverall has opposed the addition of Ms. Velez as an additional named plaintiff, despite the fact that Plaintiffs have offered to make her available immediately for deposition (and Plaintiff Graffeo's deposition, which has begun, is scheduled to continue the week of August 30, 2010).

2. **"Royalty and Management Fees".**  These are fees Coverall has charged its cleaning workers, in the amount of 15% of their monthly earnings for work performed on cleaning accounts.  Coverall contends that these fees cover the cost of the company managing the cleaning accounts, including obtaining the accounts, managing the client billing, etc.[6]

3. **Insurance.**  Coverall has charged its cleaning workers for various types of insurance, including general liability insurance, occupational insurance, and "janitorial bonding" insurance.[7]

4. **Supplies and Equipment**.  Coverall has charged its cleaning workers for supplies and equipment they have used to clean customer accounts for Coverall.[8]

5. **"Charge Backs."**  A "charge back" is a fee charged by Coverall to its cleaning workers when a customer does not pay its bill for cleaning services.  Though Coverall "advances" payments to cleaning workers for services performed on accounts that are not up to date on their bills, if Coverall does not receive payment from the customer after 90 days, then Coverall will "charge back" from the cleaning worker the advanced payments that it paid the cleaning worker for performing those cleaning services.[9]

---

[6]  Since July 2004, Anthony Graffeo has paid approximately $6,920.47 to Coverall in Royalty and Management fees.  See SOF ¶¶ 9-10.  Since July 2004, Janeth Velez has paid approximately $5,304.46 to Coverall in Royalty and Management fees.  See SOF ¶ 11.

[7]  Since July 2004, Anthony Graffeo has paid approximately $5,416 to Coverall for insurance.  See SOF ¶ 13.  Since July 2004, Janeth Velez has paid approximately $4,441 to Coverall for insurance.  See id.

[8]  Because Coverall does not provide supplies and equipment to its cleaning workers, they must either purchase the supplies from Coverall or buy them elsewhere on their own.  Since July 2004, Anthony Graffeo has paid at least $62.47 to Coverall for supplies.  See SOF ¶ 14.

[9]  For example, Mr. Graffeo was required to pay a "charge back" of $127.50 to Coverall in February of 2005 when a business called National Bath did not pay Coverall for the services performed by Mr. Graffeo.  See SOF ¶16.  Ms. Velez was required to pay "charge backs" of of $147.05 in September 2004 and $267.75 in and July 2005.  See SOF ¶17.

### III.    ARGUMENT

Plaintiffs' claims for violation of the Massachusetts Independent

Contractor Statute, M.G.L. c. 149 § 148B, are brought pursuant to M.G.L. c. 149

§150.  Section 150 allows individuals injured by a violation of § 148B to:

> [I]nstitute and prosecute in his own name and on his own behalf, or
> for himself and for others similarly situated, a civil action for
> injunctive relief, for **any** damages incurred, **and** for **any** lost wages
> and other benefits.  (Emphasis added).

Clearly, this language does not limit the damages available to cleaning workers

who have been misclassified as independent contractors, rather than as

employees, to only lost overtime or minimum wages.  Indeed, this statutory

language states that Plaintiffs may seek "any damages" in addition to "any lost

wages and other benefits." M.G.L. c. 149 § 150.  Thus, while damages

recoverable under § 150 include hourly wages lost as a result of a failure to pay

overtime or the minimum wage, these damages also include "any damages"

suffered as well as "any" lost benefits.[10]  Here the damages suffered include the

workers' paying expenses they would not have paid as employees, and the lost

benefits include the benefit of performing work for their employer without having

to pay these expenses to do so.

---

[10]    Coverall may point to subsection (d) of § 148B, to argue that workers must suffer a
violation of another section of the wage law in order to recover damages for a violation of § 148B,
but this subsection is not applicable to private actions brought pursuant to § 150.  Rather, the
requirement that a violation of another statutory provision must be shown applies only to actions
brought by the Massachusetts Attorney General under "section 27C of this chapter."  § 148B(d).
See Amero v. Townsend Oil, Co., Superior Court Civil Action No. 07-1080, at p. 6 (April 15, 2009)
(attached hereto as Exhibit 1) (finding that it is not necessary to prove a separate violation under
the wage laws in order to obtain damages for a § 148B violation because § 148B is enforceable
through § 150, noting that: "If subsection (d) of section 148B provided the exclusive remedy for
violation of section 148B, then section 150 is superfluous to the extent it includes section 148B
among the sections of which gives rise to a private cause of action for employees….").

