UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PIUS AWUAH, DENISSE PINEDA, JAI PREM, RICHARD BARRIENTOS, ANTHONY GRAFFEO, MANUEL DASILVA, ALDIVAR BRANDAO, BENECIRA CAVALCANTE, GERALDO CORREIA,

Plaintiffs,

v.

COVERALL NORTH AMERICA, INC.,

Defendant.

CIVIL ACTION
NO. 07-10287-WGY

MEMORANDUM AND ORDER

YOUNG, D.J. September 28, 2010

**I. INTRODUCTION**

The plaintiffs commenced this action as representatives of a putative nationwide class. On March 23, 2010, this Court held that Massachusetts fanchisees of Coverall North America, Inc. ("Coverall") were misclassified as independent contractors under Massachusetts General Laws chapter 149, section 148B (the "Independent Contractor Statute"). Awuah v. Coverall North America, Inc., –- F. Supp. 2d. -–, 2010 WL 1257980, at *5 (D. Mass. 2010). The Court tried the claims of Aldivar Brandao, Benecira Cavalcante, and Geraldo Correia as an exemplar case. Jai Prem settled his case with Coverall. The Court then denied class certification without prejudice to the possible later

certification of a class raising the Massachusetts misclassification claims. The remaining parties have now filed cross-motions for summary judgment regarding the damages suffered by one such misclassified worker, Anthony Graffeo ("Graffeo").

**II. ANALYSIS**

Coverall franchises commercial janitorial cleaning businesses. Graffeo purchased a Coverall franchise in January 1995. Janitorial Franchise Agreement, ECF No. 320-2 (the "Franchise Agreement"). Under the Franchise Agreement, the parties agreed that Coverall would bill the cleaning clients and remit payment to Graffeo minus any fees provided for under the Franchise Agreement. Franchise Agreement ¶ 3.C. Graffeo argues that these fees were improperly withheld because Coverall misclassified him as an independent contractor.

Under Massachusetts law, a missclassified worker is entitled to "damages incurred." Mass. Gen. Laws ch. 149, § 150. While the Supreme Judicial Court has not defined this term, it explained in Somers v. Converged Access, Inc., 454 Mass. 582 (2009), that it includes "wages and benefits the plaintiff proves he was denied because of his misclassification as an independent contractor."[1] Id. at 594. Coverall argues that Graffeo cannot

[1] Massachusetts General Laws chapter 149, section 150 actually states that a misclassified employee may "institute and prosecute in his own name and on his own behalf . . . a civil action for injunctive relief, for any damages incurrred, and for any lost wages and other benefits." Thus, while the issue was

prove any statutory wage damages because it is undisputed that he received at least the minimum wage, never worked overtime, and never submitted a workers' compensation claim, and that he has no other form of damages because he agreed to all of the withheld fees in the Franchise Agreement. Graffeo argues that five categories of fees were improperly withheld from his wages due to missclassification, despite the fact that he agreed to these fees in the Franchise Agreement.

A. Public Policy

Although Graffeo breaks down the objectionable fees into five categories, his overarching argument is that Coverall has created a system where it charges employees for work. Graffeo argues that, although the Massachusetts legislature has not spoken on the topic, such a system must be against public policy in Massachusetts. Justice Brandeis noted that there is a "general feeling that the whole system of paying fees for jobs is unjust; and if they must pay in order to get work, then any attempt to get the fee back is justifiable." Adams v. Tanner, 244 U.S. 590, 603 (1917) (Brandeis, J., dissenting) (quoting Final Report and Testimony submitted to Congress by the Commission on Industrial Relations created by the Act of August 23, 1912, 64th Congress, 1st Session, Doc. 415, vol. 1, pp. 109-

---

not presented in Somers, it appears from the statutory language that "damages incurred" may be broader than "lost wages and other benefits."

11). Graffeo bolsters his argument with cases from Connecticut and Minnesota where courts have recognized a public policy against requiring employees to pay for work. See Lockwood v. Prof'l Wheelchair Transp., Inc., 37 Conn. App. 85 (1995); Vielbig v. USA Janitorial, Inc., No. 8-00-1255, 2001 WL 50890 (Minn. App. 2001).

