UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

PIUS AWUAH, DENISSE PINEDA, JAI )
PREM, ALDIVAR BRANDAO, RICHARD )
BARRIENTOS, NILTON DOS SANTOS, )
GERARDO CORREIA, BENECIRA )
CAVALCANTE, PHILLIP BEITZ, )
MARIAN LEWIS, STANLEY STEWARD, )
ANTHONY GRAFFEO, MANIEL DASILVA,)
AND ALL OTHERS SIMILARLY )
SITUATED )
 )
              Plaintiffs, )
 )
v. )                          CIVIL ACTION
 )                           NO. 07-10287-WGY
COVERALL NORTH AMERICA, INC. )
 )
              Defendant. )
———————————————————————)

MEMORANDUM AND ORDER

YOUNG, D.J.                          February 10, 2012

I.   **INTRODUCTION**

     The named Plaintiffs (the "Plaintiffs") are current and

former franchisees of Coverall North America, Inc. ("Coverall"),

a company that provides janitorial services through franchise

agreements with individuals.  See Third Am. Compl. ¶ 1, ECF No.

79.  The Plaintiffs pled six causes of action on their own behalf

and on behalf of all "similarly situated individuals," including

breach of contract, deceptive trade practices, and violation of

state wage and labor laws.  See Third Am. Compl. 12-15.

     The Supreme Judicial Court of Massachusetts having

1

authoritatively determined that Coverall's Massachusetts "franchises" are in fact employers of Coverall, <u>Awuah</u> v. <u>Coverall North America Inc.</u>, 460 Mass. 484 (2011), this Court, on September 22, 2011, certified a class of all individuals who have owned a Coverall franchise and performed work for Coverall customers in Massachusetts at any time since February 15, 2004, who have not signed an arbitration agreement or had their claims previously adjudicated.  Tr. Status Conference (certifying the class) 2-3, ECF No. 365.

There is presently a dispute between the parties as to the scope of the class.  Pls.' Mot. Ct. Ruling Scope Class & Mem. Supp. ("Pls.' Mot.") 1 n.1, ECF No. 391.  Particularly, the parties dispute whether thirty individuals who obtained Coverall franchise by signing consent to transfer agreements ("Consent to Transfer") belong to the certified class.  <u>Id.</u>  As a result, those individuals did not receive the class notice.  <u>Id.</u>  The Plaintiffs filed the current Motion for Court Ruling on Scope of Class and Memorandum in Support thereof asking the Court to determine that the individuals who have purchased their Coverall franchises through certain Consent to Transfer agreements are in the class.  <u>Id.</u> at 2.

**A.   Background**

Coverall franchises commercial janitorial cleaning businesses.  The Coverall franchises can be obtained in two ways:

first, by signing a so called Janitorial Franchise agreement with Coverall;[1] the second way to obtain a franchise by way of transfer – by signing a Consent to Transfer agreement (persons obtaining franchise in this way are called the "Transferees"). The parties to the Consent to Transfer agreement are Coverall, the franchisee, and the Transferee.  See Defs.' Resp. Pls.' Mot. Ct. Ruling Scope Class ("Coverall's Resp."), Ex. A, Tabs 1-30, Consent to Transfer agreements provided by Coverall, ECF No. 397-2 - 397-31.  Pursuant to a typical Consent to Transfer agreement, the Transferee purchases a Coverall janitorial franchise from a current franchisee, the current franchisee agrees to sell the franchise, and Coverall consents to franchisee's sale of the franchise to the Transferee.  Id.

The Consent to Transfer agreements do not contain an arbitration clause.  The only reference therein to the underlying Janitorial Franchise Agreement, which does contain an arbitration clause, is the following: "Transferee . . . shall succeed to all of Franchisee's rights and obligations under Franchisee's Janitorial Franchise Agreement."[2]  Id.  The Plaintiffs argue that

---

[1] In later Janitorial Franchise agreements, Coverall introduced an arbitration clause into its standard franchise contracts.  See Awuah v. Coverall North America, Inc., 554 F.3d 7, 9 (1st Cir. 2009).

