UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PIUS AWUAH, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>COVERALL NORTH AMERICA, INC.,<br><br>                    Defendant. | Civil Action No. 07-10287-WGY |

## COVERALL'S BRIEF ON OUTSTANDING ISSUES RELATING TO ENTRY OF JUDGMENT

Two issues need to be resolved before a final judgment can issue.  First, the Court must determine whether Coverall should pay damages for fees that were actually charged and collected by M.M.&J. Corporation, d/b/a Coverall of Boston Inc ("MM&J"), the master franchisee that operated in Boston until August of 1995.  Second, the Court must decide whether to award pre-judgment interest for damages incurred after July 12, 2008.  This Court should deny recovery for the first category of damages because the facts and the law do not support a determination that Coverall North America, Inc. ("Coverall") must pay damages for fees that it did not collect.  In fact, this Court previously ruled in granting Coverall's Renewed Motion for Summary Judgment as to the Claims of Marian Lewis, Stanley Stewart, Phillip Beitz and Nilton Dos Santos (the "Master Franchisee Motion," Docket No. 194) that Coverall was not liable for any alleged misconduct (including Wage Act violations) of its master franchisees.  Plaintiffs' motion constitutes nothing more than a belated motion for reconsideration of that ruling.  The Court should also decline to award prejudgment interest for damages incurred after July 12, 2008, because after that date an award of prejudgment interest amounts to a double recovery.

I.     **Plaintiffs Cannot Recover From Coverall Franchise Fees That Class Members Paid To MM&J.**

There are two undisputed facts pertaining to the MM&J issue.  First, MM&J is a master franchisee whose assets Coverall purchased seventeen years ago, in August 1995.  See Coverall's Statement of Undisputed Material Facts ¶¶ 1-2 ("Coverall 56.1 Statement," Docket Entry # 330); Plaintiffs' Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts ¶¶ 1-2 ("Plaintiffs' 56.1 Response," Docket Entry # 332).  Second, it is undisputed that no class member paid fees to Coverall prior to that purchase.  See Affidavit of Shelley Taulman ¶ 2 ("Taulman Aff.," attached as Exhibit A hereto).

Plaintiffs advance three arguments why Coverall must pay damages for the fees that certain class members (the "MM&J Plaintiffs") paid to MM&J prior to August of 1995.  They argue that: (a) Coverall somehow "waived" its ability to dispute the MM&J Plaintiffs' claim; (b) Coverall should be held vicariously liable for MM&J's actions; and (c) Coverall is contractually responsible for MM&J's liability.  See Plaintiffs' Brief on Outstanding Issues Relating to Entry of Judgment for Currently Certified Class at 2-7 ("Plaintiffs' Brief," Docket Entry # 467).  Neither the facts nor the law support any of these arguments.

A.     **Coverall Did Not Waive Its Right To Dispute These Damages.**

Plaintiffs' argument that Coverall "waived" its right to deny liability for franchise fees paid to MM&J fails for at least four reasons.  First, it is wrong on the facts.  The summary judgment record demonstrates that Coverall did dispute that it was liable for fees paid to MM&J.  In their Local Rule 56.1 Statement (Docket No. 320), Plaintiffs asserted:

- "Anthony Graffeo has provided cleaning services for Coverall in Massachusetts since approximately January 1995," id. ¶ 2; and

- "[W]hen Mr. Graffeo first started working for Coverall in 1995, he paid a fee $3,250 [sic] in order to receive his initial cleaning work from Coverall," id. ¶ 5.

In its Response to Plaintiffs' 56.1 Statement ("Coverall 56.1 Response," Docket Entry # 328),

Coverall disputed both assertions:

- "Plaintiffs fail to provide support for any of their contentions in ¶ 2 of Plaintiffs Statement.  [P]age 1 of the Graffeo JFA states that it is between Graffeo and MM&J Corporation.  Coverall did not acquire the assets of MM&J Corporation until August 1, 1995.  *See* [Coverall 56.1] ¶ 2."  Coverall 56.1 Response ¶ 2.

- "Plaintiffs fail to provide support for their contention that Graffeo started working 'for Coverall' in 1995.  *See* Coverall's Response to ¶ 2 above.  Plaintiffs also fail to provide record support for, and Coverall disputes, their contention that Graffeo paid $3,250 'in order to receive his initial cleaning work from Coverall.'"  Coverall 56.1 Response ¶ 5.

