UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PIUS AWUAH, et al., and all others similarly situated,<br><br>               Plaintiffs,<br><br>        v.<br><br>COVERALL NORTH AMERICA, INC.,<br><br>               Defendant. | Case No. 07-10287-WGY |

**COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION OF ENFORCEABILITY OF THE PARTIES'
ARBITRATION AGREEMENTS IN LIGHT OF THE SUPREME JUDICIAL COURT'S
DECISION IN _CROCKER V. TOWNSEND OIL CO._**

Plaintiffs' latest motion for reconsideration of this Court's determination that those franchisees who have agreed to arbitrate their disputes with Coverall cannot be members of the class is as flawed as its many predecessors.  Even if Plaintiffs' speculation were correct (and the Supreme Judicial Court actually had decided to preclude the arbitration of Wage Act claims unless the standards set forth in _Warfield v. Best Israel Deaconess Medical Ctr._, 454 Mass. 390 (2009) are met) their motion must be denied because:

- The First Circuit has repeatedly made clear that all questions regarding the scope, validity or existence of the arbitration agreements must be resolved by an arbitrator;

- Questions regarding the scope of the arbitration clauses must be resolved by reference to the federal law that favors arbitrability, and not a state-law principle that restricts arbitrability;

- The language in the Coverall arbitration agreements is sufficient to encompass the Wage Act claims;

- The Federal Arbitration Act ("FAA") would preempt any state-law principle that imposes barriers to the arbitrability of Wage Act; and

- Over 100 Coverall franchise owners have filed demands for arbitration. Those owners have waived any argument that they are not required to arbitrate their Wage Act claims.

For these and the additional reasons set forth below, Plaintiffs' motion for reconsideration should be denied.

## I.     All Questions Regarding the Scope of the Arbitration Agreements Must Be Resolved by an Arbitrator

In *Awuah v. Coverall North America, Inc.,* 554 F.3d 7 (1st Cir. 2009) ("*Awuah I*"), the First Circuit held that disputes regarding the enforceability or validity of the same arbitration clauses found in the same Franchise Agreements at issue in Plaintiffs' current motion are clearly and unmistakably questions for the arbitrator. *Awuah I*, 554 F.3d at 11-12.  That is the case, the Court held, because the Franchise Agreements' arbitration clauses incorporate the Rules of the American Arbitration Association ("AAA"), which grant the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, **scope** or validity of the arbitration agreement." *Id*. at 11 (emphasis added).  Holding that "[t]his language is about as 'clear and unmistakable' as language can get," the appellate court held that "the standards for referring arbitrability questions to arbitration have been met." *Awuah I*, 554 F.3d at 12.[1]

Whether characterized as an "enforceability" question (as Plaintiffs erroneously label it) or a scope question (as it is properly labeled), the arbitration agreements make clear that questions regarding their validity and scope must be submitted to arbitration.  Therefore, while wrong, Plaintiffs' assertion that the arbitration agreements do not encompass their Wage Act claims must be decided by an arbitrator.

---

[1]      The First Circuit affirmed this ruling less than two months ago, when it confirmed that any claim that the arbitration agreements were unconscionable needed to be resolved by an arbitrator. *Awuah v. Coverall North America, Inc.*, -- F.3d --, 2012 WL 6699813, at *6 (1st Cir. Dec. 27, 2012).

## II.   The Arbitration Agreements Encompass Plaintiffs' Wage Act Claims

Despite the extremely broad wording of the parties' arbitration agreements, Plaintiffs assert that their Wage Act claims should not be sent to arbitration because, they speculate, "there can be no question" that the Supreme Judicial Court "intended its holding from *Warfield* regarding arbitration clauses to extend to Wage Act claims as well." (Motion at 3.)  Plaintiffs are wrong for at least two reasons.

### A.   Neither *Warfield* nor *Crocker* Applies To This Case Because The Scope Of The Parties' Arbitration Agreements Is Governed Not By State Law, But By The FAA; Under Settled Federal Law, Plaintiffs' Arbitration Agreements Encompass Their Wage Act Claims.

First, even if Plaintiffs' contention constituted an accurate description of Massachusetts law – and as discussed below it does not – that law has no bearing on the arbitrability of their Wage Act claims.  That is because, as the United States Supreme Court has repeatedly made clear, when an arbitration agreement falls within the scope of the FAA, courts are to determine whether parties have agreed to arbitrate a particular dispute by applying **federal law**, not state law.

