# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
PIUS AWUAH, et al., and all others      )
similarly situated,                     )
                                        )
                    Plaintiffs,         )
                                        )
          v.                            )          Civil Action No. 07-10287-WGY
                                        )
COVERALL NORTH AMERICA, INC.,           )
                                        )
                    Defendant.          )
_____ )

## MEMORANDUM IN SUPPORT OF COVERALL NORTH AMERICA, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S GRANT OF PLAINTIFFS' MOTION FOR RECONSIDERATION ON ENFORCEABILITY OF RELEASES SIGNED BY CLEANING WORKERS

For the reasons stated in Coverall North America, Inc.'s ("Coverall") prior briefs, this Court's retroactive application of the holding in *Crocker v. Townsend Oil Co.*, 464 Mass. 1 (2012), is unwarranted under Massachusetts law. There is yet another reason why this Court should not apply *Crocker* retroactively: doing so violates the Takings Clause of the Fifth Amendment of the United States Constitution, as applied to the States via the Fourteenth Amendment.

## <u>Argument</u>

The Takings Clause states that "nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. The Supreme Court has interpreted the Clause as including "regulatory takings." A regulatory taking occurs when "some significant restriction is placed upon an owner's use of his property for which 'justice and fairness' require that compensation be given." *Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 33 (1st Cir. 2002) (en banc). Recent Supreme Court jurisprudence recognizes that judicial decisions can result in a regulatory

taking.  In *Stop the Beach Renourishment, Inc., v. Fla. Dep't of Envtl. Prot.,* 130 S. Ct. 2593

(2010), a four-justice plurality concluded that a judicial decision constitutes a taking where, by

retroactive application of a decision, a court declares that a once-established right no longer

exists.  *See id.* at 2610.

> To evaluate whether a regulatory taking has occurred, judicial or otherwise, courts apply

a three-part test: (1) whether the government action interferes with reasonable investment-backed

expectations; (2) the economic impact of the regulation on the claimant; and (3) the character of

the government action.  *Id.,* citing *Penn Central Transportation Co. v. New York City,* 438 U.S.

104, 124 (1978).  Any one factor may be dispositive. *See Philip Morris,* 312 F.3d at 35-36.

Analysis of each factor demonstrates that retroactive application of *Crocker* to the Plaintiffs'

releases without providing just compensation to Coverall results in an unconstitutional taking.

I.     **Retroactive application of *Crocker* interferes with Coverall's reasonable investment-backed expectations.**

   A.     **Coverall has a protected property interest in its contracts containing releases.**

State law defines the property interests that the Takings Clause protects.  *See Stop the

Beach*, 130 S. Ct. at 2597, citing *Phillips v. Washington Legal Foundation*, 524 US. 156, 164

(1998); *Philip Morris*, 312 F.3d at 31-33.  Under Massachusetts law, a contractual right is a

property interest protected by the Fifth and Fourteenth Amendments.  *See Dimino v. Secretary of

the Commonwealth*, 427 Mass. 704 (1998); *see also Lynch v. United States,* 292 U.S. 571, 579

(1934) (contracts are a form of property, regardless of obligor).

In *Dimino,* the court held that the Fifth Amendment protected bondholders' contractual

rights in toll revenues where those revenues secured repayment of their bonds.  *Id.* at 709.  The

court held that a citizens' ballot initiative that proposed to eliminate the tolls would, if approved,

seize the bondholders' private property.  *Dimino,* 427 Mass. at 709-711.  Much like Coverall's

releases, the value of the bondholders' security interest in *Dimino* lay in its protection from a

future event: the bondholders' security protected them from a default on payments on their

bonds.  By analogy, Plaintiffs' releases protected Coverall from Wage Act and other claims if

Plaintiffs brought such claims.  That contractual protection constitutes "private property" for

purposes of the Takings Clause of the Fifth Amendment.

      **B.**      **Coverall has a reasonable investment-backed expectation that Plaintiffs'
releases included a release of Wage Act claims.**

     A deprivation of contractual rights constitutes an interference with investment-backed

expectations.  *See Hoffman v. City of Warwick,* 909 F.2d 608, 617-18 (1st Cir. 1990).  In

assessing whether an investment-backed expectation is reasonable for purposes of the Takings

Clause, a court looks for "more than a unilateral expectation or an abstract need."  *Ruckelshaus*

*v. Monsanto,* 467 U.S. 986, 1006 (1984).  At the time Plaintiffs signed their release agreements,

"it [was the Massachusetts courts'] policy that a general release of all demands embraces

everything included within its terms."  *Crocker,* 464 Mass. at 12 (internal citations omitted).