The Supreme Judicial Court, in interpreting this language, has given it a very broad reading.  In Somers v. Converged Access, Inc., the SJC addressed a case in which the employer argued that there were no damages arising from its misclassification of the plaintiff as an independent contractor because the employer had paid him a higher rate of pay than he would have been paid as an employee, which, according to the employer, accounted for the benefits and overtime payments he would have received as an employee.  454 Mass. 582, 592 (Mass. 2009).  The employer argued that had it realized that it would be violating § 148B by classifying the plaintiff as an independent contractor, it would instead have hired the plaintiff as an employee and paid him a lower hourly wage.  Id.  Noting that the legislative purpose behind § 148B was "to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors," the SJC rejected the employer's argument and held that if the employer was found to be liable for a violation of § 148B, the damages incurred "will include any wages and benefits the plaintiff proves he was denied because of his misclassification as an independent contractor, including the holiday pay, vacation pay, *and other benefits that he would have been entitled to as a CAI employee.*"  Id. at 594 (emphasis added).[11]  The Court issued a far-reaching conclusion in Somers that the employer was not entitled to any "credit" for having paid the employee more

---

[11]  Likewise, Coverall may argue that, had it known its cleaning workers would be considered employees under § 148B, it would have identified their pay as less on their monthly pay statements and not depicted as "deductions" the various expenses that Plaintiffs challenge here.  However, this same logic was rejected by the SJC in Somers, which gave no credence to the employer's contention that the higher rate it allocated to the plaintiff as an independent contractor was intended to cover the various benefits and overtime he would have received as an employee.

based upon its (incorrect) belief that he was an independent contractor.  Instead

the Court determined that the plaintiff's entitlement to overtime would be

calculated the traditional way (i.e. time and a half of his actual pay rate, not what

his pay rate purportedly "would have been" as an employee), and that he was

entitled to benefits he would have received as an employee over and above the

heightened pay he received as an independent contractor.  The implications of

this ruling are clear that the SJC has no patience for employers that misclassify

their workers as independent contractors and is not concerned that an award of

such damages may appear to be a "penalty" against such employers.[12]

Indeed, the SJC rejected the employer's argument that its ruling would

result in a "windfall" for the plaintiff, stating:

> [T]he "windfall" the Legislature appeared most concerned with is
> the "windfall" that employers enjoy from the misclassification of
> employees as independent contractors: the avoidance of holiday,
> vacation, and overtime pay; Social Security and Medicare
> contributions; unemployment insurance contributions; workers'
> compensation premiums; and income tax withholding obligations.
> Misclassification not only hurts the individual employee; it also
> imposes significant financial burdens on the Federal government
> and the Commonwealth in lost tax and insurance revenues.
> Moreover, it gives an employer who misclassifies employees as
> independent contractors an unfair competitive advantage over
> employers who correctly classify their employees and bear the
> concomitant financial burden.

Id. at 593 (internal citations omitted).  Thus, in Somers, the SJC held that any

plaintiff who proves he or she was misclassified may seek all damages, of any

---

[12]     Indeed, it should be remembered that the SJC already found that Coverall misclassified a
"franchisee" cleaning worker as an independent contractor, in affirming her right to unemployment
benefits in Coverall North America, Inc. v. Com'r of Div. of Unemployment Assistance, 447 Mass.
852, 854 (2006).  However, apparently because that case addressed only one worker, and was
not a "class action", Coverall ignored the SJC's holding for four years and continued to classify its
cleaning workers in Massachusetts as independent contractors until the Court issued its decision
in this case.

type, that arise because the plaintiff was misclassified as an independent contractor.[13]

In another case discussing damages arising from a violation of § 148B, a Massachusetts Superior Court similarly interpreted broadly the language regarding damages available for an employee who is misclassified as an independent contractor.   In <u>Amero v. Townsend Oil</u>, Judge Murtagh, in holding that an oil delivery driver had been misclassified as an independent contractor, discussed the "numerous forms of damages that have resulted from [the plaintiff's] misclassification, including the difference between his pay and the wages and overtime earned by [defendant's] employees' who worked the same hours, workers' compensation benefits, and **money spent on expenses like insurance or the cost of his truck, that he might not have borne otherwise**." Superior Court Civil Action No. 07-1080 at p. 6 (April 15, 2009) (attached hereto as Exhibit 1) (emphasis added).  Thus, in <u>Amero</u>, the court explicitly anticipated that the damages available to a misclassified plaintiff would include expenses which the plaintiff was required to bear and would not have borne as an employee.