Graffeo effectively is arguing that, at least in the cleaning industry, a franchise system must be unlawful. While this Court is sympathetic to Graffeo's argument, a public policy argument requires some indication from the Massachusetts legislature, executive, or judicial branches that they find the practice at issue unlawful. See, e.g., Connecticut General Statute section 31-73 ("No employer . . . shall, directly or indirectly, demand, request, receive or exact any refund of wages, fee, sum of money or contribution from any person, or deduct any part of the wages agreed to be paid, upon the representation or the understanding that such refund of wages, fee, sum of money, contribution or deduction is necessary to secure employment or continue in employment."). Yet there is no indication from any branch of the Massachusetts government that the franchise distribution system is disfavored. Indeed, Coverall points to numerous statutes that appear to condone a franchise distribution system. See, e.g., Mass. Gen. Laws ch. 93B. Sitting in diversity, this Court thus holds that the

franchise system itself is not against public policy in Massachusetts.

B. Damages Incurred

The Court is left with the task of going through each of the categories of fees to ascertain whether such fees amount to "damages incurred" from the missclassification of the employee. Graffeo identified five categories of fees: (1) Franchise Fees; (2) Royalty and Management Fees; (3) Insurance; (4) Supplies and Equipment; and (5) Chargebacks[2]. He argues that a fee amounts to "damages incurred" if it is something that an employee would not have had to pay. Coverall argues that Graffeo is entitled only to "damages incurred" directly from misclassification; and because the fees paid were the result of a contractual obligation freely undertaken,[3] they are not related directly to his misclassification.

For the most part, the Court agrees with Coverall. The "damages incurred" must relate to the missclassification.[4] There

---

[2] A "chargeback" is a fee charged by Coverall to its cleaning workers when a customer does not pay its bill for cleaning services. Graffeo Mem. Supp. Summ. J. 6.

[3] There is no suggestion here that Graffeo was fraudulently induced to enter into the Franchise Agreement.

[4] This Court cannot reach Graffeo's argument that any benefit provided to an employee must also be provided to a similarly situated misclassified independent contractor. See, e.g., Somers, 454 Mass. 582; Amero v. Townsend Oil Co., No. 07-1080 (Mass. Supp. Ct. Apr. 21, 2009) (Murtagh, J.). Such facts are simply not presented here. Graffeo is asking the Court to

are certain statutory costs that an employer must bear. These costs cannot be shifted to an employee under a contract. When an employer misclassifies an employee as an independent contractor and attempts to shift statutorily mandated costs to that employee, those costs are "damages incurred."

Most of the fees identified by Graffeo do not relate to costs that an employer must bear and thus the parties were free to agree that Graffeo would bear these costs. While most companies do not make employees bear such costs, Graffeo agreed that he would pay franchise fees, royalty and management fees, and supplies and equipment. There is no statute proscribing the parties from agreeing to this cost shifting so long as Graffeo earns at least minimum wage. See 455 Code of Mass. Reg. 2.04 (1) ("No deduction, other than those required by law and those allowed for lodging and meals . . . shall be made from the basic minimum wage.").

The parties, however, were not entirely free to shift the cost of insurance or to withhold chargebacks from the misclassified employee. Under Massachusetts law, an employer is required to contribute to workers' compensation insurance in the event that an employee is injured on the job. Mass. Gen. Laws ch. 152, § 25A. In the Franchise Agreement, Coverall required

speculate as to what an imaginary employment contract with Coverall might contain.

Graffeo to obtain “comprehensive liability insurance covering property damage, loss and personal injury in an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate, as well as automobile liability, personal injury and property damage insurance.” Franchise Agreement ¶ 12. Had Coverall provided its statutorily mandated workers’ compensation insurance coverage, Graffeo would not have had to purchase such extensive insurance coverage. Thus, to the extent that Graffeo paid premiums for insurance that Coverall was statutorily mandated to provide, Graffeo was damaged by his missclassification as an independent contractor.

Similarly, Massachusetts requires employers to pay employees within a week of the weekly or bi-weekly pay period during which the wages were earned. Mass. Gen. Laws ch. 149, § 148 (the “Wage Act”). Thus, for instance, if an employer pays bi-weekly and the two-week pay period ends on the tenth of the month, the wages must be paid by the employer no later than the seventeenth of the month.[5] Under the Franchise Agreement, Coverall “advanced” wages

---

[5] The actual number of days in which wages must be paid depends upon the number of days that the employee works in a week:

> Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days after the termination of such period during which the wages were earned if such employee is employed seven

to Graffeo after he had provided cleaning services, but does not consider the wages "earned" until the customer pays its bill:

> Accounts Receivable Financing. Interest-free advances by Franchisor to Franchisee of an amount that has been billed to, but not collected from customer accounts of the Franchisee are available. Advances will be made no earlier than the twenty-seventh day following the month the services were rendered. Advances attributable to billings for any one customer shall not exceed an amount equal to billings for sixty (60) days and shall not remain outstanding for a period exceeding ninety (90) days from the date on which the amount of the billing was due from the customer. If advances remain uncollected from the customer at the end of said ninety (90) days, Franchisee shall repay Franchisor the amount of the advance.