[2] The Consent to Transfer agreements used by Coverall are nearly identical in form.  See Coverall's Resp., Ex. A, Tabs 1-30, Consent to Transfer; see also Pls.' Mot. 2.

the Transferees are not bound by the arbitration clause contained in the Janitorial Franchise Agreement because Coverall "has produced no evidence that any of these Transferees themselves signed any document with an arbitration clause or were even shown any arbitration clause." Pls.' Mot. 2. Accordingly, the Plaintiffs contend that these individuals are within the class certified by the Court on September 22, 2011. <u>Id.</u>

Coverall argues that the language in the Consent to Transfer agreements is sufficient to bind the Transferees to all rights and obligations contained in the Janitorial Franchise agreement, including the arbitration clause. Coverall's Resp. 2. Further, Coverall explains that every Transferee signed a Guaranty to the Coverall Janitorial Franchise Agreement under which he guaranteed to Coverall "performance of all responsibilities, duties, indebtedness and obligations of the Franchisee under the Agreement . . ." <u>Id.</u> Also, prior to executing their Consent to Transfer agreements, fifteen of the thirty Transferees received from Coverall a copy of its Franchise Offering Circular which included a complete exemplar of Coverall's Franchise Agreement. <u>Id.</u>

## II.  ANALYSIS

The issue before this Court is whether the Transferees who signed the Consent to Transfer agreements did manifest mutual intent to the arbitration clause contained in the Janitorial

4

Franchise agreement.  In other words, the issue concerns whether there is a binding arbitration agreement at all, e.g., are nonsignatories to the Janitorial Franchise Agreement bound by the arbitration clause contained in this agreement?  If the answer is yes, these workers presently are outside the scope of the certified class because the certified class contains only the workers who have not signed an arbitration agreement.

### A.   Threshold Legal Matters

#### 1.   Choice of Law

The Consent to Transfer agreements do not contain a choice of law clause.  Article 23 of the Janitorial Franchise Agreement states that "[a]greement shall be interpreted and governed by the laws of the state in which the Franchise granted herein is located."  10/13/11 Ex. & Witness List, Ex. 2, Janitorial Franchise Agreement (not submitted electronically).  Because the class certified by this Court includes only those individuals who have owned a Coverall franchise and performed work for Coverall customers only in Massachusetts, Massachusetts law is applicable. In their briefs, the parties do not dispute the application of Massachusetts law.

#### 2.   Arbitrability

The Court first addresses the question presented by Coverall.  Coverall argues that even were there a legal or factual basis for the Plaintiffs' motion, the issue of the

validity or existence of the arbitration agreements between
Coverall and the Transferees is one that must be decided by an
arbitrator.  Coverall's Resp. 10.

Arbitration is contractual by nature - "a party cannot be
required to submit to arbitration any dispute which he has not
agreed so to submit." United Steelworkers of America v. Warrior
& Gulf Navigation Co., 363 U.S. 574, 582 (1960).  Thus, while
there is a strong and "liberal federal policy favoring
arbitration agreements," Mitsubishi Motors Corp. v. Soler
Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (quotations
omitted), such agreements must not be so broadly construed as to
encompass parties that were not intended to be bound by the
original contract.  See Green Tree Fin. Corp-Ala. v. Randolph,
531 U.S. 79, 91 (2000) (holding that although the Federal
Arbitration Act "directs courts to place arbitration agreements
on equal footing with other contracts... it does not require
parties to arbitrate when they have not agreed to do so"); EEOC
v. Waffle House, Inc., 534 U.S. 279, 294 (2002) ("[W]e do not
override the clear intent of the parties, or reach a result
inconsistent with the plain text of the contract, simply because
the policy favoring arbitration is implicated") (citing Volt
Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior
Univ., 489 U.S. 468, 478)); McDonnell Douglas Fin. Corp. v.
Pennsylvania Power & Light Co., 858 F.2d 825, 831 (2d Cir. 1988)

("Federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope.") (citing Fuller v. Guthrie, 565 F.2d 259, 261 (2nd Cir. 1977)).

A gateway dispute about whether the parties are bound by a given arbitration clause raises a question of "arbitrability." First Options v. Kaplan, 514 U.S. 938, 944 (1995).  The question of arbitrability is a decision for the court "[u]nless the parties clearly and unmistakably provide otherwise."  Id. (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); see John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation); Microchip Technology Inc. v. U.S. Philips Corp., 367 F.3d 1350 (Fed. Cir. 2004) (holding that it is up to a court to determine whether a nonsignatory successor corporation was bound by an arbitration agreement signed by its predecessor); Fluehmann v. Associates Fin. Servs., No. CIV.A. 01-40076-NMG, 2002 WL 500564, at *5 (D. Mass. Mar. 29, 2002) (Gorton, J.) (holding that a court should decide whether a nonsignatory is bound to arbitrate).[3]

---

[3] See also Dwayne E. Williams, Binding Nonsignatories To Arbitration Agreements, 25-SPG Franchise L.J. 175 (2006) (reaching the "logical conclusion" that "arbitrators cannot use the doctrines that bind nonsignatories as bootstraps to provide themselves with jurisdiction to determine whether a nonsignatory

In <u>First Options</u>, 514 U.S. at 944, the Supreme Court explained that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so" (internal quotation marks and alterations omitted).  The issue before the court was whether Kaplan, the owner of a wholly owned investment company, was required to arbitrate a dispute over an agreement between his investment company and another firm.  <u>Id.</u> at 941.  While it was undisputed that his investment company had agreed to arbitrate under the agreement, Kaplan asserted that because he had not personally signed the agreement, he was not obligated to arbitrate in an individual capacity.  <u>Id.</u>  Because this was a gateway question of "who should decide arbitrability," the Court cautioned that "silence or ambiguity" on the point ought not be interpreted to give the arbitrators the power to decide the issue.  <u>Id.</u> at 645.  Since Kaplan had not clearly and unmistakably agreed to arbitrate the question of whether he himself was bound by the agreement, the Court held that this was a question for judicial resolution.  <u>Id.</u> at 946.

In this case, there is no "clear and unmistakable" evidence

_____

is bound by or benefits from an arbitration clause.  The courts always have the final say").Non-signatories have been bound to arbitrate in this Circuit in one other circumstance - when the non-signatory seeks the arbitral benefit of a contract for arbitration signed by a party who reverses course and seeks to avoid arbitration to which it has agreed. <u>Sourcing Unlimited, Inc.</u> v. <u>Asimco Int'l, Inc.</u>, 526 F. 3d 38, 46-47 (1st Cir. 2008).

that the parties to the Consent to Transfer agreements - Coverall and the Transferees - agreed to arbitrate the disputes arising out of the Janitorial Franchise Agreement.  In fact, the Consent to Transfer agreements are silent on the issue of arbitration. The existing ambiguity as to the scope of the Consent to Transfer agreement, thus ought not be interpreted to give arbitrators power to decide the issue.[4]  See Kaplan, 514 U.S. at 645. Accordingly, since the parties to the Consent to Transfer agreements did not clearly and unmistakably provide in their agreement that the arbitrator decides the question of arbitrability, the Court decides the issue.

Coverall argues that Apollo Computer, Inc. v. Berg, 886 F. 2d 469 (1st Cir. 1989) is controlling in this case.  The premise of Apollo is that the parties can contract for the arbitrator to decide challenges to his own authority.  Accord Awuah v. Coverall North America, Inc., 554 F. 3d 7, 11-12 (1st Cir. 2009). In Apollo, however, the First Circuit concluded that the plaintiffs had "made the prima facie showing" of the existence of an agreement to arbitrate and, thus, ruled that the remaining issues

---

[4] "The policy behind the clear and unmistakable standard is that courts should be hesitant to force parties to arbitrate when the agreement is silent or ambiguous as to arbitrability because forcing arbitration would deprive parties of their right to judicial enforcement."  See Carlo Marichal, Arbitration Issues You might not Have agreed to: Rest-A-Car West, Inc. v. Jackson, 12 Fla. Coastal L. Rev. 458 (2011).

were to be decided by an arbitrator, per the terms of the arbitration agreement.  _Apollo_, 886 F.2d at 473.  In this case, contrary to _Apollo_, the Court is deciding the threshold issue concerning whether the Transferees are bound by the arbitration clause in the first place, without addressing the question of validity of the arbitration clause.  Here, this Court's analysis is limited to the disputed question regarding the scope of the class.  This requires the Court to decide whether a prima facie agreement to arbitrate exist between Coverall and the Transferees.

Thus, because the Transferees "cannot be compelled to arbitrate if an arbitration clause does not bind [them]," _John Wiley & Sons, Inc._ v. _Livingston_, 376 U.S. 543, 547 (1964), "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  _AT & T Technologies_ v. _Communications Workers of America_, 475 U.S. 643, 649 (1986); _see Howsam_ v. _Dean Witter Reynolds, Inc._, 537 U.S. 79, 83 (2002); _First Options_, 514 U.S. at 944.

**B.   Application of Arbitration Clause to NonSignatories**

Having determined that the court decides whether the Transferees are bound to arbitrate, the next step is to determine whether the workers' execution of the Consent to Transfer agreements subjects them to the arbitration clause contained in the Janitorial Franchise Agreement which they never signed.  The

First Circuit has recognized that under certain contract and agency principles "nonsignatories sometimes can be obligated by . . . agreements signed by others, and these principles can apply to arbitration provisions." McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994); see also 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001).  The Second Circuit has identified five grounds for binding non-signatories to the arbitration agreements of others: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995); accord Fluehmann, 2002 WL 500564, at *6.  To that end, courts focus their inquiry on the relationship among the parties and, alternatively, the relationship between the claims and the contract containing the arbitration clause.  Id.

The determination of whether the non-signatories are bound to arbitrate "is generally made on the basis of 'ordinary state law principles that govern the formation of contracts.'" Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (1st Cir. 2002) (quoting First Options, 514 U.S. at 944).  Thus, the question before the Court is one of contractual interpretation[5]

---

[5] This is a question of contract interpretation, and is matter of law for the Court.  As the court explained in Community Builders, Inc. v. Indian Motorcycle Assocs., Inc., when an "agreement is oral and the words used are in dispute, the question [of intention] becomes one for a jury." 44 Mass. App.

and, as discussed previously, Massachusetts law is applicable.

See <u>Bowly</u> v. <u>Carter Mfg. Corp.</u>, 138 F. Supp. 2d 182, 187 (D.

Mass. 2001) (Gorton, J.) (citing <u>Rosenberg</u> v. <u>Merrill Lynch,</u>

<u>Pierce, Fenner & Smith, Inc.</u>, 170 F.3d 1, 19 (1st Cir. 1999)

("Whether an agreement to arbitrate exists is a question of state

contract law")).

Under Massachusetts law, the interpretation of a contract is

resolved by reading and construing the whole contract "in a

reasonable and practical way, consistent with its language,

background, and purpose." <u>USM Corp.</u> v. <u>Arthur D. Little Sys.,</u>

<u>Inc.</u>, 28 Mass. App. Ct. 108, 116 (1989); <u>see</u> <u>Royal-Globe Ins. Co.</u>

v. <u>Craven</u>, 411 Mass. 629, 632, 585 N.E.2d 315 (1992).

> A party seeking to compel arbitration must therefore show,
> at the outset, that arbitration is consistent with the
> clear intent of the parties and the plain language of the
> contract.  To that end, mutual assent as objectively
> manifested by the contract itself is a necessary condition

---

Ct. 537, 548 (1998) (internal citations and quotation marks
omitted).  By contrast, where "the material facts are not in
dispute, and the question of the parties' intention turns on the
language of the original and revised written agreements, the
question of intention [is] to be determined by the usual process
of interpretation, implication, and construction.  The question
in such cases is one of law for the court." <u>Id.</u> (internal
citations and quotation marks omitted).  Here, because the
material facts are not disputed and neither party has alleged
that intent should be inferred from anything but the language of
the written agreements themselves, the Court can decide the
matter through interpretation, implication, and construction of
the contracts.  <u>See</u> <u>Tuttle</u> v. <u>Metz Co.</u>, 229 Mass. 272, 275 (1918)
(noting that construction of an agreement that is in writing is
matter of law for a court to decide); <u>Lewis</u> v. <u>Commonwealth</u>, 332
Mass. 4, 6 (1954) (same); <u>Lipson</u> v. <u>Adelson</u>, 17 Mass. App. Ct.
90, 92 (1983) (same).

for the creation of a binding arbitration agreement." Fluehmann, 2002 WL 500564, at *5 (citing Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992)).  Thus, the Plaintiffs, "seeking a judicial rather than an arbitral forum must not only unambiguously allege that the parties never consummated an agreement to arbitrate but also must offer 'some evidence' to substantiate such a denial.  Id. (citing T& R Enters. v. Continental Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980)).

### 1.    Incorporation By Reference

Contract law recognizes that incorporation by reference is generally effective to accomplish its intended purpose, and that arbitration agreements may be incorporated by reference.  A non-signatory may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause.  Thomson-CSF, 64 F.3d at 777. The issue before this Court is whether the Consent to Transfer agreements contain the requisite words of incorporation and, thus, "incorporate" the arbitration clause.  In other words, whether the words of the Consent to Transfer agreement - "Transferee . . . shall succeed to all of Franchisee's right and obligations under Franchisee's Janitorial Franchise Agreement" - are sufficient to incorporate the arbitration clause.

The circuit courts are split on what is required for an effective incorporation.  For example, the incorporation of the general obligations imposed on a party to another agreement may be enough in the Fourth and the Sixth Circuits.  See Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 978-81 (4th Cir. 1985) (holding that the language "shall be bound by, and expressly assumes for the benefit of the Contractor, all obligations and liabilities" was enough to bind a subcontractor to an arbitration clause); Exchange Mit. Ins. Co. v. Haskell Co., 742 F.2d 274 (6th Cir. 1984) (holding that a bonding company is bound to arbitrate based on bond incorporating terms of subcontract, which in turn incorporated terms of primary construction contract including arbitration clause).  The Seventh Circuit, on the contrary, requires specific incorporation of the arbitration clause itself.  See Grundstad v. Ritt, 106 F.3d 201, 204 (7th Cir. 1997) ("[G]uarantors and sureties for the performance of a contract are bound by the arbitration clause in that contract only when they expressly agree to the obligation to arbitrate.").  This Court is, however, mindful that the mentioned cases involved disputes between the sophisticated parties: the contractor and subcontractor relationship, and guarantor and surety relationship.  In this case, as the First Circuit has stressed, "the plaintiffs in many cases are recent immigrants and persons with limited education."  Awuah v. Coverall North

America, Inc., 554 F.3d 7, 9 (1st Cir. 2009).

Under Massachusetts law, it is axiomatic that "a contract requires a meeting of the minds." Ji v. Bose Corp., 578 F. Supp. 2d 217, 220 (D. Mass. 2008) (Gorton, J.), aff'd, 626 F.3d 116 (1st Cir. 2010); see also Fluehmann, 2002 WL 500564, at *6 ("The issue 'is not whether the parties, like the scrivener of old, followed some talismanic formula, but whether they manifested a mutual intent to arbitrate disputes arising out of the contracts . . .'" (applying federal law) (citing Tepper Realty Co. v. Mosaic Tile Co., 259 F. Supp. 688, 691 (S.D.N.Y. 1966))).  The First Circuit has repeatedly held that an individual may not be bound to an arbitration clause if he does not have notice of it. See Campbell v. General Dynamics Gov't Sys. Corp., 407 F.3d 546, 555 (1st Cir. 2005); Brennan v. King, 139 F.3d 258, 264 (1st Cir. 1998); McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994).

Whether the parties validly here entered into an arbitration agreement depends on whether Coverall gave "some minimal level of notice to the employee that statutory claims are subject to arbitration." Ellerbee v. Game Stop, Inc., 604 F. Supp. 2d 349, 354 (D. Mass. 2009) (Ponsor, J.).  Thus, at issue is whether the Transferees received adequate notice of the arbitration clause. "This is an objective test: 'the sufficiency of the notice turns on whether, under the totality of the circumstances, the employer's communication would have provided a reasonably prudent

employee notice of the waiver [of the right to proceed in a [judicial forum].'" Id. (citing Campell, 407 F.3d at 555).

In Massachusetts, minimum notice of an arbitration clause contained in a manual setting forth the procedures to be followed in a dispute between the company and its employees has been found where an employee "manifested assent to it, or acknowledged understanding of its terms, or if the employer called special attention to the manual." Ellerbee, 604 F. Supp. 2d at 355 (applying Massachusetts law). In Ellerbee, the agreement, containing a new dispute resolution policy (within the arbitration clause), was handed directly to the plaintiff, and the employer both notified him of its contents and called special attention to it by asking for confirmation. Id.

In this case, the Consent to Transfer agreements are unambiguous[6] and state that "Transferee . . . shall succeed to all of Franchisee's rights and obligations under Franchisee's Janitorial Franchise Agreement." Accordingly, Coverall argues that every Transferee was bound by the arbitration clause, even though the Consent to Transfer agreements fail even to mention the arbitration clause. Coverall's Resp. 2.

---

[6] In the absence of ambiguity, interpretation of a contract presents a pure question of law. See Roberts Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973); Sutton Corp. v. Metropolitan Dist. Commn., 423 Mass. 200, 209-10 (1996).

In this case, two groups of the Transferees ought be treated differently.  First, the group of the Transferees who signed the Consent to Transfer Agreements and did not obtain a copy of Coverall's Franchise Offering Circular.  Second, the Transferees who, prior to executing their Consent to Transfer Agreements, received from Coverall a copy of the Franchise Offering Circular. Id.

With respect to the first group, Coverall did not give the Transferees information sufficient to put a reasonably prudent employee on adequate notice of the agreement to arbitrate.  These Transferees neither received the Franchise Offering Circular, nor did their Consent to Transfer Agreements contain an arbitration clause.[7]  The Guaranty agreements that the Franchisees have signed do not substitute the required notice because they do not call attention to the arbitration clause in any way.  The language of the Guaranty - "Guarantor ... guaranties to Coverall performance of all responsibilities, duties, indebtedness and obligations of the Franchisee under the Agreement" does not call special

---

[7] Importantly, the choice of arbitration results in waiving the right to jury trial.  Surely, the waiver of an important constitutional right must be clear.  See Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937) ("As the right to jury trial is fundamental, courts indulge every reasonable presumption against waiver"); O'Brien v. New Eng. Tel. & Tel. Co., 422 Mass. 686 (1996) ("[U]nder state law, when waiver of statutory rights is at issue, Massachusetts generally requires that the waiver be both knowing and voluntary").

attention to the arbitration clause.  Indeed, the Guaranty singles out and calls attention to numerous other clauses of the Janitorial Franchise Agreement, except the arbitration clause. See Guaranty to Coverall Janitorial Franchise Agreement, Coverall's Resp. Ex. A, Tab 1.  Accordingly, the Consent to Transfer agreements, without providing any notice whatsoever about the arbitration clause, did not incorporate the arbitration clause contained in the Janitorial Franchise agreement.

The second group of the Transferees have received the Franchise Offering Circular.  The Plaintiffs argue that merely handling the Circular to a few Transferees is not equivalent to the minimal steps outlined in Ellerbee because nothing in the Circular called their attention to the contents of the Franchise Agreement itself.  Pls.' Reply 4-5 n.3.  The Court does not agree with this reasoning.  The Franchise Offering Circular states in the conspicuous language: "YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS".  Coverall's Resp. Ex. A, Tab 4, Coverall's Receipt.  Further, as an exhibit to the Franchise Offering Circular, the Transferees received the Janitorial Franchise Agreement which does contain the arbitration clause.  Id.  The Franchise Offering Circular thus does contain language calling special attention to the terms of the Janitorial Franchise Agreements and calls them "MATERIAL".  Moreover, the Franchise Offering Circular includes a complete exemplar of the

18

Janitorial Franchise Agreement.  In sum, these undisputed facts
show that Coverall's actions would have put a reasonably prudent
employee on notice of the arbitration clause as matter of law.

   Consequently, the Court concludes that Coverall fulfilled
its obligations to give at least minimum notice of the
arbitration clause by handing fifteen out of thirty Transferees
the Franchise Offering Circular calling special attention to the
terms contained in the Janitorial Franchise Agreement and
providing them with a copy of the Agreement.  Thus, these
Transferees are bound by the arbitration clause.[8]  Yet, Coverall
has failed to fulfill its obligation with respect to the
remaining fifteen Transferees who did not receive the Franchise
Offering Circular.  The mere expression "shall succeed in all

---

   [8] Importantly, the scope of this Court's order is narrow - a
ruling only on the Plaintiffs' motion pertaining to the scope of
the class.  Nothing in this order ought be interpreted as
discussing the "illusoriness" or validity of Coverall's
arbitration agreement, see Awuah, 554 F.3d at 12, a matter this
Court has yet to adjudicate.  The First Circuit reserved for
judicial determination the question whether, under the
circumstances, Coverall's arbitration agreements provide only
illusory relief.  Id. at 13.  The Court is not here deciding
whether the arbitration agreement is an illusory remedy.  The
issue before this Court is the initial one - whether the
Transferees are bound by the arbitration clause.  Thus, the
question of illusoriness reserved for the Court is not at issue
in this memorandum.  This Court's case management plan is to
conclude the proceedings concerning the presently certified class
and only then address the illusoriness question, using the
presently certified class as a "control" group.  In this way the
Court can directly compare the two identically situated groups
with respect to parameters such as recovery rates and the measure
of recovery if any, the access to adjudicatory processes and the
barriers thereto, as well as other appropriate parameters.

rights and obligations" without minimum notice of the arbitration clause, is insufficient to bind the Transferees to the arbitration clause.[9]

## III.   CONCLUSION

Based on the foregoing, the Plaintiffs' Motion for Court Ruling on Scope of Class, ECF No. 391, is ALLOWED in part and DENIED in part.  The Court rules that the individuals who signed Consent to Transfer Agreements, owned a Coverall franchise, and performed work for Coverall customers in Massachusetts at any time since February 15, 2004, who have not received Coverall's Franchise Offering Circular, are in the class certified by this Court on September 23, 2011.


**SO ORDERED.**


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[9] In reaching this conclusion, the Court is mindful that because arbitration is a contractual right, individual autonomy ought be given due respect.  The individual autonomy of the parties emerges in two related but distinct contract ideas: freedom of contract and freedom from contract.  See Mark Pettit, Jr., Freedom of Contract, and the "Rise and Fall", 79 B.U. L. Rev. 263, 280-83 (1999).  Allowing Coverall to bind to arbitration  workers who did not consent to arbitration, would undermine the freedom from contract which allows individuals to pick and choose the contracts they want to enter.