    Moreover, in its own 56.1 Statement, Coverall stated:

- "Graffeo purchased his franchise from one of Coverall's Master Franchises, MM&J Corporation, d/b/a/ Coverall of Boston, Inc. on January 17, 1995," id. ¶ 1;  and

- "Coverall acquired all of the assets of MM&J Corporation on August 1, 1995."  Id. ¶ 2.

**Plaintiffs admitted both facts.**  See Plaintiffs' 56.1 Response ¶¶ 1-2.

Second, Plaintiffs are wrong on the law.  "Regardless of the context, courts unanimously define waiver as the intentional relinquishment of a known right," In re DiVittorio, 430 B.R. 26, 52 (Bankr. D. Mass. 2010), and that did not happen here.  Coverall's liability for initial franchise fees was not established until August 31, 2011, when the SJC (addressing an issue that had not been certified) concluded that such fees were contrary to public policy.  Coverall's liability for those fees *prior to July of 2004* was not even addressed until January 13, 2012, when Plaintiffs first asserted a right to such fees prior to the statutory limitations period.  See Plaintiffs' Motion for Summary Judgment on Damages  at 7 ( Docket Entry # 413).  Indeed, the "damages chart" that Plaintiffs submitted with their original motion for summary judgment on damages (as to the claims of Anthony Graffeo) went back only to July 2004.  See Docket Entry # 320-5.  Coverall opposed Plaintiffs' claim that they were entitled to anything prior to the limitations period, see Dkt. No. 423 – a position with which this Court originally agreed.  Transcript of February 15,

2012 pretrial conference at 4-5 (Docket Entry # 439).  When this Court reconsidered that ruling and concluded that Plaintiffs could recover initial franchise fees "whenever paid," Coverall promptly moved for reconsideration of that ruling.  See Docket Entry # 452.  Simply put, there is no basis in the record for Plaintiffs' assertion that Coverall intentionally waived its right to challenge its supposed obligation to repay any fees paid prior to the statutory period, let alone those paid to a different entity.

Third, Plaintiffs ignore the parties' burdens on summary judgment.  Despite their current attempt to characterize the MM&J issue as an affirmative defense that Coverall can "waive," the question of whether Coverall injured class members by charging them illegal contractual fees (either directly or, as Plaintiffs now contend, through MM&J) is an element of Plaintiffs' prima facie case.  See, e.g., Blay v. Zipcar, 716 F. Supp. 2d 115, 120 (D. Mass. 2010) (Gorton, J.) (plaintiff bears burden of proof in suit to recover car rental fees alleged to be illegal under Massachusetts law); see also TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 430 (2006) ("Under freedom of contract principles, generally, parties are held to the express terms of their contract, and the burden of proof is on the party seeking to invalidate an express term.").  Accordingly, for Plaintiffs to recover any franchise fees on summary judgment, Plaintiffs must show as a matter of undisputed fact that Coverall actually charged them those fees.  See, e.g., Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991) ("The moving party invariably bears both the initial and the ultimate burden of demonstrating its legal entitlement to summary judgment.").  As set forth above, the summary judgment record establishes that Plaintiffs did not (and cannot) meet their burden.

While Plaintiffs point to four cases for the proposition that a plaintiff may benefit from waiver on summary judgment, all four are inapposite.  Landrau-Romero v. Banco Popular De

Puerto Rico, 212 F.3d 607 (1st Cir. 2000) and Arrieta-Gimenez v. Arrieta-Negron, 859 F.2d

1033 (1st Cir. 1988) both involve waivers on appeal following a party's failure to raise an

argument before the trial court.  See Landrau-Romero, 212 F.3d at 612; Arrieta-Gimenez, 859

F.2d at 1037.  The other two cases –  Advocates For Transp. Alternatives, Inc. v. U.S. Army

Corps of Engineers, 453 F. Supp. 2d 289 (D. Mass. 2006) (Young, J.) and Joyce v. John

Hancock Fin. Services, Inc., 462 F. Supp. 2d 192 (D. Mass. 2006) (Young, J.) – both involved

situations where a plaintiff waived a claim by failing to defend it at summary judgment.  See

Advocates, 453 F. Supp. 2d at 298, n. 13; Joyce, 462 F. Supp. 2d at 211-12.  None of these cases

stand for the proposition that a plaintiff can obtain summary judgment when the undisputed facts

do not establish (or are silent as to) the defendant's liability.

Finally, if anyone has waived their rights regarding liability for fees paid to MM&J, it is

Plaintiffs.  Despite Plaintiffs' statement (which is unsupported by any citation) that they "very

clearly sought summary judgment and entry of damages for franchise fees and additional

business fees paid before February 2004, including those paid from 1989 to 1995," the only

reference in their original summary judgment papers that could conceivably relate to fees paid to

MM&J is a single sentence in a footnote to Plaintiffs' Summary Judgment Motion (Docket Entry

#319).  That sentence states only that "Plaintiff Anthony Graffeo paid an initial franchise fee of

$3,250 and later paid additional business fees (which total more than $1,312 since July 2004, the

period in which the current Massachusetts Independent Contractor Law has been in effect)."  Id.

at 5, n. 5.  The footnote does not claim that Graffeo paid the fee to Coverall, makes no argument

as to why Coverall should be responsible for it, and does not even assert a right to its repayment.

Under the same cases Plaintiffs cite, this constitutes waiver.  See, e.g., Advocates, 453 F. Supp.

EAST\48541126.1
221287-001035

2d at 298 (plaintiffs waived claim that defendant had violated statute by "presenting no argument in support of this claim in any of their summary judgment documents").

**B.      Plaintiffs Fail to Establish That Coverall Is Vicariously Liable For MM&J's Actions.**

Contrary to Plaintiffs' assertion that MM&J's status as a Master Franchisee "has never been raised before by Coverall," Plaintiffs' Brief at 6, that status was both raised by Coverall and admitted by Plaintiffs at summary judgment. See Coverall 56.1 Statement ¶ 1; Plaintiffs' 56.1 Response ¶ 1. In fact, this Court resolved the question of Coverall's liability for the actions of Master Franchisees over two years ago when it awarded Coverall summary judgment on the claims of four plaintiffs who purchased franchises from Master Franchisees in Massachusetts, Texas, and California. See Order dated February 9, 2010 (granting Master Franchise Motion), see also Docket Entries ## 194-99. Accordingly, Plaintiffs' admission that MM&J is a Master Franchisee disposes of Plaintiffs' vicarious liability theory.

Even if the Court were inclined to revisit its earlier decisions with respect to Master Franchisees, Plaintiffs offer no evidence to support lifting MM&J's corporate veil. In Scott v. NG U.S. 1, Inc., 450 Mass. 760 (2008), the SJC elucidated the "basic tenet[] … that corporations—notwithstanding relationships between or among them—ordinarily are regarded as separate and distinct entities." Id. at 766. Further, "piercing [the corporate veil] is the exception, not the rule … [and] plaintiffs must meet a very high standard before they will be allowed to disregard a corporate form." Comm. Aluminum Corp. v. Baldwin Corp., 980 F. Supp. 598, 605 (D. Mass. 1997) (internal quotation marks omitted).

In <u>Scott</u>, the Supreme Judicial Court reiterated its twelve-factor test for determining whether it may "disregard settled expectations accompanying the corporate form."  Those factors are:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of [a] corporation's funds by the dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.

<u>Id.</u> at 768, quoting <u>Attorney General v. M.C.K., Inc.</u>, 432 Mass. 546, 555 n.19 (2000).

<u>Nothing</u> in the record would support a finding that Plaintiffs have proved <u>any</u> of these twelve factors.  With respect to the "evidence" that Plaintiffs present now:

- Coverall's brief to the SJC (Plaintiffs' Brief, Ex. 1) (a) never mentions (because it was not relevant to the issues on appeal) the party to whom Graffeo paid his franchise fee, (b) was drafted <u>after</u> Plaintiffs ended all dispute regarding that fee by admitting that Graffeo purchased his franchise from MM&J, and (c) is not a part of the summary judgment record in this Court;

- The receipt showing that Graffeo received Coverall manuals from MM&J (<u>see</u> Plaintiffs' Brief, Ex. 4) says nothing about the relationship between those two entities;

- Graffeo's confidentiality and non-competition agreement (Plaintiffs' Brief, Ex. 5) confirms that Graffeo's initial contractual relationship was with MM&J, not Coverall, <u>compare</u> <u>id.</u> at 1 (defining "Franchisor" as "Coverall of Boston") <u>with</u> Plaintiffs' Brief, Ex. 2 at 1 (stating that MM&J does business as "Coverall of Boston");

- Graffeo's UFOC receipt (Plaintiffs' Brief, Ex. 6) shows that Graffeo received his UFOC from MM&J, not Coverall, <u>see</u> <u>id.</u> (acknowledging receipt of UFOC from "Coverall of Boston, Inc."); and

- While Graffeo testified in his deposition about contracts with "Coverall," that testimony concerned cleaning that Graffeo performed and an account transfer agreement that Graffeo signed in <u>2005</u>, not 1995.[1]  <u>See</u> Graffeo Dep. 60-62, 157-58 & Exs. 5, 33 (attached hereto as <u>Exhibit B</u>).

---

[1]     Nowhere in his deposition does Graffeo discuss work that he performed between January and August 1995.

Although additional evidence is unnecessary, the Court should note that Coverall has no record of ever owning an interest in MM&J, maintaining MM&J's records, exercising control over MM&J's assets or operations, or employing any of MMJ's officers.  <u>See</u> Taulman Aff. ¶¶ 3-4.  In short, there is no legal or factual basis for piercing MM&J's corporate veil and holding Coverall vicariously liable for its actions.[2]

Plaintiffs also argue that "[t]he question under the Massachusetts Independent Contractor Statute, M.G.L. c. 149, § 148B, is not which company is named on a contract . . . but whether or not Coverall is the employer under the wage laws . . . ."  Plaintiffs are mistaken for at least two reasons.  First, Plaintiffs' claim for pre-August 1995 fees does not arise under the Massachusetts Independent Contractor statute or Massachusetts' wage laws.  It is a contract claim arising from the SJC's declaration in <u>Awuah v. Coverall North America, Inc.</u>, 460 Mass. 484 (2011) that such fees violate public policy.[3]  <u>See id.</u> at 497-98.

Second, an employment relationship under Massachusetts law requires a contract (either express or implied) between the putative employer and the putative employee.  <u>See</u> <u>Gasior v. Massachusetts General Hospital</u>, 446 Mass. 645, 649-53 (2006); 455 C.M.R. 200 (regulations of the director of the Massachusetts Department of Labor, defining "employer" as "[a]n individual, corporation, partnership or other entity, including any agent thereof, that <u>engages</u> the services of an employee or employees for wages, remuneration or other compensation") (emphasis added).[4]

---

[2]   To the extent such a dispute does exist, it must be resolved at trial.

[3]   The only exception would be "to the extent such fees are paid back to Coverall out of wages earned from Coverall . . . ."  <u>Awuah</u>, 460 Mass. at 498.  This is no evidence in the record that this occurred.

[4]   Massachusetts does not recognize a concept of "indirect employment."  <u>Baldwin v. Pilgrim Nuclear Power Station</u>, 529 F. Supp. 2d 204, 209-11 (D. Mass. 2008) (construing claims under M.G.L. c.151B of employee of construction contractor against construction site's owner; owner not liable to contractor's employee unless owner is "de facto employer," having control "'over an <u>important aspect</u> of the employee's employment'") (quoting <u>Bradley v. City of Lynn</u>, 403 F. Supp. 2d 161, 169 (2005) (emphasis in <u>Baldwin</u>)).

As set forth above, it is undisputed that there was no contract between any of the MM&J

Plaintiffs and Coverall during the disputed period.

### C.      Coverall Is Not Contractually Liable For MM&J's Liabilities.

Plaintiffs' misread the Repurchase Agreement in claiming that Coverall assumed

MM&J's liabilities (if any) for the period prior to the acquisition.  That agreement states that,

with certain exceptions not relevant here,[5]  "the Vendor [MM&J] shall pay all liabilities of the

Vendor arising through July 31, 1995, including, without limitation . . . liability for any claims

made by employees of the Vendor."   Plaintiffs' Brief Ex. 8, § 2(b) (emphasis added).

Accordingly, Coverall has no contractual duty to pay any claims that the MM&J Plaintiffs may

have against MM&J, and the Court should enter judgments in the following amounts:[6]

| Class Member | Amount for Judgment |
|---|---|
| Carlos Caceda | $  36,056.61 |
| Ann and Joe Doherty | $    1,181.59 |
| Bruce Fowler | $  14,401.79 |
| Violet Francis | $       453.09 |
| Manoel Freire Nunes and Maria/Valeria Bergamini | $  14,015.91 |
| Paul Gesin | $       276.86 |
| Anthony Graffeo | $  18,377.82 |
| Robert Lamarche | $  37,801.80 |
| Claudio Trinidade and Neuza Reis | $       683.19 |
| Paul Vorrias | $  10,678.78 |

## II.      CLASS MEMBERS ARE NOT ENTITLED TO PRE-JUDGMENT INTEREST FOR DAMAGES ARISING AFTER JULY 12, 2008.

On July 12, 2008, G.L. c. 149, § 150 was amended to read:  "An employee so aggrieved

who prevails in such an action *shall be awarded treble damages, as liquidated damages, for any*

*lost wages and other benefits* and shall also be awarded the costs of the litigation and reasonable

---

[5]     Those exceptions (referred to the Repurchase Agreement as "Assumed Liabilities") were certain payables, lines of credit, and loans.  See id. § 1(d).

[6]     Coverall's request that the Court enter judgment in these amounts is without waiver of its right to appeal this Court's prior rulings.

attorneys' fees" (emphasis supplied).  See also Rosnov v. Molloy, 460 Mass. 474, 478-79 (2011)

(noting amendment).  The amended statute's declaration that "treble damages" under § 150

constitute "liquated damages" is significant because "an FLSA plaintiff cannot recover both

prejudgment interest and liquidated damages because liquidated damages serve as 'compensation

for delay in payment of sums due under the Act.'" Lupien v. City of Marlborough, 387 F.3d 83,

90 (1st Cir. 2004), quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715-16 (1945); see also

Brock v. Superior Care, Inc., 840 F.2d 1054, 1064-65 (2d Cir. 1988) ("It is well settled that in an

action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in

addition to liquidated damages.").

     The same result should apply here.  As recently as last summer, in this case, the SJC

looked to the FLSA for guidance in interpreting the Massachusetts Wage Act.  See Awuah v.

Coverall North America, Inc., 460 Mass. 484, 497 n.22 (2011).  This Court has observed that the

FLSA and many of the Massachusetts wage and hours laws are "virtually identical."  Cash v.

Cycle Craft Co., Inc., 482 F. Supp. 2d 133, 140 (D. Mass.) (Young, J.), aff'd, 508 F.3d 680 (1st

Cir. 2007).  Fontaine v. Ebtec Corp., 415 Mass. 309 (1993), is not to the contrary.  There the SJC

held that an award of prejudgment interest on an age discrimination claim under G.L. c. 151B,

§ 4 did not duplicate a liquidated damages award made under the federal Age Discrimination and

Employment Act ("ADEA").  See id. at 327.  However, "[l]iquidated damages under the ADEA

are different in kind from those available under the FLSA.  ADEA liquidated damages awards

punish and deter violators, while FLSA liquidated damages merely compensate for damages that

would be difficult to calculate." Lindsey v. Am. Cast Iron Pipe Co., 810 F.2d 1094, 1102 (11th

Cir. 1987); see also Fontaine, 415 Mass. at 327 n. 15 (citing Lindsey as precedent).  Given that

the SJC typically interprets the Wage Act in parallel with the FLSA, see, e.g., Awuah, 460 Mass.

at 497 n.22, there is no justification for applying <u>Fontaine's</u> holding concerning age-discrimination damages to a liquidated damages award under § 150.

With regard to Plaintiffs' claim that a strict reading of G.L. c. 231, § 6C's text requires this Court to award pre-judgment interest regardless of whether that interest is duplicative, <u>see</u> Plaintiffs' Brief at 8, 10, the SJC has never interpreted § 6C in so rigid a fashion.  In fact, in <u>Sterilite Corp. v. Cont'l Cas. Co.</u>, 397 Mass. 837 (1986), the SJC rejected an equally literal interpretation of § 6C by the Appeals Court.  <u>Id.</u> at 838-41.  The SJC held instead that § 6C requires "[a]n award of interest" only "so that a person wrongfully deprived of the use of money should be made whole for his loss."  <u>Id.</u> at 841.  That rationale does not apply to Wage Act cases after July 2008.  The legislature has determined that a mandatory liquidated damages award will make Wage Act plaintiffs whole.  <u>See, e.g.</u>, <u>Brooklyn Sav. Bank</u>, 324 U.S. at 715 ("Allowance of interest on minimum wages and liquidated damages recoverable under Section 16(b) [of the FLSA] tends to produce the undesirable result of allowing interest on interest.").  Accordingly, the Court should decline to award pre-judgment interest on damages incurred by the class after July 12, 2008.

EAST\48541126.1
221287-001035

## CONCLUSION

For these reasons the Court should exclude from its judgment (1) fees paid by class members prior to August 1, 1995, and (2) pre-judgment interest for damages incurred after July 12, 2008.

**COVERALL NORTH AMERICA, INC.**

By its attorneys,

/s/  Matthew Iverson
Michael D. Vhay (BBO No. 566444)
*michael.vhay@dlapiper.com*
Matthew J. Iverson (BBO No. 653880)
*matthew.iverson@dlapiper.com*
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000 (*telephone*)

Norman M. Leon
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL  60601
Dated: May 25, 2012                            (312) 368-4000 (*telephone*)

### Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants this same day.

 /s/ Matthew J. Iverson

12