In *Warfield*, the parties entered into an arbitration agreement which required them to submit "[a]ny claim, controversy or dispute arising out of or in connection with" the parties' employment agreement "or its negotiations" to arbitration.  *Warfield*, 454 Mass. at 392.  While it acknowledged that this language was "broad" and further, that it invoked the FAA's "presumption in favor of arbitration," the Supreme Judicial Court nevertheless held that "[t]he countervailing public policy reflected in G.L. c. 151B of protecting against employment discrimination and offering employees comprehensive administrative and judicial remedies is so strong that … it calls for distinct treatment." *Id*. at 400 n.16.  This distinct treatment, the SJC concluded, required parties that sought to provide for arbitration of statutory discrimination

claims to "state clearly and specifically that such claims are covered by the contract's arbitration clause." *Id*. at 400.[2]

Even if it involved claims under G.L. c. 151B (and it does not), *Warfield* has no bearing whatsoever on this case. *Warfield* determined that, under Massachusetts law, some additional showing was required before an arbitration clause would be deemed to encompass statutory discrimination claims. The arbitration agreement at issue in this case, however, is governed by the FAA.[3] When, as here, an arbitration agreement is governed by the FAA, **its scope is to be assessed by reference to federal law, not state law**.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Indeed, the 'primary

---

[2]    In support of its assertion that the federal policy favoring arbitration does not require arbitration where an employee does not know she has waived her right to pursue statutory remedies in court, the SJC cited the First Circuit's opinion in *Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 559 (1st Cir. 2005) (holding that the ADA required some minimal level of notice that claims under that statute would be subject to arbitration). *Warfield*, 454 Mass. at 400 n.15. In *Awuah*, -- F.3d --, 2012 WL 6699813, at *8, the First Circuit re-affirmed that the *Campbell* holding was limited to "purported waiver[s] of the right to litigate ADA [Americans with Disabilities Act] claims." Despite its earlier reliance on *Campbell*, the SJC came to the exact same conclusion as the First Circuit one year before the SJC issued *Warfield*. *See St. Fleur v. WPI Cable Sys./Mutron,* 450 Mass. 345 (2008).

[3]    The FAA applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). The Franchise Agreements in this case were entered into between Massachusetts franchise owners and Coverall, a Delaware corporation with its principal place of business in Florida. Because the Franchise Agreements call for a continuous stream of products and funds to be exchanged between diverse parties, the agreements plainly evidence "commerce" among the several states for purposes of the FAA. *See KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999) (franchise agreements between Massachusetts franchise owner and Illinois franchisor "implicate interstate commerce, thus subjecting them to the reach of the FAA"). If that were not enough, Coverall and those franchise owners who agreed to arbitrate further agreed that "[a]rbitration shall be subject to the Federal Arbitration Act."

purpose' of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Accordingly, while "the first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute, a "court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), (quoting *Moses H. Cone*, 460 U.S. at 24); *accord Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001) ("federal law applies in questions regarding the construction and enforcement of an arbitration clause, even in those cases in which the district court's jurisdiction is based on diversity of citizenship"); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir. 1978) (same). State law cannot override this law, as the Third Circuit explained in *Becker Autoradio*:

> For example, consider the case where a contract containing an arbitration clause provides that the law of state X shall govern the agreement. Assume that the law of state X will not enforce, or gives very limited effect to arbitration clauses, such that under X law the dispute would not be submitted to arbitration. If one party sues on the contract in federal court, and the contract involves "commerce", the federal district court, in deciding a motion to stay the proceedings and compel arbitration under 9 U.S.C. §3, would look to **federal law** in determining the scope of the arbitration clause.

*Becker Autoradio*, 585 F.2d at 43 n.8 (emphasis added).

The First Circuit came to the same conclusion in *Raytheon Co. v. Automated Business Sys., Inc.*, 882 F.2d 6 (1989), where it addressed whether a claim for punitive damages fell within the scope of an arbitration agreement. The resolution of that question, the Court held, depended not on state law, but on the federal law of arbitrability:

> [T]he contract's choice-of-law provision does not require us to determine the punitive damages question by looking to the law of the chosen forum [ ]. Rather,

we, like [a number of other courts], look to federal common law for our answer. We agree with these other courts that both the parties' adoption of the [American Arbitration Association] rules ... [citations omitted] and the general canon that federal law governs the construction of arbitration agreements [citations omitted] support this conclusion. … [Where] the issue in the case [ ] focuses precisely on the scope of the arbitration agreement ... [w]e are obliged to apply the settled *federal* rule that due regard must be given to the *federal* policy favoring arbitration, and ambiguities as in favor of arbitration.

*Id.* at 11 n.5 (internal quotations omitted; emphasis in original).

In stark contrast to *Warfield* – which construed an arbitration agreement narrowly – the federal law of arbitrability establishes that "'any doubts concerning the scope of arbitrable issues should be resolved **in favor of** arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 n.8 (1995) (quoting *Moses H. Cone*, 460 U.S. at 24-25) (emphasis added); *accord AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The fact that statutory claims may be at issue has no bearing on this principle. "There is no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights." *Mitsubishi*, 473 U.S. at 626. In fact, the Supreme Court made clear that the FAA "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Id.*; *accord Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).[4]

In *Mitsubishi*, the defendant-distributor (Soler) filed counterclaims against Mitsubishi for violation of various federal and Puerto Rican statutes. 473 U.S. at 619-20. In opposition to

---

[4]  At its core, *Warfield* reflects the view that the arbitral forum is a less adequate forum for the resolution of certain statutory claims in the employer/employee setting. The United States Supreme Court, however, has been "clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context." *Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001).

Mitsubishi's motion to compel arbitration of these claims, Soler asserted that the parties' arbitration agreement could not be read to encompass its statutory counterclaims.  Soler did not premise this argument on the wording of the arbitration agreement, which encompassed "[a]ll disputes, controversies or differences which may arise between [Mitsubishi] and [Soler] out of or in relation to … this Agreement or for the breach thereof …. ."  *Id*. at 617.  Instead, advancing the very same argument as Plaintiffs, Soler argued that "a court may not construe an arbitration agreement to encompass claims arising out of statutes designed to protect a class to which the party resisting arbitration belongs unless [that party] has expressly agreed to arbitrate those claims."  *Id*. at 624-25 (internal quotations omitted).  Because the parties' arbitration agreement did not mention the statutes at issue "or statutes in general," Soler argued that the agreement could not be read to require arbitration of statutory claims.  *Id*. at 625.

The Supreme Court rejected this argument.  After reiterating that federal law determines the scope of an arbitration agreement that is subject to the FAA  and that, under federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," the Court held that there was "no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights."  *Id*. at 626.  There was, the Court held, "**no basis**" for reversing the presumption and "disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability."  *Id*. at 627 (emphasis added).

Plaintiffs never contend (nor could they) that the plain terms of the arbitration agreements do not encompass claims under the Wage Act.  The arbitration clauses are drafted in the broadest of terms, requiring the submission to arbitration of all controversies, disputes or claims between Coverall and franchise owners arising out of or related to the Franchise Agreement or the

relationship of the parties.  Plaintiffs' Wage Act claims – which seek a refund of monies paid or deducted under the Franchise Agreement based on Coverall's alleged "misclassification" of Plaintiffs – plainly arise out of and relate to the Franchise Agreement and the relationship between the parties.  Accordingly, the parties' arbitration agreements encompass those Wage Act claims.

> **B.**   **Even If Construed Under Massachusetts Law, Plaintiffs' Arbitration Agreements Encompass Their Wage Act Claims**

Second, even if *Warfield* applied, it would not excuse Plaintiffs from arbitrating their Wage Act claims.  In *Warfield*, the SJC made clear that the new "interpretive rule" it announced did not apply to all statutory claims.  *Id.* at 400 n.16 ("Our conclusion in this case should not be understood to suggest that parties entering into an employment (or any other) contract must specifically list every possible statutory claim that might arise or else the claim will not be covered by an otherwise 'broad' arbitration clause.").  Rather, its conclusion was specifically limited to claims for employment discrimination under G.L. c. 151B.  *Id.*  It should not be interpreted to reach claims under the Wage Act, as one appellate court made clear subsequent to *Warfield*.

In *Dixon v. Perry & Slesnick, P.C.*, 75 Mass. App. Ct. 271 (2009), the appellate court addressed whether an arbitration agreement that required the arbitration of "all disagreements and controversies arising with respect to this Agreement, or with respect to its application to circumstances not clearly set forth in this Agreement," obligated the plaintiff to submit her Wage Act claims to arbitration.  *Id.* at 271.  Distinguishing *Warfield*, the appellate court observed that the SJC had concluded in *Warfield* that the language of the arbitration agreement in that case suggested that the parties had intended to arbitrate only those claims arising from the specific terms of their agreement.  Because there was no contractual term dealing with discrimination, the

plaintiff was not obligated to submit discrimination claims to arbitration. *Id*. at 277. In contrast

to *Warfield*, the plaintiff's claims for unpaid wages in *Dixon* arose "directly from a term of the

agreement." *Id*. The court therefore concluded that, consistent with the limited nature of

*Warfield's* holding, the arbitration agreement encompassed the plaintiff's claims under the Wage

Act, even though the arbitration agreement did not specifically mention that statute. *Id*. at 278.

The claims in this case relate directly to the monies paid or withheld under the Franchise

Agreements and the relationship of the parties. Therefore, under *Dixon*, the language in the

arbitration agreements is sufficiently specific to require arbitration of Plaintiffs' Wage Act

claims. *See ICPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 962 F.2d 77, 91 (1st Cir.

1992) ("Where an intermediate appellate court rests its considered judgment upon the rule of law

which it announces, that is a datum for ascertaining state law which is not to be disregarded by a

federal court unless it is convinced by other persuasive data that the highest court of the state

would decide otherwise.") (quoting *West v. AT & T Co.*, 311 U.S. 223, 237 (1940)).

**III.     If *Warfield* Applies And Requires Anything More Than *Dixon*, The Principle It Stands For Must Fall, As That Principle Violates, And Is Therefore Preempted By, The FAA**

Even if *Warfield* were applicable, the test it purportedly devised for determining whether

statutory claims are encompassed by an arbitration agreement is preempted by the FAA. "The

FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to

occupy the entire field of arbitration." *Volt*, 489 U.S. at 477. "But even when Congress has not

completely displaced state regulation in an area, state law may nonetheless be pre-empted to the

extent that it actually conflicts with federal law - that is, to the extent that it 'stands as an obstacle

to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id*.

(quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). As construed by Plaintiffs, *Warfield*

presents just such an obstacle.

**A.   As Construed By Plaintffs, *Warfield* Applies Only To The Arbitration Of Certain Types Of Claims**

At first, to the extent Massachusetts law is construed to require an arbitration agreement to mention the word "statute" or provide any special notice before it is deemed to encompass statutory claims, it runs afoul of the plain terms of § 2 of the FAA, which provides the sole grounds upon which a state may seek to limit the enforceability of arbitration agreements. *See Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Section 2 of the FAA provides that "a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt*, 489 U.S. at 474 (quoting 9 U.S.C. § 2). "Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability and enforceability of contracts generally." *Perry*, 482 U.S. at 492 n.9. "A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of §2." *Id*; *accord Southland*, 465 U.S. at 16-17. The decisions of the Supreme Court and the First Circuit make clear that the test for arbitrability set out in *Warfield* (as construed by Plaintiffs) does just that.

In *Southland*, 465 U.S. at 10- 11, a franchisee of a 7-Eleven convenience store filed a class action against Southland Corp. ("Southland"), the owner and franchisor of 7-Eleven convenience stores, asserting, in addition to various common-law claims, a count alleging violations of the disclosure requirements of the California Franchise Investment Law. Cal. Corp. Code § 31000 *et seq*. Noting that the parties' Franchise Agreement required arbitration of "[a]ny controversy or claim arising out of or relating to [the Franchise Agreement] or the breach thereof," Southland moved pursuant to § 4 of the FAA to compel arbitration of all claims

asserted by the putative class.  After the California Court of Appeals (reversing the trial court)

interpreted the arbitration clause to require arbitration of all claims, including those arising under

the California Franchise Investment Law, the California Supreme Court reversed.  In so doing,

the California Supreme Court relied on a provision of the California Franchise Investment Law

that voided any contractual "condition, stipulation or provision purporting to bind any person

acquiring any franchise to waive compliance with any provision of this law or any rule or order

hereunder . . . ."  Cal. Corp. Code Ann. § 31512.  This provision, the California Supreme Court

ruled, "require[d] judicial consideration of claims brought under the [California Franchise

Investment Law] . . . ."  *Southland*, 465 U.S. at 5.  The California Supreme Court also held that

interpreting the statute in this manner did not contravene § 2 of the FAA.  *Keating v. Superior*

*Court of Alameda County*, 645 P.2d 1192 (Cal. 1982).  The United States Supreme Court

disagreed.

Reciting the pro-arbitration policies underlying the FAA and the limited defenses

available under § 2 thereof, the Court declared that there are "only two limitations on the

enforceability of arbitration provisions governed by the Federal Arbitration Act":

> they must be part of a written maritime contract or a contract "evidencing a
> transaction involving commerce" and such clauses may be revoked upon
> "grounds as exist at law or in equity for the revocation of any contract."

*Southland*, 465 U.S. at 10-11 (quoting 9 U.S.C. § 2).  The Court saw "nothing in the Act

indicating that the broad principle of enforceability is subject to *any* additional limitations under

state law."  *Southland*, 465 U.S. at 11 (emphasis added).  Thus, while it did not "single out"

arbitration agreements for special treatment (indeed, the statute nowhere mentioned arbitration),

and while it plainly applied to a wide range of contract provisions (beyond arbitration clauses),

the California statute constituted just such an additional limitation.  The United States Supreme

Court accordingly held that "31512 of the California Franchise Investment Law violate[d] the Supremacy Clause." *Southland*, 465 U.S. at 16.

That *Southland's* reasoning dooms the test that Plaintiffs urge this Court to apply is made all the more plain by Chief Justice Burger's response in *Southland* to Justice Stevens' dissent – a dissent that argued, consistent with Plaintiffs' argument, that § 2 of the FAA left "room for the implementation of certain substantive state policies [such as that expressed by the California Franchise Investment Law] that would be undermined by enforcing certain categories of arbitration clauses." *Southland*, 465 U.S. at 18 (Stevens, J., dissenting). Rejecting this argument, and more specifically the principle that "a state policy of providing special protection for franchisees [could] be recognized without impairing the basic purposes of the federal statute," the Court summarized the import of § 2 as follows:

> We agree . . . that a party may assert general contract defenses such as fraud to avoid enforcement of an arbitration agreement. *We conclude, however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists in law or in equity "for the revocation of <u>any</u> contract" but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law.*

*Southland*, 465 U.S. at 16 n.11 (emphasis added; underscore in original).

Plaintiffs' argument (relegated to a footnote) that the test set out in *Warfield* is enforceable because it "does not discriminate against arbitration" is not only wrong, it misses the point. (Motion at 4 n.4.) Putting aside that *Warfield* takes its meaning precisely from the fact that a contract to arbitrate is at issue – the very thing the Supreme Court has held is impermissible – *Warfield*'s supposed barrier to arbitrating discrimination claims (which Plaintiffs seek to extend to Wage Act claims) flies in the face of the purpose of § 2.

To be enforceable under § 2, a defense to arbitrability must be generally applicable. *Warfield*'s supposed rule does not apply to all contracts. It applies *only* to one type of provision

(an arbitration clause) that seeks to apply to one type of claim (a discrimination claim under G.L. c. 151B). Such singling out is impermissible. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) (because Montana law "condition[ed] the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally," that law was impermissible under the FAA). Indeed, the First Circuit just made clear that even if Massachusetts applied some heightened notice standard for the arbitration of certain claims – and that is exactly what Plaintiffs claim *Warfield* does – that standard would be preempted by the FAA:

> Even if the district court had identified a principle of state law that imposed a special notice requirement before parties such as these could enter into an arbitration agreement, as it did not, such a principle would be preempted by the FAA.

*Awuah*, -- F.3d --, 2012 WL 6699813 at *7 .

The fact that *Warfield's* test is supposedly not limited to arbitration agreements is irrelevant. In *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42 (1st Cir. 1998), for example, the First Circuit addressed the enforceability of a provision of a Rhode Island statute that rendered void any provision in a franchise agreement that restricted venue to a forum outside Rhode Island for claims arising under the act. *Id*. at 50-51. While the statute did not apply only to arbitration agreements, the First Circuit concluded that it was preempted by the FAA:

> Because th[e] proscription [in the Rhode Island statute] limits the statute's application to one type of provision, venue clauses, in one type of agreement, franchise agreements, the statute does not apply to *any* contract. Writ simple, because [the statute] is not a generally applicable contract defense, it is, if applied to arbitration agreements, preempted by § 2 of the FAA.

*KKW*, 184 F.3d at 51 (emphasis in original); *accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 723 F.2d 155 (1st Cir. 1983), *aff'd in part, rev'd in part on other grounds*, 473

U.S. 614 (1985) (same as to Puerto Rico statute); *see also Securities Industry Ass'n v. Connolly*, 883 F.2d 1114 (1st Cir. 1989) (because the "words of 9 U.S.C. § 2 must be ceded their full import," no state may pass legislation that impacts arbitration if that legislation does not apply to all contracts).

As construed by Plaintiffs, *Warfield* "takes its meaning precisely from the fact that a contract to arbitrate is at issue" (*Southland*, 482 U.S. at 492 n.9) and does not apply to every contract.  For these reasons, even if the test set out in *Warfield* applied to Wage Act claims, that test is preempted by § 2 of the FAA.

**B.      As Construed By Plaintiffs, *Warfield* Impermissibly Reverses The Presumption Favoring Arbitrability**

Plaintiffs' reading of *Warfield* also conflicts with federal standards governing determinations of the scope of arbitration agreements.  As noted above, when a court interprets provisions in an agreement "covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved **in favor of arbitration**." *Mastrobuono*, 514 U.S. at 62 (quoting *Volt*, 489 U.S. at 476).  In fact, "[a]ny inquiry into the scope of an arbitration clause must necessarily begin with the presumption that arbitration applies." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir. 1998); *accord AT&T*, 475 U.S. at 649.  If *Warfield* truly holds that certain statutory claims will not be arbitrable unless they are specifically referenced, *Warfield* impermissibly reverses the federal presumption. *Mitsubishi*, 473 U.S. at 627.  *Warfield*, as such, "undercut[s] the enforceability of arbitration agreements'" covered by the FAA.  *Southland*, 465 U.S. at 16.  It is therefore preempted. *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 80 (3d Cir. 1985) (the FAA "preempts state law that might 'undercut the enforceability of arbitration agreements'") (quoting *Southland*, 465 U.S. at 16); *KKW Enterprises, Inc.*, 184 F.3d

at 50 (FAA preempts Rhode Island statute that purported to override forum selection clause in arbitration agreement because statute "present[ed] an obstacle to the achievement of the full purposes and ends which Congress set out to accomplish in enacting the FAA – that courts … [will] enforce privately negotiated agreements to arbitrate … in accordance with their terms.") (internal quotations omitted).

**IV.     Those Franchise Owners Who Have Filed Demands For Arbitration Have Waived Any Right To Contest The Arbitrability Of Their Wage Act Claims**

Plaintiffs' counsel began filing demands for arbitration with the AAA in December 2011. To date, over 100 such demands have been filed.  In connection with the submission of those demands, Plaintiffs insisted on the application of the AAA's Employment Arbitration Rules. The AAA agreed to apply those rules.  Coverall, as a result, has paid all of the filing fees associated with Plaintiffs' claims, save for certain minimal payments ($250 or $750, depending on the number of arbitrators) that the AAA required from the claimants.  To date, the amount of filing fees paid by Coverall to the AAA well exceeds $75,000.

The First Circuit has "repeatedly held that a party may, by engaging in litigation, implicitly waive its contractual right to arbitrate." *Navieros Inter-Americanos v. M/V Vasilia Express*, 120 F.3d 304, 316 (1st Cir. 1997); *accord Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir. 2001).  There is no principled (or permissible) reason for applying a different test to arbitration, particularly given the extensive prejudice Coverall would suffer were Plaintiffs permitted to now abandon all of the arbitrations they filed.  Therefore, even if this Court decides to address the merits of Plaintiffs' current motion, it should conclude that those franchise owners who have filed demands for arbitration have waived the right to contest the arbitrability of their claims.

**V.      If Applicable to Wage Act Claims, the Test Set Out in *Warfield* Should Not Be Applied Retroactively**

For the reasons set forth in Coverall's concurrently filed opposition to Plaintiffs' motion for reconsideration on the scope of releases, if the "interpretive rule" set out in *Warfield* is deemed applicable to Wage Act claims, that rule should not be applied retroactively.  Rather than repeat those arguments, Coverall incorporates them by reference.

**CONCLUSION**

For these reasons, this Court should deny Plaintiffs' Motion to add the Transfer Owners to the class.

COVERALL NORTH AMERICA, INC.

By its attorneys,

 /s/ Michael D. Vhay
Michael D. Vhay (BBO No. 566444)
*michael.vhay@dlapiper.com*
Matthew Iverson (BBO No. 653880)
*matthew.iverson@dlapiper.com*
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

Norman M. Leon
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL  60601
(312) 368-4000

Dated:  January 25, 2013

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants (Harold L. Lichten (hlichten@llrlaw.com), Shannon Liss-Riordan (sliss@llrlaw.com), Hillary A. Schwab (hschwab@llrlaw.com), John Matthew Simon (jsimon@scmllp.com), and Claret Vargas (cvargas@llrlaw.com)) as identified on the Notice of Electronic Filing ("NEF").


 /s/ Michael D. Vhay
Michael D. Vhay