"Broad wording in the releases operates to settle all other unrelated matters, even if they were

not specifically in the parties' minds at the time the release was executed."  *Id.*

     A judicial taking occurs when a court declares that what was once an established private

property right no longer exists.  *See Stop the Beach,* 130 S. Ct. at 2610.  Despite acknowledging

prior Massachusetts cases that enforced general releases as to *all* claims, the Supreme Judicial

Court in *Crocker* held that a settlement or contract termination agreement by an employee that

includes a general release will be enforceable as to the employee's Wage Act claims only if such

an agreement is stated in clear and unmistakable terms.  *Id.* at 14.  In other words, the court in

*Crocker* held that a once-established private property right, the right to enforce a general release

as to all of a party's claims, no longer existed as to Wage Act claims.  This Court's further decision to apply *Crocker* retroactively destroyed Coverall's particular entitlement to a release of Plaintiffs' Wage Act claims.

"Insofar as courts merely clarify and elaborate property entitlements that were previously unclear, they cannot be said to have taken an established property right."  *Stop the Beach*, 130 S. Ct. at 2609.  That is not the case here.  The *Crocker* court acknowledged that a general release previously included everything within its terms.  *See Crocker*, 464 Mass. at 12.  Excluding Wage Act claims from a general release (and then applying such a decision retroactively) does not clarify the law, it changes it.  *See* Coverall North America, Inc.'s Opposition to Plaintiff's Motion for Reconsideration on Enforceability of Class Members' "Ordinary Course" Releases, 2 ("Coverall's Opposition," Docket No. 547).

In *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), the Pennsylvania Coal Company had sold to Mahon's predecessor in interest the surface rights to a parcel of real estate. The Company received cash consideration for the sale, but also reserved the right to mine coal beneath the parcel.  The deed conveying the parcel stated that the grantee assumed all risks associated with mining out the coal beneath the parcel.  The Supreme Court recognized that the Company's retained interest was "a very valuable estate," separate and apart from the other consideration that the company received.  *Id.* at 414.

The grantee built a home on top of the property he had purchased.  Subsequently the Pennsylvania legislature enacted a statute prohibiting any mining that could cause a home to subside.  Relying on the statute, Mahon sought an injunction to prevent the Company from mining underneath his house.  The Supreme Court found that, although the Pennsylvania statute

substantially furthered a public policy, it so frustrated the Company's investment-backed expectation as to amount to a taking. *See id.* at 415-16.

A similar pattern is evident here. Because Massachusetts law allowed general releases to effect a release of all of the releasing party's claims, Coverall negotiated general releases with several Plaintiffs and provided consideration to each Plaintiff in turn. Coverall's consideration included a release of Wage Act claims. Coverall realized other benefits from its general releases: they still release non-Wage Act claims, much as the Pennsylvania Coal Company received cash in addition to its reservation of sub-surface mining rights. In each instance, the government has not deprived the Company or Coverall of its <u>entire</u> investment-backed expectation, but in both instances the government has deprived a private party of significant value. That deprivation in Coverall's case is sufficiently similar to the one at issue in *Pennsylvania Coal* to support Coverall's claim of a taking here.

## II.   Retroactively applying *Crocker* deprives Coverall of the economic value of its property interest in Plaintiffs' releases.

In determining the economic impact of a taking, a court must look at "whether the regulation 'impair[s] the value or use of [the] property according to the owner's general use of the property." *Philip Morris,* 312 F.3d at 41, quoting *Prune Yard Shopping Center v. Robins*, 447 U.S. 74, 83 (1980). Taking away or materially lessening the right to enforce contracts impairs private property in a manner that makes the impairment subject to the Takings Clause. *Lynch,* 292 U.S. at 580.

Plaintiffs' releases are included in agreements containing Coverall's assents to transfers of franchise assets, or other termination agreements. *See* Coverall's Opposition at n. 8. Each releasing Plaintiff agreed at the time he or she purchased a franchise that he or she would have to sign a release upon transfer of his or her franchise assets. *See id.* Each releasing Plaintiff later

5

signed an agreement that said his release was in consideration for Coverall's consent.  That consent terminated each Plaintiff's responsibilities to Coverall.  By providing consideration to a Plaintiff in exchange for the general release, Coverall legitimately relied, consistent with the law at that time, on facing no further claims from the Plaintiff executing the consent.

By retroactively applying *Crocker* to Coverall's general releases, this Court has reduced the value of the general releases by exposing Coverall approximately $1 million in claims under the Wage Act.[1]  Such a loss is real and considerable, and weighs in favor of finding an unconstitutional taking.  *See Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124 (1978) ("The economic impact of the regulation on the claimant, and particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations.").

## III.   The "character" of retroactive application is impermissible under the Fifth Amendment absent compensation.

Assessing the character of a governmental action for purposes of the Takings Clause requires examining both the alleged public purpose behind the government's action and the manner in which the government has acted.  *See Penn Central,* 438 U.S. at 124.  Both factors weigh in favor of a determination that retroactive application of *Crocker* without just compensation results in an unconstitutional taking.

### A.   The retroactive application of *Crocker* does not serve a public purpose.

The purpose of the Wage Act "is to provide strong statutory protection for employees and their right to wages." *Crocker,* 464 Mass. at 13.  In implementing this policy, courts have held

---

[1]      The parties currently are collaborating to adjust each class member's damages and prejudgment interest awards in the wake of various rulings rendered since May 10, 2012, the last time the parties had calculated those awards.  *See* Docket No. 462.  Calculations provided by Plaintiffs propose awards totaling approximately $832,300 (exclusive of prejudgment interest) to class members who had signed full or partial releases.  Prejudgment interest likely will push those class members' awards over $1 million total.

that the "special contract" provision of the Wage Act "generally prohibits an employer from deducting or withholding payment of, any earned wages and cannot be overcome by an employee's assent, both because § 148 makes the 'special contract' prohibition unconditional and for reasons of public policy." *Id.*

The Supreme Judicial Court's stated public purpose for the rule announced in *Crocker* is to ensure that employees do not unknowingly waive their rights under the Wage Act. *Id.* at 8. As shown in Coverall's Opposition, retroactive application of *Crocker* to releases that are not (in the Supreme Judicial Court's eyes) "special contracts" and that were executed prior to *Crocker* does not promote compliance with *Crocker* or prevent workers from making uninformed waivers of their Wage Act claims. By contrast, upholding past releases does not undermine the Wage Act's purposes: it is undisputed that the releasing Plaintiffs received valid consideration in exchange for releasing their claims against Coverall.

In *Armstrong v. United States*, 364 U.S. 40, 41 (1960), the Supreme Court found a taking where the government exercised an option to terminate a shipbuilding contract and forced a transfer of the unfinished boats to the government. The action did not deprive the shipbuilder of the total value of its contract, as the government had made progress payments throughout the contract, but the government owed the shipbuilder about $50,000 at the time the government terminated the contract. *Id.* at 45. The shipbuilder had a materialmen's lien securing the unpaid sum. A taking arose when the government declared the liens unenforceable and refused to provide just compensation, arguing that one cannot acquire materialmen's liens in public projects. *Id.* at 41. The Supreme Court held that erasing liens that attached prior to the government's taking ownership of the boats did not serve the public purpose behind the policy of

not allowing liens on public works, and could not justify avoidance of the shipbuilder's lien without just compensation.

The mistake in *Armstrong* is being repeated here: this Court proposes to eliminate Coverall's previously recognized legal right in a manner that does not serve the government's asserted public purpose. That lack of a strong means-ends connection weighs in favor of holding that this Court's retroactive application of *Crocker* effects an unconstitutional taking.

> **B.** **Coverall's property has not merely been devalued, it has been extinguished.**

Retroactive application of *Crocker* did not simply devalue Coverall's contractual right to a release of Wage Act Claims: it eliminated the value of that release entirely. Similar overreaching by the government (in a case where there was no investment-backed expectation) resulted in a takings determination in *Hodel v. Irving*, 481 U.S. 704 (1987). In *Hodel*, the Indian Land Consolidation Act limited the ability of Native Americans to pass land by descent or devise. The Act's alleged purpose was to eliminate fractional ownership of Native lands, the long-term hope being that consolidated ownership would lead to more productive use of those lands. *Hodel*, 481 U.S. at 709, 712. The Supreme Court determined that the right to pass land by devise was such a critical and longstanding aspect of the rights associated with Native lands that the Act's creation of inter vivos revocable trusts to pass the property to one's heirs was not an acceptable substitute for this right. The Supreme Court found that the abolition of the right to pass property via descent and devise was a taking, despite the Act's acknowledged public purpose. *Id.* at 712-713, 717.

Much like in *Hodel*, this Court's retroactive application of *Crocker* has not merely changed the form of Coverall's right to enforce its general releases as to Wage Act claims, it completely abolished it. Further, as in *Armstrong,* taking away Coverall's ability to enforce

general releases as to Wage Act claims does not serve the public purpose behind the Wage Act. The unwarranted retroactive application of *Crocker* results, as in *Hodel* and *Armstrong*, in an unconstitutional taking.

### Conclusion

This Court should reconsider its decision to allow Plaintiffs' Motion for Reconsideration on Enforceability of Releases Signed by Cleaning Workers in the Ordinary Course of Coverall's Business and uphold the challenged releases.

**COVERALL NORTH AMERICA, INC.**

By its attorneys,

/s/  Michael D. Vhay
Michael D. Vhay (BBO No. 566444)
FERRITER SCOBBO & RODOPHELE, PC
125 High Street
Boston, MA  02110
(617) 737-1800

Matthew J. Iverson (BBO No. 653880)
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

Norman M. Leon
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL  60601
(312) 368-4000

Dated: April 25, 2013

### Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants this same day.

/s/  Michael D. Vhay

Q:\Valerie\3.29.13 Fifth Draft Memo In Support Of Motion For Reconsideration- VAM.Docx