The broad reading given this statutory language is supported by the rules of statutory interpretation.  Courts interpret the provisions contained in the

---

[13]     In <u>Somers</u>, the SJC also affirmed another far-reaching appellate decision, <u>Cooney v. Compass Group Foodservice</u>, 69 Mass.App.Ct. 632 (2007), in which the Appeals Court held that a defendant would be held liable for not paying the proceeds of charges labeled "service charges" to waitstaff, even though the waitstaff were paid a higher "non-tipped" rate that they would not have received had the defendant been aware of its obligations.  The court in <u>Cooney</u> rejected the defendant's argument that this holding would create a "windfall" for employees.  Likewise, the SJC in <u>Somers</u>, citing approvingly to <u>Cooney</u>, noted that it would not be "persuaded by a restaurant employer's argument that, despite the provisions of [the Massachusetts Tips Law], it should not be required to pay its wait staff the fee charged customers as a designated service charge because, had it realized that it had this obligation, it would have paid the wait staff a lower hourly wage." <u>Id.</u> at 592.

Massachusetts wage laws in light of the statutes' legislative objectives and give undefined terms their ordinary meanings, consistent with sound reasoning and common sense.  Okerman v. VA Software Corp., 69 Mass. App. Ct. 771, 776, 779-80 (2007).  Moreover, remedial statutes are given a "broad interpretation in light of [the statute's] purpose."  Case of Sylva, 46 Mass.App.Ct. 679, 685 (Mass.App.Ct. 1999) (quoting Neff v. Commissioner of Dept. of Indus. Accidents, 421 Mass. 70, 73 (Mass. 1995).  Here, the clear language of the statute allows a plaintiff misclassified as an independent contractor to seek "any damages," which should include expenses and fees which an employee would not have been required to bear.  See Hollum v. Contributory Retirement Appeal Bd., 53 Mass.App.Ct. 220, 223 (2001), quoting Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 115 (3d Cir. 1992) ("The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." ); Ali v. Federal Bureau of Prisons, 552 U.S. 214, 219 (2008) ("We have previously noted that '[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").

Moreover, M.G.L. c. 149 §§ 148B and 150 are remedial statutes.  Somers, 454 Mass. at 592-93 (stating that the legislative purpose behind § 148B was "to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors" and noting that violation of § 148B "gives an employer who misclassifies employees as independent contractors an unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden."); Massachusetts Attorney General's Advisory on M.G.L. c. 149, § 148B, attached

hereto as Ex. 2 (stating that the statute must be enforced strictly because "[t]he need for proper classification of individuals in the workplace is of paramount importance to the Commonwealth" and because "[e]ntities that misclassify individuals….deprive individuals of the many protections and benefits, both public and private, that employees enjoy.").

Massachusetts courts have repeatedly interpreted the Massachusetts wage laws in a broad manner so as to protect employees and thereby effectuate the policy and purposes behind these laws.   See DiFiore v. American Airlines, Inc., 454 Mass. 486, 493 (2009) (holding that the legislative intent in creating the Massachusetts Tips Statute was "to ensure that service employees receive all the proceeds from service charges, and any interpretation of the definition of 'service charge' must reflect that intent"); Mullally v. Waste Management of Massachusetts, Inc., 452 Mass. 526, 531 (2008) (holding that the Massachusetts overtime and prevailing wage laws aim "to reduce the number of hours of work, encourage the employment of more persons, and compensate employees for the burden of a long workweek" and finding that employer's police of calculating overtime wages using a regular hourly rate less than the prevailing wage rate set for disposal employees performing under municipal contracts was untenable "in light of the purposes" underlying these statutes); Cooney v. Compass Group Foodservice, 69 Mass.App.Ct. 632, 638 (2007) (stating that the Massachusetts Tips statute "applies to tips, gratuities, and fees that are called 'service charges' in aid of a clear purpose: letting employees keep these payments."); Cumpata v. Blue Cross Blue Shield of Mass., Inc., 113 F. Supp. 2d 164, 168 (D. Mass. 2000) (Wage Act intends to "protect employees from the dictates and whims of shrewd

employers"); Baptista v. Abbey Healthcare Group, Inc., 1996 WL 33340740, 4 (D.Mass. 1996) (the Wage Act is intended to "protect laborers and casual wage earners who might otherwise be vulnerable to employer intimidation"). See also Martin v. Tango's Restaurant, 969 F.2d at 1324 (in addition to compensating workers who have been harmed, the wage laws are also designed to protect complying competitors).

Thus, here, where the SJC has held that §148B is intended to prevent misclassified independent contractors from being denied the benefits of employment, and to protect law abiding competitors, the "any damages" language in § 150, through which § 148B is enforced, must be given a broad reading, which actually remedies the damages to misclassified independent contractors.  Accordingly, the fees that Coverall has charged its cleaning workers, and business expenses it has shifted to them, must be considered part of the "any damages" which they can obtain as a result of their misclassification under § 148B.

Such a reading is consistent with the clear language of the statute, legislative intent, and the Somers decision.  In Somers, the SJC held that plaintiffs misclassified as independent contractor could be not deprived of the "benefits enjoyed by employees."  454 Mass. at 592.  These benefits must include the benefit of not being required to pay an employer to receive work, or pay for supplies, equipment, and insurance, or pay the employer back when the customer does not pay its bill.  These are benefits that Coverall has denied its cleaning workers.

It cannot be disputed that the expenses and fees paid by Coverall's cleaning workers were used by Coverall to offset the expenses that it, as the employer, would normally absorb (e.g. the cost of advertising, billing, providing insurance, providing supplies and equipment to employees, and the costs of uncollectible account balances).  These are the costs of running a business, not the costs of working as an employee.

Moreover, Coverall's actions in charging exorbitant fees to employees in order for them to obtain work, both from initial franchise fees and "additional business" fees (i.e. selling jobs to workers), and continuing to charge fees such as "Royalty and Management Fees" for managing customer accounts, fees for insurance (when, as an employer, Coverall should have paid for workers' compensation for the workers' benefit, not have them rely on insurance they must purchase themselves), and "charge backs" to penalize cleaning workers when customers do not pay their bills, blatantly violates public policy.  See, e.g., Lockwood v. Professional Wheelchair Transp., Inc., 37 Conn.App. 85, 94-95, 654 A.2d 1252, 1258 (Conn.App. 1995) (noting that Connecticut has recognized "a clear public policy prohibiting an employer from taking advantage of the employment relationship by using the acquisition or continuation of employment as a mechanism for exacting sums of money from an employee"); Vielbig v. USA Janitorial, Inc., 2001 WL 50890, *1 (Minn.App. 2001) (Minnesota Court of Appeals held that cleaning workers who claimed to have been misclassified as independent contractors could seek recovery for having been required to pay a

cleaning company an upfront fee for the right to work and had management fees deducted from their pay).[14]

While no cases in Massachusetts have yet addressed the issue of an employer selling jobs to employees, that is likely more indicative of the rarity of such a practice than the fact that it is condoned.[15]  The fact that these fees and expenses have only been charged to the cleaning workers by virtue of Coverall misclassifying them as independent contractors is clear from the fact that these fees and expenses were established by the contract Coverall has required its cleaning workers to sign in order to receive work.  No employee would ever be required to sign a contract containing such fees.[16]  Thus, the Court should hold that the fees and costs of doing business which Coverall has required its cleaning workers to pay can be considered "any damages" and thus are recoverable by them under § 150.

In addition, Massachusetts wage and hour laws prohibit an employer from withholding payment of earned wages.  Wiedmann v. The Bradford Group, Inc.,

---

[14]     By enacting the strict Massachusetts Independent Contractor Law, the Massachusetts Legislature can be understood to have recognized a similar public policy.

[15]     A discussion of similar abuses related to the purchasing of jobs can be found in Lochner-era cases.   For example, in Adams v. Tanner, 244 U.S. 590 (U.S. 1917) (expressly abrogated in Lincoln Federal Labor Union No. 19129 v. Northwestern Iron & Metal Co., 335 U.S. 525, 536-37, (1949)), a Lochner era decision in which the United States Supreme Court struck down a Washington State law regarding employee abuses by employment agencies on due process grounds, Justice Brandeis, in his dissent, describes the abuses that the law at issue was intended to remedy.  These abuses included private employment agencies taking advantage of "men and women with only a dollar or two, which they are eager to give up for the opportunity of earning more" by "[c]harging exorbitant fees, or giving up jobs to such applicants as contribute extra fees, presents, etc."  Id. at 601.  Justice Brandeis then quotes a report to Congress by the United States Commission on Industrial Relations, in which it is stated that there is a "general feeling that the whole system of paying fees for jobs is unjust; and if they must pay in order to get work, then any attempt to get the fee back is justifiable."  Id. at 603.

[16]     Indeed, the fact that, based on Plaintiffs' understanding, Coverall has ceased selling franchises in Massachusetts in the wake of this Court's decision that Plaintiffs are employees is further evidence that employees are not charged such fees.

444 Mass. 698, 703 (2005); <u>Boston Police Patrolmen's Ass'n, Inc.</u>, <u>Boston Police Patrolmen's Ass'n, Inc. v. City of Boston</u>, 435 Mass. 718, 720 (Mass. 2002).

M.G.L. c. 149 § 148 provides that:

> Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him…No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty [containing the limited defenses].

Thus, Coverall's charging its cleaning workers the various expenses addressed here is also an unlawful deduction from wages, in violation of § 148.  Though Coverall may argue that such deductions were proper because its cleaning workers signed contacts authorizing them, Massachusetts law is strict in not allowing such contracts to serve as defenses to wage claims.[17]

Under Massachusetts law, it is no defense for an employer to claim that a misclassified plaintiff had signed a contract allowing his wages to be reduced. Section 148 specifically precludes an employer from using a "special contract" to avoid application of § 148 or § 150 and demonstrates that the Legislature was well aware of the risk that employers would seek to find ways to avoid their payment obligations and intended to "thwart such schemes." <u>DiFiore</u>, 454 Mass. at 497 (interpreting "special contract" language appearing in the Tip Statute, G.L. c. 149, § 152A(g)).  The "special contract" prohibition is unconditional and sets forth no circumstances when waiver of statutory rights would be permitted.  <u>See Allen v. Intralearn Software Corp.</u>, 2006 Mass. App. Div. 71 (offer to pay wages conditioned on confidentiality violates "special contract" prohibition); <u>Dobin v.</u>

---

[17]      Similarly, if an employee signed a contract authorizing her employer to pay her less than minimum wage, such contract would not be enforceable.

CIOview Corp., 2003 WL 22454602, *5 (Mass.Super. 2003) (agreement to defer

wage payments prohibited by "special contract" provision, because under its

terms employer would postpone payment beyond limit provided under the Act).

In fact, the defenses available to an employer under §§ 148 and 150 are

extremely limited.  As discussed by the SJC in Somers, one of these defenses is

proof of a "valid set-off."  Somers, 454 Mass. at 593.  However, the SJC has

stated that this defense refers only to "circumstances where there exists a clear

and established debt owed to the employer by the employee."  Id.; see Moriearty

Adkins, Rubin & Jackson, Employment Law, 45 Mass. Prac. Series § 14.8, 703-

705 (2nd ed. 2003) (Massachusetts Department of Labor and Industries, the

Massachusetts Attorney General's predecessor in enforcement of the Wage Act,

has viewed the set-off defense to apply only to clear and undisputed situations of

indebtedness, i.e., where an employee has wrongfully retained the employer's

funds or other property for the employee's exclusive benefit).

In fact, in a brief recently filed with the Massachusetts Appeals Court, the

Massachusetts Attorney General's office, in taking the position that an employer

may not use the "set-off" defense in order to justify deducting pay from an

employee's pay for damage caused to a company vehicle by alleged negligence

on the part of the employee, has argued that:

> If employers were allowed to create policies that permitted them to
> withhold employee wages whenever the employer incurred a
> business-related expense arising from the employee's work
> activities, based on the employer's own subjective determination,
> the protections of the Wage Act would be seriously undermined.
> An employer would become able to deduct wages for any
> circumstance in which the employer unilaterally decided that the
> business incurred a financial loss and shift those costs onto the
> employees. Employees would be forced to face the workday with

apprehension that their employers could decide at any moment that they made mistakes that would cost them the means for paying their rent, feeding their children, and heating their homes. Such a rule would necessarily impact the lowest wage earners most severely… With respect to the "valid set-off" defense at issue here, the Legislature's choice to precede the term "set-off" with the qualifying word "valid," and to repeat the word "valid" again at the end of the sentence, emphasizes that an employer's set-off defense must be limited to an established and undisputed claim of debt.  Since the qualification to the set-off defense serves to prevent employers from unjustly avoiding payment, accidental property damages, arising from employees' work duties as truck drivers, cannot be treated as debts which employees owe to the employer; rather, **such costs are ordinary and foreseeable business expenses**.

<u>Camara, et al. v. Office of the Attorney General</u>, Appeals/Case No. 2009-P-1645 (Brief of Defendants-Appellants) p. 18-22, attached hereto as Ex. 3 (emphasis added).  The SJC has made clear that the Attorney General's interpretation of the wage laws is entitled to substantial deference.  <u>See</u> <u>Smith v. Winter Place LLC</u>, 447 Mass. 363, 368 (2006) ("Insofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions.").  Thus, the Attorney General's position that an employer's "ordinary and foreseeable business expenses" cannot be charged to employees must be given substantial deference by this Court.

Consequently, it would violate the clear intent of §§ 148, 148B, and 150 if employers were allowed to withhold amounts from employee wages whenever the employer incurred a business-related expense, or to pass these business-related expenses directly onto the employee.  Yet that is exactly what Coverall has done here.  Coverall has offset nearly all of its business costs (e.g.

advertising, billing, insurance, costs for supplies and equipment, uncollectible accounts receivable) by requiring its cleaning workers to sign contracts which make them responsible for all of these costs.[18]  The initial "franchise fee", fees for "additional business", "Royalty and Management Fees," insurance fees, and "charge backs," are nothing more than invalid off-sets used by Coverall in order to cover its costs of doing business.  These fees and deductions are not seeking repayment for legitimate debts owed to the employer, because an employee simply cannot owe his or her employer money for the privilege of being able to provide services for the employer.  Thus, these fees and expenses allow Coverall to retain wages which are payable to Coverall's cleaning workers under § 148.

Accordingly, the Court should hold that the fees and expenses that Coverall has charged its cleaning workers are recoverable damages for Coverall's misclassification of these workers as independent contractors. Clearly, the Supreme Judicial Court's repeatedly broad interpretations of the wage laws so as to protect employees, together with the broad mandate of the Massachusetts Legislature in declaring that misclassified employees may sue for "any damages", should be read to allow misclassified cleaning workers to recover for fees and expenses they were charged by their employer as a result of their misclassification.  It is simply beyond doubt that cleaning workers properly

---

[18]     Neither is it a defense for an employer to argue that it has not failed to pay wages when an employee, at the employer's request, pays certain costs of doing business directly, rather than having these costs deducted from the employee's wages. See Arriaga v. Florida Pacific Farms, L.L.C., 305 F.3d 1228, 1236 (11th Cir. 2002) (noting that in interpreting deductions under the FLSA, federal courts have held that there is "no legal difference" between an employer deducting a cost from employee wages, failing to pay a part of wages, and "and shifting a cost, which they could not deduct, for the employee to bear."). In other words, requiring an employee to bear the employer's costs directly, rather than taking these costs out of a paycheck, is still a failure to pay wages owed to an employee, as in the example of Coverall cleaning workers purchasing their own supplies and equipment from another source.

classified as employees would not have been required to pay the types of expenses and fees that Coverall has charged its cleaning workers whom it misclassified as independent contractors.

## IV.    CONCLUSION

For the reasons described above, the Court should grant Plaintiffs' Motion for Partial Summary Judgment and rule that Coverall's cleaning workers may obtain damages for the fees and expenses they were charged by Coverall, as described here.  After this ruling, the Court should certify this important and novel question of state law to the Massachusetts Supreme Judicial Court.

Respectfully Submitted,

PIUS AWUAH, DENISSE PINEDA, JAI PREM, RICHARD BARRIENTOS, ANTHONY GRAFFEO, MANUEL DASILVA, and all others similarly situated,

By their attorneys,

 /s/  Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Harold L. Lichten, BBO #549689
Hillary Schwab, BBO #666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated:  August 6, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2010, I served a copy of this motion by electronic filing on all counsel of record in this case.

 /s/  Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.