Franchise Agreement ¶ 3.E. Coverall argues that the definition of "wages" and when such wages are "earned" is determined according to contract. See Boston Police Patrolmen's Ass'n, Inc. v. City of Boston, 434 Mass 718 (2002) (holding that deferred compensation contributions are not "wages"); Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 704, 708 (2005) (reiterating that under the Wage Act, commissions are earned when they are "definitely determined"); Gabovitch v. First Signs, Inc., No. 07-829, 2008 WL 2038244, at *3 (Mass. App. Ct. May 14, 2008)

---

> days in a calendar week, or in the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of such period, pay the wages earned by such casual employee during such period, but any employee leaving his employment shall be paid in full on the following regular pay day, and in the absence of a regular pay day, on the following Saturday.

Mass. Gen. Laws. ch. 149, § 148.

(holding that founder of nonprofit organization agreed to irregular and contingent compensation until organization received funding); Scharf v. Isovia, Inc., No. 06-360, 2006 WL 3780747, *1 (Mass. App. Ct. Dec. 26, 2006) (holding that salary increase contingent on start-up company becoming fully funded was outside the purview of the Wage Act). Thus, Coverall contends that the parties agreed in the Franchise Agreement that Graffeo did not earn wages until a customer paid for his cleaning services. Under this agreement, if a customer was sufficently in arrears, Coverall could withhold "chargebacks" from Graffeo's wages.

The Court concludes that Coverall is attempting to circumvent the Wage Act. "The purpose of the weekly wage law is clear: to prevent the unreasonable detention of wages." Boston Police, 435 Mass. at 720. The Wage Act prohibits an employer from contracting away its application. Mass. Gen. Laws. ch. 149, § 148 ("No person shall by a special contract with an employee or by any other means exempt himself from this section."). While courts have found that certain benefits, such as deferred compensation, are not wages, the Franchise Agreement does not confer such a benefit.[6] Under the Franchise Agreement, Graffeo

[6] The Wage Act recognizes that commissions must be treated differently than regular wages, see Mass. Gen. Laws. ch. 149, § 148, but Coverall does not argue that Graffeo was paid on a commission basis. The Court finds unpersuasive the two Appeals Court cases relied upon by Coverall for the proposition that employees can contract away their rights under the Wage Law by agreeing to contingent wages. See Gabovitch 2008 WL 2038244, at

completed all of the services required of him when he finished a cleaning job. At that time, he earned his wage. To impose an additional contingency of payment from a customer on Graffeo, particularly where he had no involvement in collecting the payment, is an improper attempt to exempt Coverall from the Wage Act.

Although, Coverall improperly withheld chargebacks from Graffeo, all such wages were subsequently repaid. Coverall 56.1 Statement ¶ 17; Graffeo Response to 56.1 ¶ 17. Nonetheless, such reimbursements were made after the statutorily required period. Graffeo Response to 56.1 ¶ 17; Def's Ex. 1 ¶ 10. Thus, Graffeo is entitled to interest on the chargebacks prior to repayment.

Graffeo did not provide any evidence as to any other statutory claims for damages, such as failure to pay minimum wage or overtime.

**III. CONCLUSION**

Accordingly, Graffeo's Motion for Summary Judgment [ECF No. 319] is DENIED in part and ALLOWED in part. Likewise, Coverall's Motion for Summary Judgment [ECF No. 329] is DENIED in part and ALLOWED in part.

1. Because the resolution of Graffeo's misclassification claims presents issues of Massachusetts statutory law

---

*1 Scharf, 2006 WL 3780747, *1. Both cases involved insolvent companies attempting to raise capital – a sufficiently different factual scenario from the case before this Court.

"which may be determinative to the cause [now] pending in [this Court]," Mass. Supreme Judicial Court Rule 1:03(1), the Court, with the agreement of the parties, will certify the dispositive issues to the Massachusetts Supreme Judicial Court pursuant to that rule. The parties shall propose such an order for certification within twenty (20) days of this order.

2. The claims of Pius Awuah, Denisse Pineda, Richard Barrientos, and Manuel DaSilva are referred to the arbitration mutually agreed upon without prejudice to the rights of any party to contest or support the propriety of such reference or any aspect thereof.

3. The case is ordered administratively closed. It may be reopened upon motion of any party upon the later of the response of the Supreme Judicial Court or the completion of the arbitration.

SO ORDERED.

By the Court,

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE